UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  98-1217-CIV-DAVIS

SABRETECH, INC., et al.,

     Plaintiffs,

vs.

GARY S. FREED, et al.,

     Defendants.

_____/

FILED by _____ D.C.
INTAKE

NOV 1 8 199~

CARLOS JUENKE
CLERK U.S. DIST. CT
S.D. OF FLA.

---

**APPENDIX TO PSC'S REPLY MEMORANDUM IN SUPPORT OF PSC'S
CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**

PODHURST, ORSECK, JOSEFSBERG,
EATON, MEADOW, OLIN & PERWIN, P.A.
25 West Flagler Street, Suite 800
Miami, Florida  33130
(305) 358-2800 / Fax (305) 358-2382

Counsel for Plaintiffs' Steering Committee

By:  JOEL D. EATON
     Fla. Bar No. 203513

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true copy of the foregoing was mailed this 19th day of November, 1998, to: Gary S. Freed, Esq. and Benjamin I. Fink, Esq., Freed, Lester & Berman, P.A., Fourteen North Parkway Square, 4200 Northside Parkway, N.W., Atlanta, GA. 30327-3054; and to Gary S. Phillips, Esq., Phillips, Eisinger, Koss & Rosenfeld, P.A., 4000 Hollywood Blvd., Suite 265, Hollywood, FL 33021.

Respectfully submitted,

PODHURST, ORSECK, JOSEFSBERG,
EATON, MEADOW, OLIN & PERWIN, P.A.
25 West Flagler Street, Suite 800
Miami, Florida 33130
(305) 358-2800 / Fax (305) 358-2382

Counsel for Plaintiffs' Steering Committee

By:_____
            JOEL D. EATON
            Fla. Bar No. 203513

```
                                            DATE: 11/12/1998
TIME: 17:28:05              DOCKET DISPLAY              PAGE:    1

CASE NO : 96 - 11207 - CA - 01      JUDICIAL SECTION : 10   *** CLOSED ***
                                              PRINTER:
CASE STYLE:    HAMMOND, WANDA                 PRINTOFF:
              VS VALUJET AIRLINES INC         RECEIPT NO :  111633

   DATE      CODE                   PLEADING DESCRIPTION
10/10/1997   MLAW    MEMORANDUM OF LAW
09/24/1997   LCOR    LETTER OF CORRESPONDENCE
                     TO JUDGE ESQUIROZ, 9/17/97
09/24/1997   ORDD    ORDER:
                     DENYING PLTF'S MOTION FOR ORDER OF DISMISSAL
09/18/1997   MLAW    MEMORANDUM OF LAW
09/11/1997   MLAW    MEMORANDUM OF LAW
08/28/1997   NHRG    NOTICE OF HEARING-SPECIAL APPT    09/12/1997 AT  3:15 PM
01/07/1997   RDOC    RECORDED DOCUMENT                 BK:17485 PG: 274
                     NOTICE OF DISMISSAL OF ACTION


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                        DATE: 11/12/1998
TIME: 17:28:29            DOCKET DISPLAY          PAGE:    2

CASE NO : 96 - 11207 - CA - 01    JUDICIAL SECTION : 10   *** CLOSED ***
                                                  PRINTER:
CASE STYLE:    HAMMOND, WANDA                     PRINTOFF:
               VS VALUJET AIRLINES INC        RECEIPT NO : 111633

  DATE       CODE                   PLEADING DESCRIPTION
08/06/1996   AFFO    AFFIDAVIT OF:
                     SERVICE RTD. ON SABRELINER CORP. ON 7-2-96
08/06/1996   SVRT    SERVICE RETURNED       BADGE #    224 P 07/02/1996
                         DN01
08/06/1996   SVRT    SERVICE RETURNED       BADGE #    969 P 07/03/1996
                         DN02
07/16/1996   LCOR    LETTER OF CORRESPONDENCE
                     TO MR. RUVIN FROM STEVE JACQUES, 07-12-96
07/03/1996   NOTR    NOTICE OF REMOVAL TO FEDERAL COURT      BK:17261 PG:2381
                         DN01     DN02     DN03     DN04


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                     DATE: 11/12/1998
TIME: 17:28:39              DOCKET DISPLAY            PAGE:    3

CASE NO : 96 - 11207 - CA - 01     JUDICIAL SECTION : 10   *** CLOSED ***
                                              PRINTER:
CASE STYLE:   HAMMOND, WANDA                  PRINTOFF:
              VS VALUJET AIRLINES INC         RECEIPT NO :   111633

   DATE        CODE              PLEADING DESCRIPTION
06/17/1996   ACOM     AMENDED COMPLAINT
06/05/1996   AFFO     AFFIDAVIT OF:
                      GREGORY E O BRIEN
06/05/1996   AFFO     AFFIDAVIT OF:
                      STEPHEN JACQUES
06/05/1996   TEXT     VERIFIED MOTIONS PRO HAC VICE
06/05/1996   AFFO     AFFIDAVIT OF:
                      GARRETT M MOORE (ESQ)
06/05/1996   CICO     CIVIL COVER
06/05/1996   DJTR     DEMAND FOR JURY TRIAL


PF1=CASE   2=PRINT  3=NAME   4=ATTY  5=CRT REG   6=JUD CAL   7=CASE REL
9=PG FWD 10=PG BK 11=NOTE   12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                        DATE: 11/12/1998
TIME: 17:28:48            DOCKET DISPLAY            PAGE:    4

CASE NO : 96 -  11207 - CA - 01    JUDICIAL SECTION : 10   *** CLOSED ***
                                              PRINTER:
CASE STYLE:    HAMMOND, WANDA                 PRINTOFF:
          VS VALUJET AIRLINES INC        RECEIPT NO :  111633

   DATE      CODE                  PLEADING DESCRIPTION
06/05/1996  CMPT    COMPLAINT
```

```
PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-155   END OF INFORMATION.
```

```
                                              DATE: 11/12/1998
TIME: 17:27:05                DOCKET DISPLAY            PAGE:    1

CASE NO : 97 -  1775 - CA - 01      JUDICIAL SECTION : 10   *** CLOSED ***
                                              PRINTER:
CASE STYLE:    HAMMOND, WANDA                 PRINTOFF:
               VS VALUJET AIRLINES INC        RECEIPT NO :  114751

   DATE      CODE              PLEADING DESCRIPTION
10/26/1998   NINT    NOTICE OF INTERROGATORY
10/19/1998   NINT    NOTICE OF INTERROGATORY
10/19/1998   NINT    NOTICE OF INTERROGATORY
10/14/1998   RQPR    REQUEST FOR PRODUCTION
09/02/1998   NHRG    NOTICE OF HEARING-SPECIAL APPT   09/11/1998 AT  2:30 PM
08/25/1998   NINT    NOTICE OF INTERROGATORY
08/05/1998   TEXT    ANSW TO CORRECTED MASTER COMPLAINT - STS SERVICES
07/08/1998   MOTI    MOTION:
                     FOR TEMPORARY STAY
06/29/1998   MOTI    MOTION:


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                        DATE: 11/12/1998
TIME: 17:27:01            DOCKET DISPLAY          PAGE:    2

CASE NO : 97 -   1775 - CA - 01     JUDICIAL SECTION : 10   *** CLOSED ***
                                              PRINTER:
CASE STYLE:    HAMMOND, WANDA                 PRINTOFF:
               VS VALUJET AIRLINES INC        RECEIPT NO :  114751


   DATE      CODE                PLEADING DESCRIPTION
                        FOR TEMP. STAY ON PROCEEDINGS (2)
06/25/1998   MOTI       MOTION:
                        FOR TEMPORARY STAY OF PROCEEDINGS
06/22/1998   TEXT       DISCHARGE OF ATTORNEY CHARGING LIEN
06/15/1998   TEXT       ANSWER TO CORRECTED MASTER COMPLAINT - SCOTT AVIATION
05/27/1998   TEXT       SERVICE RTD. ON MCDONNELL DOUGLAS TECHNICAL, 5/8/98
05/27/1998   TEXT       SERVICE RTD. ON PIPING DESIGN SERVICES, 5/11/98
05/27/1998   TEXT       SERVICE RTD. ON SCOTT AVIATION, 5/11/98
05/22/1998   MCPL       MOTION TO COMPEL
05/22/1998   NHRG       NOTICE OF HEARING-SPECIAL APPT    06/01/1998 AT  1:30 PM


PF1=CASE   2=PRINT  3=NAME   4=ATTY   5=CRT REG   6=JUD CAL   7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                             DATE: 11/12/1998
TIME: 17:26:58              DOCKET DISPLAY           PAGE:    3

CASE NO : 97 -   1775 - CA - 01     JUDICIAL SECTION : 10   *** CLOSED ***
                                                 PRINTER:
CASE STYLE:    HAMMOND, WANDA                    PRINTOFF:
               VS VALUJET AIRLINES INC           RECEIPT NO :  114751


   DATE       CODE                   PLEADING DESCRIPTION
05/15/1998   LCOR    LETTER OF CORRESPONDENCE
                     TO JUDGE ESQUIROZ, 4/30/98
05/15/1998   ORDD    ORDER:
                     DENYING MTN FOR ENFORCE SETTLEMENT AGREEMENT
05/13/1998   VOLD    VOLUNTARY DISMISSAL              BK:18103 PG:4316
                       DN01     DN02
05/01/1998   EXLT    EXHIBIT LIST
                     ALL EXHIBITS RETURNED PER STIP & CONSENT OF COURT ATTY
04/27/1998   MLAW    MEMORANDUM OF LAW
04/22/1998   TEXT    SUMMARY OF FACTS TO MOTI TO ENFORCE SETTLEMENT AGREEMENT


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 11/12/1998
TIME: 17:26:54              DOCKET DISPLAY            PAGE:    4

CASE NO : 97 -   1775 - CA - 01     JUDICIAL SECTION : 10   *** CLOSED ***
                                               PRINTER:
CASE STYLE:    HAMMOND, WANDA                  PRINTOFF:
               VS VALUJET AIRLINES INC         RECEIPT NO :  114751

   DATE      CODE           PLEADING DESCRIPTION
04/21/1998   TEXT   REPLY TO SUMMARY OF FACTS
04/16/1998   MSTK   MOTION TO STRIKE
04/14/1998   TEXT   SUMMARY OF FACTS IN SUPPORT OF MTN TO ENFORCE SETTLEMENT
04/09/1998   NFIL   NOTICE OF FILING:
                    DEPOSITIONS FOR USE IN EVIDENTIARY HEARING, ETC.
04/08/1998   AFFO   AFFIDAVIT OF:
                    FRANCIS SHEERIN WITH EXHIBITS ATTACHED
04/08/1998   AFFO   AFFIDAVIT OF:
                    THOMAS CONDON, JR. WITH EXHIBITS ATTACHED
04/08/1998   NFIL   NOTICE OF FILING:


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 11/12/1998
TIME: 17:26:51              DOCKET DISPLAY              PAGE:    5

CASE NO : 97 -   1775 - CA - 01     JUDICIAL SECTION : 10   *** CLOSED ***
                                              PRINTER:
CASE STYLE:   HAMMOND, WANDA                  PRINTOFF:
              VS VALUJET AIRLINES INC         RECEIPT NO :  114751

   DATE       CODE                    PLEADING DESCRIPTION
                     TWO AFFIDAVITS
04/07/1998   NFIL    NOTICE OF FILING:
                     DEFT. CERTIFIED COPY OF MEMORANDUM OF LAW
04/07/1998   TEXT    MEMO IN SUPPORT OF DEFT. MTN TO ENFORCE SETTLEMENT
04/01/1998   NTDP    NOTICE OF TAKING DEPOSITION
03/19/1998   DEPO    DEPOSITION OF
                     JUDITH MOTEN, MICHAEL EDW. CULVER, MARCUS A. CULVER
03/19/1998   DEPO    DEPOSITION OF
                     WANDA JO HAMMOND WITH EXHIBITS ATTACHED
03/19/1998   NFDP    NOTICE OF FILING DEPOSITION


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                        DATE: 11/12/1998
TIME: 17:26:48           DOCKET DISPLAY              PAGE:    6

CASE NO : 97 -   1775 - CA - 01     JUDICIAL SECTION : 10   *** CLOSED ***
                                               PRINTER:
CASE STYLE:    HAMMOND, WANDA                  PRINTOFF:
               VS VALUJET AIRLINES INC         RECEIPT NO :  114751

   DATE       CODE              PLEADING DESCRIPTION
03/18/1998   TEXT    EXHIBITS TO AFFIDAVIT OF B. WILDERMUTH, FILED W/DEPOS
03/18/1998   AFFO    AFFIDAVIT OF:
                     BRUCE R. WILDERMUTH
03/18/1998   NFIL    NOTICE OF FILING:
                     AFFIDAVIT SUPPORTING MOTION TO ENFORCE AGREEMENT
03/12/1998   NOTI    NOTICE:
                     OF JOINDER RE: MOTION TO ENFORCE SETTLEMENT AGREEMENT
03/12/1998   TEXT    AMENDED MTN TO APPOINT COMMISSIONER
03/11/1998   NTDP    NOTICE OF TAKING DEPOSITION
03/06/1998   ORDD    ORDER:


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                          DATE: 11/12/1998
TIME: 17:26:44              DOCKET DISPLAY              PAGE:    7

CASE NO : 97 -  1775 - CA - 01     JUDICIAL SECTION : 10   *** CLOSED ***
                                               PRINTER:
CASE STYLE:    HAMMOND, WANDA                  PRINTOFF:
               VS VALUJET AIRLINES INC         RECEIPT NO :  114751


   DATE       CODE              PLEADING DESCRIPTION
                       APPOINTING COMMISSIONER FOR TAKING DEPO. IN CONNECTICUT
03/04/1998   MOTI     MOTION:
                       AMENDED MOTION TO APPOINT COMMISSIONER
03/04/1998   NHRG     NOTICE OF HEARING-SPECIAL APPT    03/06/1998 AT  1:30 PM
                       CANCELLATION
03/03/1998   MOTI     MOTION:
                       TO APPOINT COMMISSIONER
03/03/1998   NHRG     NOTICE OF HEARING-SPECIAL APPT    03/06/1998 AT  1:30 PM
03/02/1998   MOTI     MOTION:
                       TO SPECIAL SET MOTION TO ENFORCE SETTLEMENT AGREEMENT


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                      DATE: 11/12/1998
TIME: 17:26:41            DOCKET DISPLAY             PAGE:    8

CASE NO : 97 -  1775 - CA - 01    JUDICIAL SECTION : 10   *** CLOSED ***
                                           PRINTER:
CASE STYLE:    HAMMOND, WANDA                PRINTOFF:
               VS VALUJET AIRLINES INC       RECEIPT NO :  114751

   DATE      CODE              PLEADING DESCRIPTION
02/20/1998   TEXT    AMENDED NOTICE OF TAKING DEPOSITION
02/20/1998   TEXT    AMENDED CROSS-NOTICE OF TAKING DEPOSITIONS
02/20/1998   NTDP    NOTICE OF TAKING DEPOSITION
02/19/1998   NTDP    NOTICE OF TAKING DEPOSITION
02/19/1998   NTDP    NOTICE OF TAKING DEPOSITION
02/18/1998   NHRG    NOTICE OF HEARING-SPECIAL APPT   04/09/1998 AT  3:00 PM
02/17/1998   NOTI    NOTICE:
                     OF JOINDER
02/12/1998   NOTI    NOTICE:
                     OF JOINDER


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                            DATE: 11/12/1998
TIME: 17:26:37              DOCKET DISPLAY              PAGE:    9

CASE NO : 97 -  1775 - CA - 01     JUDICIAL SECTION : 10   *** CLOSED ***
                                                    PRINTER:
CASE STYLE:     HAMMOND, WANDA                      PRINTOFF:
                VS VALUJET AIRLINES INC             RECEIPT NO :   114751

   DATE      CODE                   PLEADING DESCRIPTION
02/11/1998   MOTI    MOTION:
                     TO ENFORCE SETTLEMENT AGREEMENT
02/11/1998   NHRG    NOTICE OF HEARING-SPECIAL APPT   02/13/1998 AT 11:00 AM
02/05/1998   LCOR    LETTER OF CORRESPONDENCE
                     TO JUDGE MARGARITA ESQUIROZ, 9-24-97
11/12/1997   MLAW    MEMORANDUM OF LAW
09/24/1997   MOTW    MOTION TO WITHDRAW
09/19/1997   MOTI    MOTION:
                     TO ABATE
09/15/1997   LCOR    LETTER OF CORRESPONDENCE


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                                         DATE: 11/12/1998
TIME: 17:26:33              DOCKET DISPLAY              PAGE:   10

CASE NO : 97 -  1775 - CA - 01      JUDICIAL SECTION : 10   *** CLOSED ***
                                                  PRINTER:
CASE STYLE:    HAMMOND, WANDA                    PRINTOFF:
               VS VALUJET AIRLINES INC         RECEIPT NO :  114751


   DATE       CODE                    PLEADING DESCRIPTION
                      TO JUDGE ESQUIROZ, 9/5/97
09/15/1997  ORDD    ORDER:
                    GRANTING MOTION FOR ADMISSION PRO HAC VICE
09/09/1997  NFIL    NOTICE OF FILING:
                    VERIFICATIONS FOR MTN FOR ADMISSION
08/19/1997  MDIS    MOTION TO DISMISS
                    WANDA HAMMOND
08/06/1997  MOTI    MOTION:
                    FOR ADMISSION
07/03/1997  NOTI    NOTICE:


PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
                              DATE: 11/12/1998              CIVIL DIVISION
TIME: 17:26:14                DOCKET DISPLAY                    PAGE:   11

CASE NO : 97 -   1775 - CA - 01      JUDICIAL SECTION : 10  *** CLOSED ***
                                                        PRINTER:
CASE STYLE:    HAMMOND, WANDA                           PRINTOFF:
               VS VALUJET AIRLINES INC              RECEIPT NO : 114751

   DATE       CODE               PLEADING DESCRIPTION
                    OF ATTORNEY CHARGING LIEN
04/14/1997   RADF   REPLY TO AFFIRMATIVE DEFENSES
04/14/1997   TEXT   ANSWER TO 4TH-AM. COMPLAINT - DEFENDANTS
04/14/1997   RADF   REPLY TO AFFIRMATIVE DEFENSES
04/14/1997   MACO   MOTION TO FILE AMENDED COMPLAINT
                    AND ADD PARTY PLAINTIFF
04/14/1997   ACOM   AMENDED COMPLAINT
03/26/1997   ANSW   ANSWER                            ATTORNEY:  148434
                    DN01
03/25/1997   ANSW   ANSWER                            ATTORNEY:  149100
                    DN02

PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-160   <PF9> = PAGE FORWARD, <PF10> = PAGE BACK
```

```
DATE: 11/12/1998              CIVIL DIVISION                         CIVM2520
TIME: 17:25:56                DOCKET DISPLAY                     PAGE:   12

CASE NO : 97 -   1775 - CA - 01      JUDICIAL SECTION : 10   *** CLOSED ***
                                                        PRINTER:
CASE STYLE:    HAMMOND, WANDA                         PRINTOFF:
               VS VALUJET AIRLINES INC               RECEIPT NO :   114751

   DATE     CODE                   PLEADING DESCRIPTION
03/13/1997   SVRT    SERVICE RETURNED          BADGE #    192 P 03/05/1997
                         DN01
02/20/1997   CICO    CIVIL COVER
01/27/1997   CICO    CIVIL COVER
01/27/1997   DJTR    DEMAND FOR JURY TRIAL
01/27/1997   CMPT    COMPLAINT




PF1=CASE  2=PRINT  3=NAME  4=ATTY  5=CRT REG  6=JUD CAL  7=CASE REL
9=PG FWD 10=PG BK 11=NOTE  12=PREV ENTER=VIEW
2520-PM-155   END OF INFORMATION.
```

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.    96-9546  CA 10
            96-10127 CA 10
            96-11228 CA 10
            96-11229 CA 10
            96-11232 CA 10
            96-11325 CA 10
            96-13745 CA 10
            96-14324 CA 10
            96-14325 CA 10
            96-14326 CA 10
            96-18301 CA 10
            97-03155 CA 10
            97-05059 CA 10
            97-05710 CA 10
IN RE:   AIR CRASH IN THE FLORIDA        97-06430 CA 10
EVERGLADES ON MAY 11, 1996              97-06428 CA 10

_____/

## MOTION TO HOLD STATUS CONFERENCE
## ON ALL VALUJET CASES PENDING IN THIS COURT AND
## MOTION FOR FORMALIZATION OF STEERING COMMITTEE

Come now the above-captioned Plaintiffs[1] and move this Court
for a hearing which would include the following matters:

1.    A Status Conference on all of the Valujet Wrongful Death
cases pending in this Circuit;

2.    Consolidation of discovery matters and/or liability
trial;

3.    The appointment of a Plaintiffs' Steering Committee to
handle liability discovery and trial in these cases;

4.    Any other matters the Court deems relevant.

_____

[1] Attached as Exhibit "A" is a list of all other cases currently
pending before this Court out of the Valujet tragedy.

As grounds therefore the above-captioned Plaintiffs state as follows:

a.    These cases arise out of the Valujet tragedy which occurred on May 11, 1996 in the Florida, Everglades.

b.    There are currently pending over forty-five (45) wrongful death actions against, among others, Valujet and Sabretech.  These claims all arise out of the same accident.

c.    Discovery is ongoing on the issue of liability.

d.    It would be in the interest of judicial economy and costs for the parties to consolidate these matters for liability discovery and for liability trial.

e.    After numerous meetings at undersigned's office, the majority of the lawyers acting for the majority of the Plaintiffs have voted to have a Steering Committee comprised of Aaron Podhurst, Esq., of Podhurst, Orseck, Josefsberg, et al., as Chairman along with Steven C. Marks of his firm; John Howie of Howie & Sweeney, L.L.P; Gerald Lear, of Speiser Krause, et al.; Kevin Malone, Esq. of Krupnick, Campbell, et al.; and Mitch Baumeister, Esq. of Baumestier & Samuels.  Judge Davis in the Federal Court has agreed to appoint this Committee for any actions pending in Federal Court.

c.    The Status Conference will help set a discovery schedule herein.

d.    To the knowledge of the undersigned this Status Conference is agreed to by the Defendants Valujet and Sabretech who are anxious to coordinate discovery.

WHEREFORE, the above-captioned Plaintiffs move this Court to

hold the Status Conference on April 8, 1997 at 10:30 a.m.; to consolidate discovery; and to appoint the above-mentioned steering committee.

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been sent via facsimile and mail to all counsel on the attached service list on this _2nd_ day of April, 1997.

Respectfully submitted,

PODHURST, ORSECK, JOSEFSBERG,
EATON, MEADOW, OLIN & PERWIN, P.A.
25 West Flagler Street, Suite 800
Miami, Florida  33130
(305) 358-2800 / Fax (305) 358-2382

By: _____
       STEVEN C. MARKS
       Fla. Bar No. 516414

24596\p\msc

## EXHIBIT "A"

The following are additional cases which these Plaintiff's believe are currently pending in this Court:

**CASE NO. 96-11731 CA 10**
Sam Baker, Jr. as Personal Representative of the Estate of Sean D. Baker vs. Valujet Airlines, Inc. and Sabretech, Inc.

**CASE NO. 96-10717 CA 10**
Heather Archibald, as Personal Representative of the Estate of Leslie Archibald, and on behalf of Neville Archibald, surviving parent of Leslie Archibald, deceased vs. Valujet Airlines, Inc., a Georgia corporation and Sabretech, Inc., a Delaware Corporation.

**CASE NO. 96-13207 CA 10**
Bishop Mitchell, Individually and as Personal Representative of the Estate of Ella Langley Mitchell, deceased vs. Valujet Airlines, Inc., a Georgia corporation; Aerothrust Corporation, a foreign corporation with its principal place of business in Dade County, Florida and Sabretech, Inc., a foreign corporation with its principal place of business in Dade County, Florida.

**CASE NO. 96-12809 CA 10**
Annette Newell, as Personal Representative of the Estate of Robert Medeiros, deceased vs. Valujet, et al.

**CASE NO. 96-12808 CA 10**
Carl Summers as Personal Representative of the Estate of Amanda Summers, deceased vs. Sabretech, Galindo.

**CASE NO. 96-12807 CA 10**
John Chad Jones as Personal Representative of the Estate of Judy Medeiros, deceased vs. Valujet, et al.

**CASE NO. 96-18777 CA 10**
Robert C. Hayman, as Personal Representative of the Estate of Robert L. Hayman, deceased vs. Valujet et al.

**CASE NO. 96-18778 CA 10**
Robert C. Hayman as Personal Representative of the Estate of Elaine Hayman, deceased vs. Valujet, et al.

**CASE NO. 96-10150 CA 10**
Earl A. Marks and Carmen Roberts, Invidividually and as
Administrators and/or Co-Personal Representatives of the Estate of
Philmore Marks, deceased vs. Valujet Airlines, Inc., Aerothrust
Corporation and Sabretech, Inc.

**CASE NO. 96-09816 CA 10**
Rae G. White, as Personal Representative of the Estate of Mark
Griner, deceased vs. Valujet Airlines, Inc., a Georgia corporation,
and Aerothrust Corporation, a Florida Corporation.

**CASE NO. 96-11366 CA 10**
Randy Leonard, Individually and as Personal Representative of the
Estate of Andrew Leonard, deceased vs. Valujet Airlines, Inc., a
Georgia corporation, Sabretech, Inc., a Delaware Corporation, and
Aerothrust Corporation, a Florida corporation.

**CASE NO. 96-11541 CA 10**
Randy Leonard, Individually and as Personal Representative of the
Estate of Tabitha Leonard, deceased vs. Valujet Airlines, Inc., a
Georgia corporation, Sabretech, Inc., a Delaware Corporation, and
Aerothrust Corporation, a Florida corporation.

**CASE NO. 96-11489 CA 10**
Randy Leonard, Individually and as Personal Representative of the
Estate of Jeremy Leonard, deceased vs. Valujet Airlines, Inc., a
Georgia corporation, Sabretech, Inc., a Delaware Corporation, and
Aerothrust Corporation, a Florida corporation.

**CASE NO. 96-11562 CA 10**
Judith Bodley-Leweis, Personal Representative of the Estate of
Jimmy Alfred Lewis, deceased, on behalf of the said Estate and on
behalf of all lawful beneficiaries and survivors of Jimmy Alfred
Lewis, deceased vs. Valujet Airlines, Inc., a Nevada Corporation;
and Aerothrust Corporation, a Delaware corporation and Sabretech,
Inc., a Delaware corporation.

**FEDERAL COURT CASE NO. 96-3363-CIV-DAVIS**
Arthur J. Balandran, Individually and as Personal Representative of
the Estate of Thomas Eugene Balandran, deceased vs. Valujet
Airlines, Inc., a Georgia Corporation, Valujet, Inc., as Nevada
Corporation, Aerothrust Corporation, a Delaware with its principal
place of business in Dade County, Florida and Sabaretech, Inc., a
Delaware corporation with its principal place of business in Dade
County, Florida.

(Unknown whether or not it has been remanded and whether there is
a pending State Court action)

## PLAINTIFFS' COUNSEL

**Mitch Baumeister, Esq.**
Baumeister & Samuels
One Exchange Plaza
New York, NY 10006

**John Howie, Esq.**
Howie & Sweeney, L.L.P.
Park Place on Turtle Creek
2911 Turtle Creek Blvd.
Suite 1400
Dallas, TX 75219

**Gerald Lear, Esq.**
Speiser, Krause, et al.
1300 N. 17th Street
Suite 310
Rosslyn, VA 22209

**Kevin Malone, Esq.**
Krupnick, Campbell, et al.
700 S.E. Third Avenue
Courthouse Law Plaza, Suite 100
Fort Lauderdale, FL 33316

**Aaron Podhurst, Esq.**
**Steven C. Marks, Esq.**
Podhurst, Orseck, Josefsberg, et al.
25 West Flagler Street
Suite 800
Miami, Florida 33130

**Jeffrey L. Allen, Esq.**
Jeffrey L. Allen, Attorney at Law
2800 Biscayne Blvd.
Miami, FL 33137

**F. Gregory Barnhart, Esq.**
**Chris Speed, Esq.**
Searcy Denney Scarola Barnhart
  & Shipley
2139 Palm Beach Lakes Blvd.
West Palm Beach, FL 33402

**Kirk Barrow, Esq.**
3500 N. State Road 7
Suite 201
Lauderdale Lakes, FL 33319

D. Michael Campbell, Esq.
D. Michael Campbell, et al.
8603 South Dixie Highway
Suite 310
Miami, FL 33143

Benjaim G. Chew, Esq.
Read K. McCaffrey, Esq.
Patton, Boggs, L.L.P.
2550 M Street, N.W.
Washington, DC 20037-1350

John P. Coale, Esq.
Diane Cooley, Esq.
David K. Lietz, Esq.
195 Duke of Gloucester Street
Annapolis, Maryland 21401

Tom Davis, Esq.
Slack & Davis
8911 Capital of Texas Highway, North
Suite 2110
Austin, TX 78759

George M. Fleming, Esq.
Fleming, Hovenkamp & Grayson, P.A.
1330 Post Oak Blvd.
Suite 3030
Houston, Texas 77056

Alan Goldfarb, Esq.
Goldfarb & Gold, P.A.
3900 International Place
100 Southeast Second Street
Miami, FL 33131

M. Ann Harcourt, Esq.
John Perciva. Esq.
303 So. Peters
Norman, Oklahoma 73069

David R. Hefferman, Esq.
200 S.E. 1st Street
Suite 1100
Miami, Florida 33131

Stephen L. Jacques, Esq.
Moore, O'Brien & Jacques
Westgate Office Center
700 West Johnson Avenue, Suite 207
Cheschire, Conn 06410

**Mark Kitrick, Esq.**
First Avenue Office Center
929 Harrison Ave., Suite 102
Colombus, OH  43215-6501

**David Leitz, Esq.**
5335 Wisconsin Avenue, N.W.
Suite 720
Washington, D.C. 20015

**Mark Leeds, Esq.**
44 West Flagler Street
Suite 1600
Miami, Florida 33130

**Bruce Marguilies, Esq.**
**Victor Rones, Esq.**
16105 N.E. 18th Avenue
N. Miami Beach, Florida

**Jesse J. McCrary, Jr., Esq.**
McCrary & Mosley
2800 Biscayne Blvd., Suite 800
Miami, Florida 33137

**Marc Moller, Esq.**
Kreidler & Kreidler
100 Park Avenue
18th Floor
New York, NY 10017

**Marshall I. Neurenberg, Esq.**
**Jaime Lebovitz, Esq.**
Neurenberg Plevin Heller & McCarthy
1370 Ontario Street
First Floor
Cleveland, Ohio 44113-1792

**William Norwood, Esq.**
83 Walton Street
Atlanta, GA 30301

**Tom Pennekamp, Esq.**
Grossman & Roth
2665 S. Bayshore Drive
Penthouse I
Miami, Florida

**Robert L. Parks, Esq.**
Haggard & Parks, P.A.
330 Alhambra Circle, First Floor
Coral Gables, FL 33134

C. Neal Pope, Esq.
R. Timothy Morrison, Esq.
Max R. McGlamry, Esq.
Paul Kilpatrick, Jr., Esq.
Michael L. McGlamry, Esq.
Pope, McGlamry, Kilpatrick & Morrison
318 11th Street, 2nd Floor
P.O. Box 2128
Columbus, Georgia 31902-2128

Joseph P. Quirk, Esq.
Quirk & Quirk
2964 Peachtree Road, NW
450 Buckhead Centre
Atlanta, GA 30305

Edward M. Ricci, Esq.
Ricci, Hubbard, Leopold & Frankel, P.A.
1645 Palm Beach Lakes Blvd.
Suite 250, United National Bank Building
West Palm Beach, Florida 33401

Larry R. Rogers, Sr., Esq.
Power, Rogers & Smith
35 West Wacker Drive
Suite 3700
Chicago, IL 60601

Herman J. Russomano, Esq.
Russomanno, Fiore & Borello, P.A.
Museum Tower #2101
150 W. Flagler Street
Miami, FL 33130

Carlos E. Silva, Esq.
Silva & Silva, P.A.
2665 South Bayshore
Suite 601
Miami, Florida 33133

J.B. Spence, Esq.
Payne, Leeds, et al.
Grove Professional Building
2950 S.W. 27th Avenue
Suite 300
Miami, Florida 33133

William R. Scherer, Esq.
Conrad Scherer, et al.
633 South Federal Highway
Fort Lauderdale, FL 33301

Mark D. Swanson, Esq.
Courthouse Tower, Suite 325
44 West Flagler Street
Miami, Florida 33130

Philip L. Valente, Esq.
1801 South Austrain Avenue
Suite 201
West Palm Beach, FL 33409

W.E. Gary, Esq.
Gary, Williams, Parenti, et al.
221 East Osceola Street
Stuart, Florida 34994

Jonathan Wald, Esq.
100 S.E. 2nd Street
Suite 3900
Miami, Florida 33131

Wayne Walker, Esq.
440 Louisiana
Suite 1325
Houston, Texas 77002

Robert K. Whohlfeld, Esq.
Marguilies, Rones & Wohlfeld, P.A.
16105 N.E. 18th Avenue
North Miami Beach, FL 33162

Philip L. Valente, Jr., Esq.
Valente & Natale, L.L.C.
1801 South Australian Avenue
SUite 201
West Palm Beach, Florida 33409

24596\p\s1.p1

LAW OFFICES, PODHURST ORSECK JOSEFSBERG EATON MEADOW OLIN & PERWIN, P.A. - OF COUNSEL, WALTER H. BECKHAM, JR.
25 WEST FLAGLER STREET - SUITE 800, MIAMI, FLORIDA 33130-1780
(305) 358-2800

## DEFENDANTS' SERVICE LIST

**Francis Anania, Esq.**
Anania, Bandklayer & Blackwell
100 Southeast Second Street
Suite 3300
Miami, Fla. 33131

**William G. Burd, Esq.**
Burd, Downs & Magathan
601 Brickell Key Drive
Suite 500
Miami, Fla. 33131

**Dennis M. O'Hara, Esq.**
**Gregory M. Palmer, Esq.**
Wicker, Smith, Tutan,
  O'Hara, McCoy, Graham & Ford, P.A.
One East Broward Blvd.
Suite 500
P.O. Box 14460
Fort Lauderdale, Fla. 33302

**Thomas Scott, Esq.**
Davis, Scott, Weber & Edwards
Two South Biscayne Blvd.
One Biscayne Tower
Suite 1500
Miami, Fla. 33131

**Thomas C. Woods, Esq.**
Kimbrell & Hamann, P.A.
Suite 900, Brickell Centre
799 Brickell Plaza
Miami, Florida 33131-2805

**Willie E. Gary, Esq.**
221 E. Osceola Street
Stuart, Florida 34994

**Holly Davidson Schuttler, Esq.**
Dubosar & Davidson, P.A.
2255 Glades Road
Suite 300 East
Boca Raton, Florida 33431

**John W. Walker, Esq.**
1723 Broadway
Little Rock, AK 72206

24596\P\SL.1

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.   96-9546  CA 10
            96-10127 CA 10
            96-11228 CA 10
            96-11229 CA 10
            96-11232 CA 10
            96-11325 CA 10
            96-13745 CA 10
            96-14324 CA 10
            96-14325 CA 10
            96-14326 CA 10
            96-18301 CA 10
            97-03155 CA 10
            97-05059 CA 10
            97-05710 CA 10
            97-06430 CA 10
            97-06428 CA 10

IN RE:  AIR CRASH IN THE FLORIDA
EVERGLADES ON MAY 11, 1996

_____/

**NOTICE OF HEARING**
(Special Appointment - 30 minutes)

TO:  All Parties on the Attached Service List

YOU ARE HEREBY NOTIFIED that we will call up for hearing before **THE HONORABLE MARGARITA ESQUIROZ** in her chambers at the Dade County Courthouse, Miami, Florida on **Tuesday the 8th day of April, 1997, at 10:30, A.M.,** or as soon thereafter as same can be heard:

**STATUS CONFERENCE**

- and -

**MOTION FOR FORMALIZATION OF PLAINTIFFS'
STEERING COMMITTEE AND FOR CONSOLIDATED DISCOVERY**

PLEASE BE GOVERNED ACCORDINGLY.

Date:  April 2, 1997                 Respectfully submitted,

PODHURST, ORSECK, JOSEFSBERG,
EATON, MEADOW, OLIN & PERWIN, P.A.
25 West Flagler Street, Suite 800
Miami, Florida  33130
(305) 358-2800 / Fax (305) 358-2382

By:_____
            STEVEN C. MARKS
         Fla. Bar No. 516414

-2-

## PLAINTIFFS' COUNSEL

**Mitch Baumeister, Esq.**
Baumeister & Samuels
One Exchange Plaza
New York, NY 10006

**John Howie, Esq.**
Howie & Sweeney, L.L.P.
Park Place on Turtle Creek
2911 Turtle Creek Blvd.
Suite 1400
Dallas, TX 75219

**Gerald Lear, Esq.**
Speiser, Krause, et al.
1300 N. 17th Street
Suite 310
Rosslyn, VA 22209

**Kevin Malone, Esq.**
Krupnick, Campbell, et al.
700 S.E. Third Avenue
Courthouse Law Plaza, Suite 100
Fort Lauderdale, FL 33316

**Aaron Podhurst, Esq.**
**Steven C. Marks, Esq.**
Podhurst, Orseck, Josefsberg, et al.
25 West Flagler Street
Suite 800
Miami, Florida 33130

**Jeffrey L. Allen, Esq.**
Jeffrey L. Allen, Attorney at Law
2800 Biscayne Blvd.
Miami, FL 33137

**F. Gregory Barnhart, Esq.**
**Chris Speed, Esq.**
Searcy Denney Scarola Barnhart
  & Shipley
2139 Palm Beach Lakes Blvd.
West Palm Beach, FL 33402

**Kirk Barrow, Esq.**
3500 N. State Road 7
Suite 201
Lauderdale Lakes, FL 33319

D. Michael Campbell, Esq.
D. Michael Campbell, et al.
8603 South Dixie Highway
Suite 310
Miami, FL 33143

Benjaim G. Chew, Esq.
Read K. McCaffrey, Esq.
Patton, Boggs, L.L.P.
2550 M Street, N.W.
Washington, DC 20037-1350

John P. Coale, Esq.
Diane Cooley, Esq.
David K. Lietz, Esq.
195 Duke of Gloucester Street
Annapolis, Maryland 21401

Tom Davis, Esq.
Slack & Davis
8911 Capital of Texas Highway, North
Suite 2110
Austin, TX 78759

George M. Fleming, Esq.
Fleming, Hovenkamp & Grayson, P.A.
1330 Post Oak Blvd.
Suite 3030
Houston, Texas 77056

Alan Goldfarb, Esq.
Goldfarb & Gold, P.A.
3900 International Place
100 Southeast Second Street
Miami, FL 33131

M. Ann Harcourt, Esq.
John Perciva. Esq.
303 So. Peters
Norman, Oklahoma 73069

David R. Hefferman, Esq.
200 S.E. 1st Street
Suite 1100
Miami, Florida 33131

Stephen L. Jacques, Esq.
Moore, O'Brien & Jacques
Westgate Office Center
700 West Johnson Avenue, Suite 207
Cheschire, Conn 06410

Mark Kitrick, Esq.
First Avenue Office Center
929 Harrison Ave., Suite 102
Colombus, OH   43215-6501

David Leitz, Esq.
5335 Wisconsin Avenue, N.W.
Suite 720
Washington, D.C. 20015

Mark Leeds, Esq.
44 West Flagler Street
Suite 1600
Miami, Florida 33130

Bruce Marguilies, Esq.
Victor Rones, Esq.
16105 N.E. 18th Avenue
N. Miami Beach, Florida

Jesse J. McCrary, Jr., Esq.
McCrary & Mosley
2800 Biscayne Blvd., Suite 800
Miami, Florida 33137

Marc Moller, Esq.
Kreidler & Kreidler
100 Park Avenue
18th Floor
New York, NY 10017

Marshall I. Neurenberg, Esq.
Jaime Lebovitz, Esq.
Neurenberg Plevin Heller & McCarthy
1370 Ontario Street
First Floor
Cleveland, Ohio 44113-1792

William Norwood, Esq.
83 Walton Street
Atlanta, GA 30301

Tom Pennekamp, Esq.
Grossman & Roth
2665 S. Bayshore Drive
Penthouse I
Miami, Florida

Robert L. Parks, Esq.
Haggard & Parks, P.A.
330 Alhambra Circle, First Floor
Coral Gables, FL 33134

**C. Neal Pope, Esq.**
R. Timothy Morrison, Esq.
Max R. McGlamry, Esq.
Paul Kilpatrick, Jr., Esq.
Michael L. McGlamry, Esq.
Pope, McGlamry, Kilpatrick & Morrison
318 11th Street, 2nd Floor
P.O. Box 2128
Columbus, Georgia 31902-2128

**Joseph P. Quirk, Esq.**
Quirk & Quirk
2964 Peachtree Road, NW
450 Buckhead Centre
Atlanta, GA 30305

**Edward M. Ricci, Esq.**
Ricci, Hubbard, Leopold & Frankel, P.A.
1645 Palm Beach Lakes Blvd.
Suite 250, United National Bank Building
West Palm Beach, Florida 33401

**Larry R. Rogers, Sr., Esq.**
Power, Rogers & Smith
35 West Wacker Drive
Suite 3700
Chicago, IL 60601

**Herman J. Russomano, Esq.**
Russomanno, Fiore & Borello, P.A.
Museum Tower #2101
150 W. Flagler Street
Miami, FL 33130

**Carlos E. Silva, Esq.**
Silva & Silva, P.A.
2665 South Bayshore
Suite 601
Miami, Florida 33133

**J.B. Spence, Esq.**
Payne, Leeds, et al.
Grove Professional Building
2950 S.W. 27th Avenue
Suite 300
Miami, Florida 33133

**William R. Scherer, Esq.**
Conrad Scherer, et al.
633 South Federal Highway
Fort Lauderdale, FL 33301

**Mark D. Swanson, Esq.**
Courthouse Tower, Suite 325
44 West Flagler Street
Miami, Florida 33130

**Philip L. Valente, Esq.**
1801 South Austrain Avenue
Suite 201
West Palm Beach, FL 33409

**W.E. Gary, Esq.**
Gary, Williams, Parenti, et al.
221 East Osceola Street
Stuart, Florida 34994

**Jonathan Wald, Esq.**
100 S.E. 2nd Street
Suite 3900
Miami, Florida 33131

**Wayne Walker, Esq.**
440 Louisiana
Suite 1325
Houston, Texas 77002

**Robert K. Whohlfeld, Esq.**
Marguilies, Rones & Wohlfeld, P.A.
16105 N.E. 18th Avenue
North Miami Beach, FL 33162

**Philip L. Valente, Jr., Esq.**
Valente & Natale, L.L.C.
1801 South Australian Avenue
SUite 201
West Palm Beach, Florida 33409

24596\p\s1.p1

## DEFENDANTS' SERVICE LIST

**Francis Anania, Esq.**
Anania, Bandklayer & Blackwell
100 Southeast Second Street
Suite 3300
Miami, Fla. 33131

**William G. Burd, Esq.**
Burd, Downs & Magathan
601 Brickell Key Drive
Suite 500
Miami, Fla. 33131

**Dennis M. O'Hara, Esq.**
**Gregory M. Palmer, Esq.**
Wicker, Smith, Tutan,
   O'Hara, McCoy, Graham & Ford, P.A.
One East Broward Blvd.
Suite 500
P.O. Box 14460
Fort Lauderdale, Fla. 33302

**Thomas Scott, Esq.**
Davis, Scott, Weber & Edwards
Two South Biscayne Blvd.
One Biscayne Tower
Suite 1500
Miami, Fla. 33131

**Thomas C. Woods, Esq.**
Kimbrell & Hamann, P.A.
Suite 900, Brickell Centre
799 Brickell Plaza
Miami, Florida 33131-2805

**Willie E. Gary, Esq.**
221 E. Osceola Street
Stuart, Florida 34994

**Holly Davidson Schuttler, Esq.**
Dubosar & Davidson, P.A.
2255 Glades Road
Suite 300 East
Boca Raton, Florida 33431

**John W. Walker, Esq.**
1723 Broadway
Little Rock, AK 72206

24596\P\SL.1

IN RE:

AIR CRASH IN

THE FLORIDA EVERGLADES

ON MAY 11, 1996

_____

The above styled case came on before the
HONORABLE MARGARITA ESQUIROZ on April 8, 1997 at
73 West Flagler Street, Miami, Florida.

KLEIN, BURY & ASSOCIATES, INC.

2

APPEARANCES:

        PODHURST, ORSECK & JOSEFSBERG,
        BY:  AARON PODHURST, ESQUIRE,
        and STEVE MARKS, ESQUIRE,
        on behalf of Plaintiff.

        GROSSMAN & ROTH, P.A.,
        BY:  STUART GROSSMAN, ESQUIRE,
        and TOM PENNEKAMP, ESQUIRE,
        on behalf of Plaintiff.

        GOLDFARB & GOLD, P.A.,
        BY:  ALAN GOLDFARB, ESQUIRE,
        on behalf of Plaintiff.

        BY:  FRANK GRANITO, JR., ESQUIRE,
        on behalf of Plaintiff.

        BY:  JESSIE MCCRARY, ESQUIRE,
        on behalf of Plaintiff.

        BY:  DIANE E. COOLEY, ESQUIRE,
        on behalf of Plaintiff.

        BAUMEISTER & SAMUELS,
        BY:  MITCH BAUMEISTER, ESQUIRE,
        on behalf of Plaintiff.

        SEARCY, DENNEY, SCAROLA, BARNHART & SHIPLEY,
        BY:  CHRISTOPHER SPEED, ESQUIRE,
        on behalf of Plaintiff.

        BY:  JOHN HOWIE, ESQUIRE,
        on behalf of Plaintiff.

        BY:  BOB PARKS, ESQUIRE,
        on behalf of Plaintiff.

        BY:  DAWN WATKINS, ESQUIRE,
        on behalf of Plaintiff.

        KRUPNICK, CAMPBELL, MALONE, ROSELLI, BUSER,
        SLAMA & HANCOCK,
        BY:  KEVIN MALONE, ESQUIRE,
        on behalf of Plaintiff.

        BY:  BRUCE MARGULIES, ESQUIRE,
        and VICTOR RONES, ESQUIRE,

LEEDS & COLBY, P.A.,
BY:  JACK PARIS, ESQUIRE,
on behalf of Plaintiff.

BY:  JEANNETE LEWIS, ESQUIRE,
on behalf of Plaintiff.

BY:  JEAN LAWS, ESQUIRE,
on behalf of Plaintiff.

BY:  JEFFREY ALLEN, ESQUIRE,
on behalf of Plaintiff.

BY:  MARK SWANSON, ESQUIRE.

WICKER, SMITH, TUTAN, O'HARA, McCOY, GRAHAM &
FORD,
BY:  DENNIS O'HARA, ESQUIRE, and
GREGG PALMER, ESQUIRE, and
MARC LEVENSON, ESQUIRE,
on behalf of Defendant Valujet.

ANANIA, BANDKLAYDER & BLACKWELL,
BY:  FRANCIS ANANIA, ESQUIRE,
on behalf of Defendant ValuJet.

KIMBRELL HAMAN,
BY:  THOMAS C. WOODS, ESQUIRE,
on behalf of Defendant Sabertech.

BY:  TOM SCOTT, ESQUIRE,
on behalf of Defendant Sabertech.

BURD, DOWNS & MAGATHAN,
BY:  JOHN McPHEE, ESQUIRE,
on behalf of Defendant Aerothrust.


GALLWEG, GILLMAN, CURTIS, VENTO & HORN,
BY:  DAVID R. HEFFERNAN, ESQUIRE,
and STEVEN B. GILLMAN, ESQUIRE,
also present.

4

Thereupon:

THE COURT:  Good morning, I have received a motion entitled motion to hold status conference on all ValuJet cases and a motion for the formation of a steering committee, which is what, I believe, has been noticed for hearing for today and that was filed by Steve Marks of Podhurst, Orseck & Josefsberg.

Maybe you want to go ahead and argue that or if you think it is appropriate to have those present who would like to state their appearance, that's fine, too.

MR. PODHURST:  Whatever Your Honor wants, if you want an appearance, that's fine.

THE COURT:  They are pretty much on your certificate of service.

MR. PODHURST:  I think everybody is on our certificate of service, Your Honor.  I think.

THE COURT:  Let me put it this way:  If there is anyone in the courtroom who would like to speak ---

MR. GROSSMAN:  I would like to speak.

MR. ALLEN:  So would I.

MS. COOLEY:  So would I.

5

1          THE COURT:  Okay, then if Mr. Podhurst ---

2          MR. PODHURST:  I thought some background

3     would be helpful, because I think much of what I

4     am going to say is not -- I hope is not

5     contradicted, it is just historical.

6          Your Honor, there are 110 deaths out of

7     the ValuJet crash case, which Your Honor knows

8     about, having read the papers the various times

9     they have been filed.

10          There is approximately 50, 55 cases in the

11     State Court or more, which all have been

12     consolidated before you, there have been 30

13     approximately cases that have settled as we

14     talk, these numbers are not exactly known at any

15     movement -- at any minute.  Approximately a

16     third of those cases are -- 17 of them are our

17     cases because we have the largest number of

18     cases.

19          We called meetings in our office

20     informally among the plaintiff lawyers.  These

21     were informal meetings.  We had a series of

22     those meetings held in our offices in which we

23     tried to coordinate what kind of proceeding we

24     can -- we could go forward with in these cases.

25          Most of the defense lawyers were known to

6

1     me, not only personally that they were defense

2     lawyers in this case, the local lawyers being --

3     the lead local being Tom Scott, who was

4     representing Sabertech, and Dennis O'Hara, who

5     is representing ValuJet, both of whom are in the

6     courtroom now, so I have had many informal

7     discussions with them during this period of

8     time.

9          Again, the defendant removed these cases

10    to Federal Court under certain theories which I

11    won't bore Your Honor with.

12         My office took the lead, with the approval

13    of all of the lawyers.  Joel Eaton of my office

14    wrote the briefs in regard to the motion to

15    remand.

16         Eventually, without boring you, those

17    cases were sent back to the State Court.  They

18    eventually got consolidated in front of you for

19    these hearings that are starting today.

20         In addition, there were cases in Federal

21    Court around the cases, MDL, multidistrict

22    proceeding which occurred in Richmond, Virginia

23    with the approval of all the lawyers, some 30,

24    40 would gather in my office, it is hard to tell

25    at any one time how many lawyers appeared, but

1   in that range, 30 or so lawyers would appear in

2   my office.

3        I went to Richmond, Virginia and the

4   defendants and the plaintiff argued in front of

5   the MDL.

6        This was brought back here and it was

7   brought back here, so there is a parallel

8   proceeding being handled in front of Judge

9   Davis, those cases which are properly in Federal

10  Court, because you can't be in Federal Court if

11  you have a diversity case, if you have a Florida

12  plaintiff and your against a Georgia Defendant,

13  being Value Jet and Phoenix, an Arizona

14  Defendant, Sabertech.  You could be in Federal

15  Court with diversity so there are some cases in

16  front of Judge Davis.

17        At one of the hearings -- excuse me, at

18  one of the hearings in front of Judge Davis, we

19  them of a proceeding that took place in my

20  office.

21        In my office one day, when the 30 or 40

22  people had gathered, it was decided it would be

23  a good idea to have a steering committee and I

24  think Mr. McCrary, Mr. Goldfarb, some other

25  people that had a case suggested we have a

8

1      steering committee and I was appointed

2      informally as chairman of the steering committee

3      and four other law firms, all experienced

4      aviation law firms, were appointed as other

5      informal members of the committee.  They are

6      present in the courtroom.

7              Mr. Lear is not present, but his partner

8      Frank Granito, Junior is present in the

9      courtroom.

10             Frank, would you just stand up.

11             I don't know if Your Honor knows who they

12     are.

13             There is Mitch Baumeister from New York,

14     also experienced aviation attorneys.

15              John Howie is somewhere here from Texas.

16     Here is Kevin Malone from Fort Lauderdale,

17     Florida.

18             Those were the other four members, all of

19     whom, without making them feel egotistical, are

20     very experienced aviation lawyers who I have

21     dealt with for many years and the group decided

22     informally, approximately 90 percent of the

23     cases that we knew about, voted in favor of

24     them.  There were a couple of people who said

25     they were not agreeing to any formal steering

9

1 committee.

2   I said approximately because it is very

3 hard, we were taking everybody's word for how

4 many cases they had and the best judge will be

5 to see who approves or disapproves today.

6   In any event, it seems that the majority

7 of the cases present wanted this informal

8 committee.

9   We did agree informally there would be a

10 hiatus period for people to settle cases without

11 the committee seeking anything for costs or fees

12 or anything like that, which, of course, is not

13 even done today, that would be way down the

14 line, if the Court wants to give any committee

15 fees and we settle several months down the line,

16 approximately April 1st, go out and settle your

17 cases if you can.

18   During that period of time is the -- one

19 other thing I forgot, Judge Davis, in open court

20 at a hearing, said he would approve the

21 appointment of that committee, so we have a

22 status in front of Judge Davis, because we are

23 going to submit the same order to Judge Davis as

24 we intend to submit to you for your

25 consideration, it would be the same committee

10

1 and we would try to have consolidated discovery.

2   During this period of time, Your Honor, as

3 capacity as chairman, Steve Marks, my unofficial

4 liaison, we circulated stipulations for

5 liability with the defendants and where they

6 would agree to waive or not contest liability in

7 order for a case to be only tried on damages.

8   There is an alleged allegation of punitive

9 damages in this case and a lot of pros and cons

10 among the lawyers, whether it is a good idea or

11 bad idea, but we took the thoughts of all of the

12 plaintiff lawyers, we collected them, we sent it

13 out, we came back, Joe Eaton of my office

14 handled that.

15   I went to New York two or three times and

16 argued with my brothers on the other side, who

17 are the co-counsel of Mr. O'Hara and Mr. Scott,

18 who are also New York firms, who are co-counsel

19 with them as to trying to get certain things in

20 there with them yelling at me and them yelling

21 at me, we kept changing the stipulation to the

22 point of getting closer and closer.  It was a

23 vehicle.  Most people have not signed the

24 stipulation.  There are those that have, but

25 most people have not.  We went through that

11

1      procedure.

2           At the same time, Mr. Marks has also been

3      in touch with the U.S. Attorney's Office with

4      regard to the records.  We have a notice to

5      produce that's been sent out in this case that

6      we have drawn among the informal committee,

7      between us, and sent it out, but the fact is,

8      Judge, we can no longer have no status.  If we

9      are going to have a committee, we can't make

10     agreements with the defendants that are binding

11     unless we have a status as a committee.  I can't

12     tell Dennis and Tom, yes, we will agree to start

13     depositions May 20th or May 15th unless we have

14     it.  They are insistent.  They are right that

15     there should be one coordinated discovery.  I

16     don't disagree with them.  There should be the

17     same discovery in Federal Court as in State

18     Court.

19          By the way, there are some pending cases

20     in Georgia State Court which can't be removed.

21     We have been in touch with those lawyers.  We

22     are trying to work out a coordinated discovery

23     with them, two weeks, take it one time, which

24     the defendant is Mr. Scott and Mr. O'Hara have

25     asked us to try to do.  We are in the process of

1          doing that.  I don't know whether we will fail

2          or succeed, but we are trying to do that.

3          That's obviously has to be subject to the

4          Georgia lawyers' approval or else the defendant

5          will have to do their thing, but in any event,

6          we are trying to do all of those things.

7               There are a couple of people who have

8          objected to the informal nature of this

9          committee.

10              I have filed in front of you now the

11         Curriculum Vitae of the four other lawyers.  I

12         have practiced enough in front of you, I have

13         filed my own, but you know who I am, so we have

14         filed it.

15              Your Honor, I don't know exactly what the

16         objections are.  We are not asking for any fees

17         or costs at this time.  We have not asked for

18         anything for what we have done for many people

19         who have settled their cases.  I am advised by

20         the defendants there are 15, 20 settlements

21         already that have occurred.

22              I checked with New York on that, so I

23         think the benefit of our work has been helpful,

24         not harmful.  And I assume those people settled

25         for numbers they were satisfied with or else

1    they wouldn't have settled.  They are good

2    lawyers representing their clients, so I don't

3    know the nature of the objections, Your Honor.

4         I am prepared to do whatever Your Honor

5    thinks appropriate with regard to this steering

6    committee.  I think we do have to have a

7    steering committee in place.  I have no

8    objection for another month for people to settle

9    or another six weeks or whatever, although we

10   did give them three months.  At some point, we

11   have to go forward and if we spend some costs, I

12   think people all have to share in those cases.

13   Nobody gets a free ride.

14        At the end of the case, depending on if

15   you have tried or not tried the case, you will

16   have discretion, as well as Judge Davis, if it

17   is tried in front of him, probably it will be

18   tried in front of you, whether you want there to

19   be any fees or not, have any fees for the

20   attorneys in the case.

21        We are not asking for fees.  We are not

22   asking for anything.  We need a formal theater

23   for consolidated discovery.  Speaking for my 17

24   plaintiffs, we need to have consolidated

25   discovery and we, as plaintiffs, need to move

14

1    this along.  The time for talk is growing to an

2    end.

3        I love Mr. O'Hara and I love Mr. Scott,

4    but we need to go forward and have the discovery

5    done.  We've got to move the cases along, so I

6    would ask you, Your Honor, pursuant to my motion

7    to appoint the same committee that Judge Davis

8    said he is happy with, which would be myself as

9    chairman, Mr. Marks is going to assist me, Mr.

10   Baumeister, if you need to ask him any

11   questions, Mr. Malone is here, Mr. Howie is here

12   and Mr. Granito, Mr. Lear's partner is here, so

13   they are present.

14       Your Honor, I believe all of these people

15   are fine aviation lawyers.  I have worked with

16   them extensively.  I recall working with them,

17   two of them, in the American Airlines case and I

18   have no doubt that the five of us can do the

19   job, Your Honor, and I appreciate your hearing

20   from me.

21       THE COURT:  You have listed 16 case

22   numbers, anyway, in the style of this.

23       MR. PODHURST:  Those were some cases to

24   get in front of you, but we sent notice to all

25   of the cases and all that we know about.  Your

15

1        Honor, if I have missed a case, it is because it

2        has either been filed or the defendant hasn't

3        told me about it, but we have -- we believe we

4        have given notice to everyone.

5              THE COURT:  Everyone.

6              MR. PODHURST:  Steve, did we?

7              MR. MARKS:  I think we have given notice,

8        Your Honor, to everybody who has filed as of

9        this date.

10             MR. PODHURST:  There are some who have not

11       filed.

12             THE COURT:  Sixteen cases in this style.

13             MR. MARKS:  Those are our cases attached

14       as an exhibit, all of the other case numbers,

15       Exhibit A.

16             MR. PODHURST:  Exhibit A should have what

17       we know about, Your Honor.

18             THE COURT:  And those who have notice, you

19       sent notice.

20             MR. MARKS:  We noticed everybody, not only

21       in the Florida cases, but Federal and in the

22       Georgia State Court cases.

23             THE COURT:  You said there were 15 or 20

24       settlements.

25             MR. SCOTT:  Nineteen.

16

```
 1              THE COURT:  Are the cases pending before
 2       me?
 3              MR. SCOTT:  I am not sure they are, but
 4       there are 19 settled.
 5              MR. PODHURST:  Tom would know.  I am not
 6       privy to the settlements.
 7              MR. SCOTT:  I am not sure they were all in
 8       front you.
 9              THE COURT:  Approximately 15 to 20?
10              MR. SCOTT:  Yes.
11              THE COURT:  Out of how many?
12              MR. SCOTT:  Sixty roughly cases have been
13       filed in the United States.
14              MR. O'HARA:  I think the number right now
15       is 20.
16              MR. SCOTT:  Twenty?
17              MR. O'HARA:  Yes.
18              THE COURT:  I assume they are all mine.
19              MR. SCOTT:  Other than the ones in Federal
20       Court or in some other court, they are in front
21       of you, ma'am.
22              THE COURT:  I know the others in circuit
23       court, they are mine.  If there are some in
24       Federal ---
25              MR. PODHURST:  There appears to be.  It is
```

KLEIN, BURY & ASSOCIATES, INC.

17

1   hard to say.  I think all of them filed, there

2   appears to be approximately 40 cases or so still

3   left.  There is probably 45 or 50.  Some of them

4   have been settled and the paperwork has not gone

5   through.  I think you are going to end up with

6   about 40 left.  I think it is either 19 or 20.

7   Dennis and Tom would have a better number than I

8   would have since they are settling.

9          THE COURT:  Thank you, Mr. Podhurst.  I

10  know some folks indicated that they wanted to be

11  heard, but I am interested in hearing anybody

12  who opposes the motion.

13          MR. ALLEN:  Your Honor, I am Jeffrey Allen

14  on behalf of the plaintiff committee counsel.  I

15  have no objection, per se, to the committee

16  being formed.

17          THE COURT:  Who do you represent?

18          MR. ALLEN:  I represent Landy (phonetic),

19  Case Number 96-9938.

20          Plaintiff's Committee, I have no objection

21  to it being formed, obviously, we do not need

22  that.

23          My question is procedure, how are you

24  going to go about it in terms of assessing the

25  fees the committee might be entitled to.

18

1          The reason why I said that because I feel

2     I am in the process of settling my case perhaps

3     within the next month or two, so I would need to

4     know some set terms as to whether or not I --

5     what I would have to pay to the committee, if I

6     would have to pay at that point.

7          That's my concern at this juncture right

8     now, simply that.

9          THE COURT:  Anybody else.

10          MR. GILLMAN:  Steve Gillman on behalf of

11     Frank Shire (phonetic) as Personal

12     Representative.  I guess I am a little bit

13     ignorant as to confess that I have never been

14     provided with an order, served with an order of

15     transfer.  My case was not assigned to this

16     division.  I have not seen a transfer order.  I

17     haven't been served with a transfer.  If

18     everybody says it has happened ---

19          THE COURT:  Transfer order meaning within

20     the Circuit Court?

21          MR. GILLMAN:  Yes, ma'am.

22          THE COURT:  You are not talking about a

23     remand order?

24          MR. GILLMAN:  No, ma'am.

25          THE COURT:  Transfer order within the

19

1    circuit, if it hasn't been transferred, it will

2    be.  It should be.

3         MR. GILLMAN:  But as of right now, what I

4    am saying is that as of today, when this motion

5    is pending, I haven't received a motion for

6    transfer, nor have I received an order of

7    transfer.

8         THE COURT:  You need to take that up with

9    the administrative judge, but I think that there

10   is no question, all cases are going to get

11   consolidated, get one division.

12        MR. GILLMAN:  I have no doubt of that and

13   I have no objection to that.  It is a purely

14   procedural issue that it isn't at this point as

15   far as I know.

16        My problem with, I guess, the

17   formalization is that I don't know the necessity

18   for it, and, number two, I don't know that --

19   there is a procedure in Federal Court -- there

20   is a procedure manual for complex litigation

21   procedures that specifically call for this type

22   of a thing.  It is not unusual.

23        It is customary, common place for this to

24   be consolidated for discovery purposes and, in

25   some instances, consolidation for liability

20

```
 1          trial or what have you.

 2               Whether or not certain of the plaintiffs

 3          decide that for their own contractual purpose,

 4          they want to consolidate and have a group

 5          represent them or not is a matter in my view ---

 6               THE COURT:  I don't think they are talking

 7          about that.

 8               MR. GILLMAN:  I know we are not.

 9               The point I am making, I don't know of any

10          procedure for the Court to mandate this type of

11          procedure as opposed to having a situation in

12          which if the parties -- if I want to or my

13          client wants to appoint Mr. Podhurst and a

14          committee to do whatever we can to deal with the

15          matter with private contract in Federal Court,

16          there is a procedure for that.

17               My problem is I am not aware of any

18          procedure, and my client does not agree,

19          basically to turn over their representation to

20          this committee.

21               I think that as a result of the committee

22          formation, I think we would work carefully -- I

23          don't want my objection in any way to indicate

24          any questions as to their abilities, they are

25          some of the finest attorneys, not just in the
```

21

1    district, but in the country.

2        The point being that we can work very

3    closely with them to schedule.  However, being

4    represented by the committee, fine, that can be

5    known, that can be formalized, I don't think the

6    Court needs to be involved in that.

7        I don't think the Court needs to be

8    involved in setting of fees or whatever.  That's

9    a matter of private contract, in the absence of

10   a procedure permitted like in Federal Court

11   where they have a set procedure for that.

12       So our point is that we will work very

13   closely, we don't anticipate any problem with

14   the consolidation of discovery, we don't see any

15   problem in that we will attend or not attend

16   depositions as we would in any other type of

17   case based on the interests and rights of our

18   own individual client.

19       For that reason, in the absence -- I

20   haven't seen anything in -- the motion basically

21   says that the Circuit Court --

22       THE COURT:  There is not ---

23       MR. GILLMAN:  -- has the authority to

24   mandate that my client be represented by

25   somebody else under circumstances in which we

22

1    would be required to pay fees and costs to

2    somebody else in the absence of agreement and

3    that's our objection.

4         THE COURT:  I understand.  I understand

5    your position.  Thank you.

6         Anybody else would like to object?

7         MS. COOLEY:  I am Diane Cooley.  I

8    represent Randy Leonard whose three children

9    died in this crash and also we have an unfiled

10   case that we intend to file in court.  I filed

11   this response this morning, Your Honor, to the

12   motion for formalization.  I don't know if you

13   have a copy of it yet.

14        Your Honor, what we are asking for in this

15   response to the motion for formalization is for

16   the Court to take control of the process and to

17   set up a procedure for appointing this

18   committee.  The way in which this committee

19   appointment, this formalization that they are

20   seeking, has come about is not the usual way for

21   having a committee appointed.

22        Mr. Podhurst talked about the -- let me

23   start by saying, I don't doubt the

24   qualifications of these members of the

25   committee.  I don't know, because I haven't seen

23

```
 1        them, but I don't doubt their qualifications.

 2        They all seem very experienced, but, Your

 3        Honor --

 4             THE COURT:  Go ahead.

 5             MS. COOLEY:  -- the way in which this has

 6        come before the Court has not been consistent

 7        with the manual for complex litigation which

 8        governs the appointment of steering committees

 9        in cases like this.

10             Mr. Podhurst discussed some meetings that

11        happened at his office, the meeting at which a

12        so-called vote was taken to elect this

13        committee.

14             Prior to that meeting, a letter had gone

15        out advising that there would be a meeting at

16        Mr. Podhurst's office.  The letter stated that

17        what would be discussed was the proposed

18        stipulation.

19             Then when we got to the meeting, all of a

20        sudden, what was being discussed was appointment

21        of a steering committee.  There were a number of

22        attorneys that were not present at that meeting.

23        I objected at that meeting to taking a vote in

24        the absence of all counsel who would have a say,

25        so I also objected at that time to the formation
```

24

1      of the committee.

2             Your Honor, I have since spoken to counsel

3      who have indicated that they did not know that a

4      steering committee was going to be discussed at

5      that meeting; that they had not had notice that

6      any appointment was going to be made of a

7      committee.

8             Mr. Podhurst talked about affording people

9      a date of April 1st before which to settle their

10     cases.

11            Well, that's a matter for the Court to

12     decide, not for this committee to decide.

13            In addition to which, the people who

14     didn't attend that meeting never heard of any

15     April 1st ---

16            THE COURT:  They are not here today.  You

17     had notice of today's motion and today's hearing

18     which is what is important.  Really, you had

19     notice of the meeting and what happened?

20            MS. COOLEY:  Yes, except their contention

21     is that a majority of lawyers voted for them at

22     this meeting, but the lawyers didn't have -- all

23     the lawyers didn't have notice of that meeting,

24     nor did they notice ---

25            THE COURT:  What are you proposing?

25

1        Somebody else -- first of all, I think you

2   are taking the position, if I understand you

3   correctly, that the Court doesn't really have

4   the authority that is expressly said anywhere

5   ---

6        MS. COOLEY:  No, that's not our position.

7        THE COURT:  I just should go to the manual

8   for complex ---

9        MS. COOLEY:  Yes, our position is the

10   Court is the body with the authority, not this

11   committee.

12        THE COURT:  Hand me the manual for complex

13   litigation that governs in Federal Court.

14        I understand.

15        MS. COOLEY:  Yes, it governs Federal

16   Court, but I believe it is instructive in a case

17   like this as to the means of appointing a

18   committee.

19        THE COURT:  You wouldn't have an objection

20   to the Court appointing a committee following

21   that manual?

22        MS. COOLEY:  Exactly.

23        THE COURT:  Your second concern is that

24   the lawyers who would be in that committee?

25        MS. COOLEY:  Yes, what we would like for

1       the Court to do is to supervise the process, set

2       a date for accepting applications to the

3       committee, set forth what you would like to be

4       included in those applications by way of

5       qualifications, and set forth just the

6       requirement and set forth the terms on which the

7       committee will serve.

8               Your Honor, they said they are not asking

9       for a fee at this time, but they will be talking

10      about seeking a fee after April 1st or at some

11      date after April 1st.

12              The point that was raised by this

13      gentleman, whose name escapes me at this time,

14      was a good one, which is that essentially what a

15      committee does is take away the right of the

16      individual attorney to litigate their case,

17      which is a very important right, and given the

18      significance of it, I believe that attorneys

19      have the right to be heard and to know who it is

20      that is taking over their case.

21              We didn't get served with these Curriculum

22      Vitae until last night after I had already left

23      to get on a plane to come here.  We didn't even

24      get served with a motion until April 2nd after

25      working hours.

27

1          THE COURT:  Is that basically your

2     position?

3          MS. COOLEY:  Yes, that's -- our further

4     position is that, prior to appointing a

5     committee, that the Court should require the

6     applicants to the committee to serve not only

7     the people with the filed cases, people who know

8     they represent plaintiffs because those people's

9     cases will also eventually be subject to

10    whatever happens.

11         Now, if those people file in this Court,

12    they will be subject to paying committee fees

13    and having this committee litigate their case.

14    They should have a right to be heard on who is

15    on there is who is going to be doing that.

16         THE COURT:  Right, who are the members of

17    the committee.

18         MS. COOLEY:  Who are the members of the

19    committee, what are the terms on which they

20    serve.

21         THE COURT:  That's what we are here about

22    today.  You are saying you haven't had a chance

23         ---

24         MS. COOLEY:  Exactly, I haven't had enough

25    of a chance, in addition to which there have

28

1    been attorneys who represent plaintiffs who were

2    not served.

3         THE COURT:  You know that for a fact?

4         MS. COOLEY:  Yes, I know for a fact.

5         THE COURT:  They were not served notice?

6         MS. COOLEY:  They don't have filed cases,

7    but they represent cases.

8         THE COURT:  First of all, those people are

9    not entitled notice,

10       You have to have a filed case that's only

11    before me.  That is the only thing that entitles

12    you to notice.

13       The fact that there is somebody out there

14    representing someone who is thinking of filing a

15    lawsuit doesn't entitle them ---

16         MS. COOLEY:  Other Court appointed

17    steering committees have required applicants --

18    required applicants to serve who they know

19    represent plaintiffs whose cases will be filed

20    whose cases will be affected.

21         THE COURT:  I guess if you are saying

22    that, it may be true, but as far as I am

23    concerned, the only notice that I would require

24    at this time would be notice to lawyers in cases

25    that have been filed.

29

1        Are you done with your presentation?

2            MS. COOLEY:  The only final point is that

3    we would request if this Court does appoint a

4    committee, we would like the Court to establish

5    a date after which fees will be assessed and not

6    the date of April 1st which has already come and

7    gone, but a date in the future which is also the

8    standard practice in a case like this.

9            THE COURT:  All right.

10           MR. PODHURST:  May I say something for the

11   record?

12       This is not meant to be argumentative with

13   Ms. Cooley, who is doing her job, but her three

14   cases have been settled.  She should have

15   advised the Court of that.  She has no case

16   pending in this Court that's not settled.  I

17   talked to Dominick Alfara (phonetic) this

18   morning in New York City who is lead person for

19   United States Aviation Underwriters, Mr.

20   O'Hara's client.  She advises me that all -- he

21   advised all three Leonard cases are settled, so

22   Ms. Cooley, who is giving me the hardest time,

23   does not have a filed case in this Court and I

24   object to that.

25           THE COURT:  Yes.

1          MR. SCOTT:  Your Honor, Tom Scott on

2     behalf of Sabertech.  We want to advise the

3     Court on behalf of the defendants' counsel,

4     first of all, we believe this Court, like the

5     United States Court, has inherent discretion to

6     appoint such a committee.

7          Secondly, it has been our position, you do

8     have to provide due process sufficiently to all

9     parties to take whatever action is necessary.

10          And, thirdly, we urge the Court to appoint

11     a committee.

12          We have been working with counsel for

13     several months now trying to work this out and

14     have gotten along very well in resolving many of

15     the issues and it is our position that we would

16     like to deal with a coordinated committee where

17     there is one Court ordered discovery, one State,

18     one Federal, so all of the witnesses have to be

19     deposed a minimum of occasions.

20          In order to obtain this result, we think

21     the appointment of this committee is essential

22     and we have worked very well with the committee

23     to date, both in the United States action and in

24     this action.

25          To do otherwise would basically put us

31

1    before the Court on multiple occasions on

2    multiple cases dealing with multiple issues, a

3    lack of coordinated result which would cost the

4    parties and the Court time and effort, so on

5    behalf of all the defendants, we urge the

6    action.

7         MR. O'HARA:  On behalf of ValuJet, we

8    agree certainly it is in the best interest of

9    all the parties.  We urge the Court to do so.

10        THE COURT:  Let me ask you a question.

11   The committee that Judge Davis has appointed is

12   apprised of these six attorneys that are listed?

13        MR. SCOTT:  What Judge Davis said is what

14   Mr. Podhurst has said, that he will approve a

15   committee.  He has not approved the committee

16   per se.  In open court, he will approve and has

17   accepted the concept of that appointment being

18   the committee, but he has not entered a

19   technical order to that effect.

20        MR. PODHURST:  We told him the results of

21   what occurred in this informal meeting.  We told

22   him who the five lawyers were and he said he

23   would appoint those five lawyers.

24        We have not submitted an order because we

25   wanted to come down here and try to see if we

32

1       can get a coordinated committee appointed by

2       both.   Judge Davis said he would approve the

3       committee for the majority of the cases.

4                MR. SCOTT:  He is correct.

5                MR. PODHURST:  We have the majority, we

6       being the people who are approving this, have a

7       majority -- by far a majority of the cases

8       present, so Judge Davis, we have not submitted

9       him the formal order, yet most of the cases are

10      in front of you, so it seems to me the proper

11      thing to do is to come to you first and to do

12      the same thing, but Judge Davis has indicated he

13      will appoint the committee of the five of us

14      when ---

15               THE COURT:  There are six in your motion?

16               MR. PODHURST:  Pardon.

17               THE COURT:  There is six in your motion.

18               MR. GROSSMAN:  Himself and five.

19               MR. PODHURST:  It is really five.

20               Steve, my partner, is doing most of it.

21               THE COURT:  It is you ---

22               MR. PODHURST:  Really five firms.

23               THE COURT:  You are not ---

24               MR. MARKS:  I am working with him.

25               MR. PODHURST:  Yes.

33

1              THE COURT:  But he wouldn't be official?

2              MR. PODHURST:  Exactly, five firms.  I

3  just -- he was put in because he is doing most

4  of the liaison work and stuff, but it would be

5  the same five firms, but we thought it would be

6  appropriate to come here, because most of the

7  cases are here and I suspected most of the cases

8  are going to stay here and not be refiled in

9  Federal Court.  There are some in Federal Court.

10  It seemed the right thing to do was to come

11  here, Your Honor.

12              THE COURT:  So he has indicated that he is

13  going to appoint the five lawyers who have been

14  ---

15              MR. PODHURST:  Upon submission of the

16  order.

17              THE COURT:  What else has happened in

18  Federal Court?

19              MR. PODHURST:  Judge, actually in Federal

20  Court, we have had a -- most of our fight has

21  been over remanding, which has occurred, but

22  there are consolidated discussions going on in

23  discovery.  We have not formalized it.  It seems

24  to me that until we get a formal status in this

25  Court, it would be presumption to tell Judge

34

1        Esquiroz we are speaking for everybody.

2              We can't speak for everybody, so I want to

3        say something, we have contacted everybody on

4        every issue.  I don't think there should be any

5        idea here that all of the lawyers aren't being

6        contacted before we entered into anything.

7              Ms. Cooley will say that.  I think

8        everybody would say we are trying to circulate

9        everything.  We haven't agreed to anything.  We

10       didn't agree to anything in the stipulation.  We

11       took everybody's comments and we have done that.

12       So with discovery, we will -- as we have sent

13       out -- I didn't tell you, we sent out a master

14       complaint to everybody so they would have a

15       master complaint.  We did that voluntarily, so

16       that the plaintiffs would have a master

17       complaint.

18             I do want to say one other thing, Judge

19       Farina in the Aero Air case did appoint a

20       committee in the Circuit Court.  I agree with

21       them.  It doesn't have a manual for complex

22       litigation in the State procedure as such, but I

23       think it is an inherent power of a judge to,

24       whether it is a class action or anything else,

25       have people being represented.

35

1               I do not intend, if I am appointed, do

2      anything without -- of any merit without

3      circulating to every member of the filed cases

4      for their input and we have done that and that's

5      the right thing to do.

6               If they want to come to a deposition and

7      they have something to add by notes or

8      something, fine.  Obviously, everybody can't ask

9      questions because Dennis and Tom will be up in

10     arms if you have 22 interrogators, but certainly

11     there is no attempt here not to have anybody

12     represent their clients.

13              The problem, Your Honor, is if we don't do

14     this, we are not going to have any depositions

15     scheduled that's going to go forward without 100

16     arguments in front of you.  You are not going to

17     allow everybody to take the same deposition of

18     every defendant's employees, so the handwriting

19     is on the wall, you have to have a formalization

20     of some kind of committee and, Your Honor,

21     whether you pay us or not, that's your business.

22     At some point, you don't want to pay any fees,

23     then don't.  You want to give everybody a free

24     ride two and a half years from today, that's

25     your prerogative.  We are not asking for fees

36

1     now.  We are trying to formalize a committee.  I

2     personally think that there should be a

3     formalized committee and I think that people

4     should pay their pro rata part of the costs.  I

5     don't think anybody should have ---

6          THE COURT:  Where is the authority for

7     that in the manual?

8          MR. PODHURST:  Judge, there is a specific

9     statutory authority in Federal Court.

10          As you know, there is none in the State

11     Court to my knowledge.  He was correct.  There

12     is no statutory effect except I can tell you

13     that in every complicated complex case that I

14     know of in State Court in the Aero Air in front

15     of Judge Farina, they did appoint the committee,

16     they did, so I think it is inherent power.

17     There are all kinds of rules.  We can brief it

18     if Your Honor is concerned about it.  I don't

19     think there is any specific authority.

20          THE COURT:  In that instance, aside from

21     appointing a committee to coordinate discovery,

22     do all other things that facilitate the handling

23     the case, whether or not fees were awarded ---

24          MR. PODHURST:  In the Aero Air case fees

25     were not awarded.  We settled all of those cases

37

```
 1        with the exception of some crew cases that were
 2        later tried that I, as a member of the
 3        committee, was not involved in.  All of those
 4        cases' settlement, to my knowledge in the cases
 5        in front of Judge Farina.  There were no fees
 6        awarded.
 7             MR. PARKS:  Just for the ---
 8             THE COURT:  State your appearance.
 9             MR. PARKS:  Bob Parks, back in '73 or '74,
10        to date myself, Judge Harvey Duval (phonetic)
11        appointed a committee based upon inherent power
12        of the Court to represent all of the people who
13        were killed or hurt in the Concord cafeteria
14        fire on Miami Beach in which there were probably
15        100 people that were on fire that were caused by
16        a bomber, who set the place on fire and in that
17        case, he appointed a committee, which I was on,
18        who tried the liability and then appointed a
19        subcommittee to try all the damages, and in that
20        event, Judge Duval awarded fees and costs to the
21        committee, so I think there is precedent in the
22        Circuit Court for the motion that is being filed
23        today.
24             MR. SCOTT:  You asked what the United
25        States counsel has basically done.
```

38

```
 1              Three things, first, he has indicated that
 2      he is going to --
 3              THE COURT:  Judge Davis.
 4              MR. SCOTT:  -- Judge Davis, he is going to
 5      appoint a committee.  Secondly, he has indicated
 6      in open court that he is going to enter a
 7      coordinate a discovery order.
 8              We have not done that because we cannot
 9      finish it up until the counsel and committee
10      have the power to do that.  That's absolutely
11      essential in both Courts and that discovery be
12      coordinated and then he indicated that he
13      believes that mediations have try to settle
14      these cases and that that should occur sometime
15      in the near future and we are making an urgent
16      effort to try to settle the cases.  We've
17      already settled 20 cases.  I think that's a
18      pretty good effort.  We think that the mediation
19      process early on might be appropriate along that
20      regard.
21              That's it.
22              Counsel can correct me if he thinks ---
23              MR. PODHURST:  That's correct.
24              THE COURT:  One at a time.
25              I think Mr. Grossman.
```

1          MR. GROSSMAN:   Stuart Grossman, Judge, I

2     strongly support the formation of the committee,

3     because in personal experience, being on the

4     committee in the Calle crash, American Airlines

5     crash, I have seen what a committee does, how it

6     works.  It doesn't matter if you represent one

7     client or fifteen clients, there is no way you

8     are going to get coordinated discovery in this

9     case.  This is just not going to happen absent a

10    select number of people going forward and asking

11    questions.

12         The second thing is that it saves the

13    individual client's money to pay a pro rata

14    share of the costs, that you are buying a

15    portion of the transcript, let's say one lawyer

16    buys a transcript and sends me a photocopy at

17    his interoffice rate, and he does that for

18    someone else, we set up a facility like that so

19    the actual costs are reduced to individual

20    clients and to the individual law firms, but,

21    most importantly, the people who have applied,

22    most of whom I am familiar with, are as good as

23    it is going to get in terms of their knowledge

24    about aviation law and what occurred during this

25    case and I am comfortable giving up whatever it

40

1    means to them to take this ball, run with it,

2    coordinate the discovery, do the work and

3    conduct themselves in a gentlemanly and orderly

4    fashion because, otherwise, we are going to get

5    just -- it just not going to work.  These are

6    mass disasters.  That is what this is all about.

7        I am sorry that there is not a specific

8    rule and I understand on talking to the Florida

9    Civil Procedure Rules Committee at the next

10   board of governor meetings to get this thing

11   rolling, we really should have a corollary

12   committee rule.  It is sort of embarrassing,

13   truthfully, that Federal Court has one, we

14   don't.  Particularly, when all these cases we

15   file remands.  We have all benefited already by

16   the work that, whether they call it, the

17   committee or Podhurst firm, whatever you wish to

18   call it.  There was a mighty struggle to come

19   back to State Court.  They did this on their

20   own.  They won.  We have all received a direct,

21   not a refracted, but a direct benefit from the

22   work that's been done.

23        If that is a sample of what they are going

24   to be doing, which it is, I personally, not

25   wanting to be a committee member, endorse the

KLEIN, BURY & ASSOCIATES, INC.

41

1    formation of the committee as it stands and I do

2    it very, very strongly because I know we will

3    never be able to work out the schedules.

4         Could you imagine a witness having to

5    submit to 25 or 30 different depositions,

6    forgetting the lawyers.

7         I don't think it is fair to the defense.

8    Could you imagine their fees, bring this person

9    back in, set this, set this on March 22nd.  Now

10   this is March 30.

11        I say this again over and over again, I

12   think the witnesses will lose their minds.

13        Thank you.

14        MR. GILLMAN:  If I might, Judge, and

15   sounding as though I am the lone dissenter here,

16   if that's the case ---

17        THE COURT:  Somebody kept you company.

18        MR. GILLMAN:  Judge, there are three

19   separate issues and they have been melded

20   together and I think they need to be separated

21   again.

22        The first is the power of this Court to

23   consolidate discovery.

24        Absolutely, there are rules the Court has

25   the authority to consolidate discovery.  There

42

1     won't be 25 or 30 depositions.  There will be

2     one.  As long as this Court consolidates

3     discovery and the Federal Court consolidates

4     discovery, hopefully the Georgia people will

5     consolidate discovery and there is an unified

6     discovery plan, there will be one deposition of

7     each witness.

8         Now, yes, there will be more than one

9     interrogatories.

10        The committee, to the extent there is a

11    committee, of voluntary plaintiffs that appoints

12    a person to do that and I think that's a great

13    idea ---

14        THE COURT:  With 40 lawyers asking

15    questions?

16        MR. GILLMAN:  There can be -- that's

17    happened before, Judge.  It doesn't happen

18    because of the matter of a practice they are not

19    allowed to ask repetitive questions.  They are

20    not allowed to do all of things.

21        THE COURT:  You reduce that half by 15,

22    realistic of those, can you imagine what ---

23        MR. GILLMAN:  I have been in depositions

24    like that before, Judge, and I can tell you from

25    my own personal experience what happens is that

43

1    there is a primary interrogator, most of the

2    questions are asked, and if there is individual

3    questions, there are a few of them and that's

4    it, but the first issue is that consolidation of

5    discovery.  There is no question about that.

6        The second issue is the pro rata aspect of

7    costs.  I think as a matter of practicality, the

8    plaintiffs are going to get together and to the

9    extent that costs can be prorated with regard to

10   transcripts, with regard to experts, with regard

11   to a lot of things like that, it is in the

12   plaintiffs' best interest to do it and it will

13   be done, but that can be done as a matter of

14   contract, matter of agreement.  The Court

15   doesn't have to get involved in that.

16        The third issue is the issue of fees and

17   that's the final issue.  I think when we get

18   into the issue I am hearing, there is an

19   inherent authority.

20        THE COURT:  Counsel, let me tell you, I am

21   not going to make a decision today that fees --

22   should there be an award.  I probably will ask

23   for a brief memorandum on that issue, so ---

24        MR. GILLMAN:  That's actually not the

25   point that I am making, Judge, is that to the

44

1    extent that work is being done for the benefit,

2    to the extent that there is, I am not opposed to

3    fees being awarded.  The issue is, and I want

4    the Court to understand ---

5        THE COURT:  You don't want a committee.

6    You want all lawyers to be able to participate

7    in the discovery, that is the bottom line.

8        MR. GILLMAN:  No, what I am saying to Your

9    Honor, the existence of a voluntary committee, I

10   think until all the cases are in State Court,

11   that people were talking about voluntary

12   committee, I am not aware of any authority.

13   This isn't a class action.  There isn't a manual

14   of complex litigation, and because I don't -- I

15   am not aware of any authority and I have got a

16   client who is opposed, I have to represent my

17   client and my client's representation requires

18   me to stand up and oppose this.

19       Thank you, Judge.

20       THE COURT:  I don't know that there is

21   much difference between a voluntary committee

22   and one that simply has a sanction of the Court.

23   What is the difference?

24       MR. GILLMAN:  I think the difference is

25   very simple and that is to the extent that I

45

```
1        have a question that I want to ask and I pass
2        that note to Mr. Podhurst, and I have the
3        greatest respect for him, but he decides he
4        doesn't want to ask that question, it doesn't
5        get asked, that's the difference between a Court
6        appointed committee and a voluntary committee in
7        which the committee is doing whatever it is
8        doing.  The simple fact of the matter, if the
9        Court -- if there is authority in Federal Court
10       to appoint a federal steering committee, the
11       same thing has happened in State Court,
12       appointed lead counsel in a class action, those
13       people who have authority.
14            I don't have any authority to talk with
15       Mr. Scott or Mr. O'Hara and I don't have any
16       authority to do anything.  I can't require the
17       committee to do anything and that's the
18       difference.
19            In Federal Court, that procedure is there.
20       In State Court in class actions, it is there,
21       but it is not there in nonclass action.
22            This is not a class action case and the
23       point that I am making is simply my client's
24       individual right to be represented by counsel of
25       their choosing.
```

46

1        Now, Mr. Grossman is right and if it is

2    brought before the Florida Bar or brought before

3    the legislature and rules change or legislature

4    is passed as statute, that's fine, I might even

5    support it, but that's not where we are right

6    now.

7        MR. McCRARY:   Judge?

8        THE COURT:   Yes.

9        MR. McCRARY:   Jessie McCrary, this Court

10   has the inherent power not to have a case in

11   your Court.   That's inherent.

12       Now, the problem with this case that many

13   people don't want to admit, people are worried

14   about the fees.   Every plaintiff's lawyer in

15   here has the same problem as to the question of

16   liability and the question of punitive damages.

17   I don't see the committee going off on a wild

18   goose chase that's going to be adverse to my

19   interests.

20       My damages interest are my interests, not

21   the committee's.

22       It appears to me, Judge, that it is better

23   if the Court lets plaintiff counsel select the

24   committee they want.   It is the same thing if

25   Court says, okay, guys find a mediator, the

47

1    Court doesn't necessarily appoint the mediator

2    for the parties but will get the mediator that

3    the parties will agree upon.  It appears here

4    that somebody is going to disagree about the

5    committee.  If a majority of plaintiffs' counsel

6    can agree on these five law firms and no one has

7    said yet that these five people or five law

8    firms are not, if not the best in the country,

9    among the finest in the country.  They are

10   geographically spread.

11        It appears to me, Judge, that if a

12   majority of the plaintiffs' counsel have

13   selected this collective law firm to represent

14   it in this litigation, that the Court should

15   approve it based on the fact that there is no

16   rule in Florida and I believe that the manual of

17   complex litigation is a guide to you, it is not

18   mandated on you, but at this point, if a

19   majority of those people who are plaintiffs'

20   counsel wanted a committee, that the Court ought

21   to approve it.

22        If there are individuals who want to go on

23   this trip alone, let them, and I assure that

24   before this litigation gets two months old,

25   people will be running back once they find out

48

```
 1        the kind of costs they are going to incur and

 2        find out the kinds of problems that the

 3        defendants are going to properly give them for

 4        making the job much more difficult.

 5             Lastly, all the lawyers in here have an

 6        obligation to you in this complex kind of case

 7        to make this go as smoothly as possible.  I

 8        suggest to the Court that the committee is one

 9        way that we can stop the chaos, bring it to a

10        head, get through with the litigation.

11             THE COURT:  Thank you.  I have basically

12        got two lawyers, three lawyers, is it true, that

13        you settled all the cases that you were in?

14             MS. COOLEY:  We settled three filed cases,

15        but they haven't been dismissed yet.  We have

16        one case left to file that we will be filing in

17        this Court which would be subject to any order

18        that the Court would enter.

19             THE COURT:  Was it your firm that called

20        my office for a hearing to approve a settlement?

21             MS. COOLEY:  No.

22             THE COURT:  It was a Fort Lauderdale

23        firm.

24             MS. COOLEY:  No, it wasn't our firm.

25             THE COURT:  I don't believe that's one
```

49

1        point that I have to approve settlements that

2        are reached, when you are not dealing with a

3        minor or any incompetent.  I don't believe that

4        there is -- you enter your order dismissing the

5        case and approval of stipulation for settlement

6        perhaps ordering the parties to comply with the

7        regular order.  That's done ex-parte.

8            MR. SCOTT:  In this case, you may have a

9        problem because we have already seen situations

10       where various survivors are being represented by

11       different lawyers and there is contentions over

12       personal representatives, all that kind of

13       stuff.

14           I am not saying Your Honor is wrong.  This

15       one case has rewritten the entire legal world,

16       so I mean, we have never seen so many new things

17       in one case.

18           I am telling you, you may say that, I

19       agree with you, but we may be down here tomorrow

20       for this thing with two lawyers fighting that

21       about what they represent in the way of

22       survivors

23           THE COURT:  If you have a question ---

24           MR. SCOTT:  We may be knocking on your

25       door, we are dealing with that issue right now.

50

1    THE COURT:  Or if there are minors

2    involved by way of ---

3    MR. SCOTT:  It is different already.  You

4    are in for a surprise, some legal twists on this

5    one.

6    THE COURT:  Fine.  If anybody wants a

7    hearing on it, if you feel it is necessary, then

8    you can request it and I will give you one.

9    MR. GROSSMAN:  Mr. Scott is saying that it

10   is not possible to have more than two parents.

11   MR. SCOTT:  Until this case, I would have

12   agreed with you.

13   MR. GROSSMAN:  We are in the age of

14   cloning, Judge, and some of us are looking for

15   parents, others are not.  I am happy where I am.

16   THE COURT:  Let me say this:  After having

17   heard from you quite extensively, I believe that

18   it makes a whole lot of sense to have a

19   committee to act in this case.  It makes a whole

20   lot of sense.  I really don't see how it could

21   be any other way and I believe that the Court

22   probably has inherent authority to do that.  It

23   has been done in the past, which was pointed out

24   to me.  I don't see why not.  Now, that's the

25   only thing that I will tell you today.

51

1        What I will do is I will, if Judge Davis

2   has indicated the same thing, but he hasn't

3   appointed a committee, one or the other is going

4   to have to come first.

5        MR. PODHURST:   Judge, I am going to, in

6   view of what you have just said, submit what we

7   call a committee pretrial order number one which

8   will be the same to both judges, which we have

9   done in the past and ---

10        THE COURT:   Have you submitted it to Judge

11   Davis?

12        MR. PODHURST:   We are going to do it at

13   the same time.   We wanted to get your approval

14   to do so.   Now you have given it to us, we would

15   submit it to you with notice to everybody.

16        THE COURT:   I may go ahead and wait until

17   Judge Davis comes down with his order and then

18   follow suit.

19        Over there is where the manual explicitly

20   applies, unless there is a problem with that.

21        MR. PODHURST:   No, there is no problem.

22   We would submit to Judge Davis and to you at the

23   same time.   We can just advise you, if you tell

24   us ---

25        THE COURT:   Fine, immediately.

52

1          MR. PODHURST:  When we receive an order,

2      we will advise everybody else.  He said he

3      would.  I assume he will.

4          THE COURT:  Obviously, I agree with his

5      thoughts regarding the coordination of discovery

6      order and mediation to follow immediately as

7      soon as possible.  I also will announce who the

8      members of that committee will be in that order.

9      I will say that if anyone feels that they

10     seriously want to be members of that committee,

11     you can file an application before me, with me,

12     of course, with notice to everybody applying and

13     all your qualifications and ask that you be in

14     that committee and I am going to set a date for

15     that in two weeks, April 22nd.  I don't know if

16     the order will come first or that's too long,

17     maybe 10 days.  April 22nd, fine, two weeks.

18         I also would like at some point in time, I

19     am not deciding anything about fees at this

20     time, and I would like to see some authority on

21     that because, whereas, I believe I probably have

22     inherent authority to appoint a committee and to

23     enter a discovery order and set a deadline and

24     set the procedure for the order of the case, I

25     am not sure about fees because fees ---

53

1          MR. PODHURST:  To be perfectly clear, I am

2     not asking for fees.

3          THE COURT:  I understand.

4          MR. PODHURST:  What your order is going to

5     say at the proper time is that application will

6     be made.

7          I do want to say, Judge, I feel very

8     strongly about it, I think that every case

9     should bear its proportionate cost of this case

10    and, indeed, to put that in the pretrial order,

11    one, I think it is inappropriate to make the

12    people who do the work spend for costs because

13    it is clear their client should be paying for

14    it.  In any event, I think each case should pay

15    a proportionate share of the case.

16         THE COURT:  All I am saying is that, Mr.

17    Podhurst, before I decide any of those, I would

18    like to have some briefing on the matter and

19    perhaps you can brief for the plaintiffs.  If

20    anybody else wants to file anything in that

21    regard, I don't mind.  And for, of course, the

22    defendants will be ---

23         MR. PODHURST:  We will do the very best we

24    can.  This is a departure from the Concorde

25    case, we haven't forgotten it did occur, I will

54

1    get to Mr. Eaton, we will do the best we can to

2    tell you, but I can tell you there is no

3    statutory authority, but I think it is inherent.

4         Thank you.

5         MR. PARKS:  Judge, if I may respectfully,

6    Judge Simons was in County Court and he was

7    brought up to handle those cases.  He was the

8    person who handled all that with reference to

9    costs and liability trial, it may be worthwhile

10   if that resource also ---

11        THE COURT:  I am not saying I won't.  I am

12   saying that I --

13        MR. PARKS:  I am saying that ---

14        THE COURT:  -- might need a brief because

15   on Florida, it is -- usually if you have the

16   authority under a contract or statute, it is

17   possible that there exists the authority here

18   because of the fact that we are basically doing

19   something that is envisioned by this manual.

20        MR. PODHURST:  Could I ask one other thing

21   which is off the subject, part of the status

22   conference, so I think it is important, it is

23   very helpful, Your Honor, I know because this is

24   an unusual case, that every 30 days or so that

25   if we could have in advance, they are out of

55

```
 1        town lawyers, a hearing if the defendants need
 2        it, if the plaintiffs need it, we do that in an
 3        all of the MDL cases, all of the consolidated
 4        case.  I don't know whether it would be Judge
 5        Marcus doing it in American.  Even if it is only
 6        half hour, it moves things along when we are
 7        bickering with the defendants or they are
 8        bickering with us and if Your Honor would
 9        consider doing that on a periodic basis, we are
10        not going to abuse the thing, it would be very
11        helpful, because there are things, even though
12        we are not bickering, we need you to decide.
13             THE COURT:  You want a status conference
14        like every four weeks?
15             MR. PODHURST:  We have been doing it in
16        the American cases every 30 days and if we --
17        Judge Davis has had the Pan Am case, it worked
18        pretty well.
19             THE COURT:  You are looking at Friday,
20        probably every -- Friday every four weeks.
21             MR. PODHURST:  That would be wonderful.
22             THE COURT:  I guess I should set a date
23        for the briefing of those issues at this time.
24             MR. PODHURST:  Your Honor, what I assume
25        anybody else who wants to apply to be in the
```

56

1    committee apply by the 22nd.

2        THE COURT:  Apply by the 22nd.

3        MR. PODHURST:  We are going to send in the

4    proposed order to you and Judge Davis,

5    obviously, whenever, it is not up to me, you

6    will have that in front of you at that time.

7    Then you can add to the committee or not add to

8    the committee or change the committee, do

9    whatever you are going to do.  We would go

10   along.  Then what I would like, it is now April

11   8th, maybe you could give us the 30 days or 28

12   days and another hearing.

13       THE COURT:  Not a problem.

14       MR. PODHURST:  When they take up at that

15   time all the things pending, hopefully Judge

16   Davis will have ruled.  If anybody wants to be

17   heard on any subject, but I want to make this

18   clear, we are not applying for fees now.  That

19   was never such an intent.  It is not an intent.

20   That will be up to you upon a motion, if and

21   when we do -- maybe all the cases will be

22   settled, who knows, but what my suggestion is if

23   we could have that hearing, we set it down now,

24   we will be here in four weeks Friday, May 9th,

25   if Your Honor is going to be in town, it would

57

1          be helpful.

2                    THE COURT:  It has got to be a nonjury

3          week or special appointment week.  Take a look

4          at the calendar, please.

5                    You said May 9th.

6                    MR. PODHURST:  It could be ---

7                    THE COURT:  April 21st is a jury trial.

8          May 9th is not.

9                    MR. PODHURST:  How about the 16th or the

10         2nd?

11                   THE COURT:  Should be fine.

12                   I am saying not Friday the week of the

13         21st or 28th because that's a jury.  It has got

14         ---

15                   MR. PODHURST:  May 9th is okay.

16                   THE COURT:  I believe so.

17                   MR. PODHURST:  What time of day, Your

18         Honor, would ---

19                   THE COURT:  Probably in the morning, any

20         time in the morning.

21                   You want 10:00?

22                   MR. PODHURST:  I have got that date.  I

23         will put in the notice, what we submit, so

24         everybody will be getting notice of it, save us

25         a little money to do it all in one pleading.

58

```
1          THE COURT:  Now, there is another matter
2     that I would like to touch upon.  There is some
3     things that I want to announce here.  I want to
4     point out Mr. Grossman has represented me in the
5     past.  It has been two or three years and I only
6     maintain a professional relationship with him
7     and his firm since then, nothing special, but I
8     need to be able to tell you that.  I would make
9     that disclosure in any case, but particularly in
10    this case.
11         MR. GROSSMAN:  For the rest of my life you
12    are going to keep disclosing it.
13         THE COURT:  If there are no objections to
14    that, but I need to disclose it.  This happened
15    in the year 1994, it ended in early 1995 and I
16    do not maintain any relationship with Mr.
17    Grossman or his firm other than the same type of
18    relationship that I do with all the lawyers.
19         MR. GROSSMAN:  As your former lawyer, if
20    you would stop bringing it up ---
21         THE COURT:  Mr. Grossman, I don't think I
22    can.
23         MR. GROSSMAN:  I wish you would already.
24         THE COURT:  I want to be safe in this case
25    and, of course, if anyone objects, you have the
```

59

1        right to do that.  If you don't, we can proceed.
2              The other thing is there has been many of
3        you, and I don't know that I have to mention
4        this, because everyone knows, many of you who
5        served on my campaign committee on both sides, I
6        see so many faces here, Mr. Scott on the defense
7        side and a number of you on the plaintiff side.
8        I see Mr. Grossman there, Mr. McCrary, Mr.
9        Grossman, Podhurst, probably Mr. Marks, I can't
10       remember.  You have probably got them on both
11       sides because there were, by the time it was
12       over with, over 100 members on the committee, a
13       lot of lawyers that served, but I thought I
14       would make that disclosure to you.
15             So having made those disclosures, I think
16       having said that, having set deadlines for
17       certain things that need to be done here, the
18       only thing you need to do is call my office for
19       that hearing time that you want in May, make
20       sure it gets on the calendar that you can send
21       the notices out, on April 22nd for applications
22       and send it in the order.
23             MR. PODHURST:  We will send in an order
24       setting April 22nd and we will put in that order
25       May 9th, if that works out with your office,

60

1          Your Honor.

2               THE COURT:  Okay.  Have a nice day.

3               (Thereupon, the proceedings were

4          concluded.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

61

1

2

3    <u>CERTIFICATE OF REPORTER</u>

4

5    STATE OF FLORIDA )

6                     ) ss.

7    COUNTY  OF  DADE )

8

9         I, SUSAN BOLTON, a Notary Public in and for the

10   State of Florida, do hereby certify that I reported the

11   proceedings in front of the HONORABLE MARGARITA

12   ESQUIROZ at the time and place hereinabove set forth;

13   and that the foregoing pages numbered from 1 to 60,

14   inclusive, constitute a true and correct transcription

15   of my shorthand report of the proceedings.

16        I FURTHER CERTIFY that I am neither attorney nor

17   counsel for, nor related to nor employed by any of the

18   parties connected with the action, nor financially

19   interested in the action.

20        WITNESS MY HAND AND SEAL in the City of Miami,

21   Dade County, Florida, this 19th day of June, 1998.

22

23        _____

24             SUSAN BOLTON

25

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.   96-09546 CA 10
           96-09816 CA 10
           96-09897 CA 10
           96-10127 CA 10
           96-10150 CA 10
           96-10717 CA 10
           96-11228 CA 10
           96-11229 CA 10
           96-11232 CA 10
           96-11325 CA 10
           96-11366 CA 10
           96-11489 CA 10
           96-11541 CA 10
           96-11562 CA 10
           96-11731 CA 10
           96-12807 CA 10
           96-12808 CA 10
           96-12809 CA 10
           96-13207 CA 10
           96-13745 CA 10
           96-14324 CA 10
           96-14325 CA 10
           96-14326 CA 10
           96-18301 CA 10
           96-18777 CA 10
           96-18778 CA 10
           97-03155 CA 10
           97-05059 CA 10
           97-05710 CA 10
           97-06430 CA 10
           97-06428 CA 10

IN RE:  AIR CRASH IN THE FLORIDA
EVERGLADES ON MAY 11, 1996

_____/

## ORDER APPOINTING
## PLAINTIFFS' LIABILITY STEERING COMMITTEE

THIS ORDER sets forth the proposed practices and

procedures to be followed in the above-referenced action, as may be

- 1 -

amended by further order of this Court.   This Order has been discussed and agreed to by members of the Plaintiffs' Steering Committee and Defendants.

The following Plaintiffs' attorneys comprise the Plaintiffs' Steering Committee:

Aaron Podhurst, Esq. as Chairman and Steven C. Marks, Esq. as Liason Counsel of the Podhurst, Orseck, Josefsberg, et al., lawfirm; Mitch Baumester, Esq. of the Baumeister & Samuels lawfirm; John Howie, Esq. of the Howie & Sweeney, L.L.P. lawfirm; Gerald Lear, Esq. of the Speiser, Krause, et al. lawfirm; and Kevin Malone, Esq. of the Krupnick, Campbell, et al. lawfirm.

I

## GENERAL MATTERS

a.   Defendants have designated four (4) attorneys to receive service of all pleadings, papers, and documents in these actions.   See Schedule "A".   Service on Plaintiffs shall be completed by service on each member of the Plaintiffs' Steering Committee ("PSC").   See Schedule "B".

b.   All discovery proceedings in these actions shall be conducted as set forth below.   All discovery in related, but unconsolidated actions shall be conducted, to the greatest extent possible, with the discovery plan set forth below.

c.   A copy of this order shall be placed in the court file for each of the cases set forth in the attached Schedule "C". Interested parties are directed to Case No. 96-09546-CA 10 which will be designated the master file for consolidated pleadings, for

future pleadings and orders which may relate to all the cases arising out of this aircrash. Pleadings and orders relating to all the consolidated cases shall be filed in Case No. 96-09546-CA 10 and shall bear the additional designation **"ALL CONSOLIDATED CASES"** underneath the case number. Cases transferred to this division subsequent to the date of this order shall automatically be deemed consolidated. Pleadings related solely to individual cases will continue to be filed in individual case files only.

II

**PLAINTIFFS' STEERING COMMITTEE ("PSC")**

d. A committee of six (6) Plaintiffs' counsel, who will act as lead counsel with responsibilities as outlined below, are appointed as the Plaintiff's Steering Committee (PSC) and are designated as follows: Aaron S. Podhurst, Esq. as Chairman and Steven C. Marks, Esq. as Liason Counsel of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A.; John Howie, Esq. of Howie & Sweeney, L.L.P.; Gerald R. Lear of Speiser Krause, et al.; Kevin Malone, of Krupnick Campbell, et al.; and Mitch Baumeister, Esq., of Baumeister & Samuels.

e. The PSC shall have the following responsibilities:

(1) To advance the common interests of the Plaintiffs in the prosecution of liability and legal issues on damages in the actions against Defendants and any other parties hereafter joined or added as Defendants;

- 3 -

(2)   To brief and argue motions and appear at all pretrial proceedings on behalf of Plaintiffs and to oppose all motions of parties whose interests are adverse to Plaintiffs;

(3)   To participate in and supervise the discovery proceedings including the depositions of witnesses, preparation of written interrogatories, requests for production of documents, requests for admissions, and other discovery requests;

(4)   To initiate motions to compel discovery or for the preservation of evidence; and

(5)   To perform such other duties and functions as this Court may direct.

f.   Participation by and status of non-PSC plaintiffs' counsel are determined as follows:

(1)   Plaintiffs' counsel shall be fully bound by the actions or non-actions of the PSC as if those actions or non-actions had been undertaken by plaintiffs' counsel, with leave to file application with the Court at any time for good cause shown why plaintiffs' counsel should not be bound by a particular action or non-action of the PSC; and

(2)   Plaintiffs' counsel may attend all depositions, submit non-duplicative questions to the PSC at such depositions, gain access to all discovered documents at the document depository, and submit to the PSC suggestions as to the scope and content of discovery.

g.   Aaron S. Podhurst of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., is appointed by the Court as

- 4 -

Chairman of the PSC who, along with Steven C. Marks of his office who will serve as liaison counsel, will have the following duties and responsibilities:

(1)  To receive on behalf of the PSC and distribute promptly to counsel for non-PSC Plaintiffs all relevant notices and other documents from the Court or from other parties, including Defendants;

(2)  To submit to the Court and distribute to counsel for Defendants, including any parties hereafter joined or added as Defendants, any notices or other documents including without limitation, notices of depositions, written interrogatories, requests for production and inspection of documents, requests for admissions, and motions, as requested and approved by the PSC;

(3)  If so directed by the PSC, to establish and maintain a depository for all documents produced by Defendants; and

(4)  To perform such other functions as may be authorized by further order of this Court.

### III

### EXPENSES OF THE PSC

h.    It is the opinion of the Court that a final decision as to the appropriate method for reimbursement of the reasonable expenses of the PSC and Liaison Counsel should not be made at this time.   In the interim, the Court directs that counsel for each passenger aboard Flight 592 who has filed a lawsuit in this court or which is transferred to this court shall within thirty (30) days

- 5 -

submit the sum of $1,500 to the trust account of Podhurst, Orseck, et al., as an initial assessment for PSC costs.  The funds shall be held in an interest bearing account, subject to further Court Order.  The PSC and liaison counsel may apply to the Court as necessary, but no more frequently than every three months, for reimbursement.

### IV

### CREW PLAINTIFFS' COORDINATING COUNSEL

i.    It does not appear necessary at this time for the Court to appoint a Crew Plaintiffs' Coordinating Counsel ("Crew Counsel"), but should events or petitions by counsel suggest that a Crew Counsel would be useful or necessary, this Court will reconsider that question.

### V

### LIABILITY DISCOVERY

j.    The members of the PSC will be responsible for all liability discovery on behalf of the Plaintiffs.

k.    The Chairman of the PSC, after consultation, may designate and assign such duties and responsibilities as they shall deem necessary for the preparation of these cases for trial.  PSC members may designate other counsel to conduct discovery if they are absent, and counsel for Defendants will be advised of the names of such authorized counsel.

l.    The PSC is authorized to prepare liability fact stipulations, requests for admissions, interrogatories, requests

- 6 -

for production and inspection of documents, deposition notices, and other things on behalf of all Plaintiffs.

m.   All liability discovery shall be done in a coordinated and consolidated basis by the PSC.  PSC's liability discovery requests will be served on all Defendants.  Responses to PSC's liability discovery requests will be served upon the Chairman of the PSC, each member of the PSC, and all other Defendants.  As to discovery depositions, a total of three members of the PSC (or their designees) may question each deponent, but no attorney for any Plaintiff shall be excluded from attending the examination of witnesses and other proceedings.   Such attorney may suggest questions to be posed to such witnesses through the PSC member, provided that such questions shall not be repetitious.

n.   Any Defendant may establish a document depository at a location of its choice, the cost of which will be borne by the Defendant maintaining such depository.

## VI

### TRIAL

o.   Trial of the first case, as selected by the Court, along with pre-trial deadlines will be scheduled at the next status conference to be held on June 6, 1997 at 2:30 p.m.

## VII

### SETTLEMENT

p.   (1) Counsel for any Plaintiff or Plaintiffs shall advise the Clerk of the Court by letter of settlement on any case

- 7 -

or cases.  Said letter shall set forth the names of all Plaintiffs and decedents and the date said settlement was achieved, but shall not contain any terms or conditions of settlement.  An information copy of said letter will be sent to the Chairman of the PSC.

(2)  Where court orders are required by law, or by this Court, to protect the interests of infants, or otherwise, said orders may be issued by this Court or by an appropriate probate, surrogate or chancery state court as long as they are in compliance with Administrative Order No. 91-36 entered on November 13, 1998.  All letters, documents and orders that set forth the terms and conditions of settlement and filed in any other court may also be placed under seal and remain confidential, after compliance with Florida Rule of Judicial Administration No. 2.051 as to Orders, letters and documents "filed" with the Court.

(3)  In each action wherein a final settlement is reached later than April 30, 1997, or ten (10) days after the entry of this Order, whichever first occurs, each Plaintiff shall be obligated for the proportionate share of expenses of the PSC, as will be provided by further Order of this Court.  The provisions of this Order concerning compensation of the PSC for their services shall not apply to any Plaintiff who is a party to a final settlement earlier than April 30, 1997 or ten (10) days after the entry of this Order, whichever first occurs.  The date the letter is filed, informing the Clerk of the Court of each settlement, will control the question of whether the case is subject to the payment

of PSC fees.  Preservation of funds to compensate the PSC for their services will be effected by further Order of this Court.

## VIII

### PSC FEES

      q.  It is the opinion of the Court that a final determination of the appropriate fee in non-PSC cases to be awarded should not be made until termination of the proceedings before this Court or upon motion by the PSC and Order thereon if such occurs earlier.  In the interim, the Court expects that the PSC will submit a proposed plan for such an award on a date to be set subsequently by the Court.  PSC members are directed to keep accurate time records concerning PSC work.

      DONE AND ORDERED in Chambers, Miami, Dade County, Florida on this 12th day of May, 1997.

                          HONORABLE MARGARITA ESQUIROZ

Copies furnished to:
  All Counsel of Record
  identified on "Exhibit "D"
24596\p\amac

- 9 -

A

## SCHEDULE "A"

Francis Anania, Esq.
Anania, Bandklayer & Blackwell
100 Southeast Second Street
Suite 3300
Miami, Fla. 33131

Dennis M. O'Hara, Esq.
Wicker, Smith, Tutan,
  O'Hara, McCoy, Graham & Ford, P.A.
One East Broward Blvd.
Suite 500
P.O. Box 14460
Fort Lauderdale, Fla. 33302

Thomas Scott, Esq.
Davis, Scott, Weber & Edwards
Two South Biscayne Blvd.
One Biscayne Tower
Suite 1500
Miami, Fla. 33131

Thomas C. Woods, Esq.
Kimbrell & Hamann, P.A.
Suite 900, Brickell Centre
799 Brickell Plaza
Miami, Florida 33131-2805

24596\P\SL.def

B

SCHEDULE "B"
Plaintiffs' Steering Committee

Aaron S. Podhurst, Esq. - Chairman of PSC
Steven C. Marks, Esq. - Member of PSC
Podhurst, Orseck, Josefsberg, et al.
25 West Flagler Street
Suite 800
Miami, Florida 33130

Mitch Baumeister - Member of PSC
Baumeister & Samuels
One Exchange Plaza
New York, NY 10006

John Howie, Esq. -- Member of PSC
Howie & Sweeney, L.L.P.
Park Place on Turtle Creek
Suite 1400
Dallas, TX 75219

Gerald Lear, Esq. - Member of PSC
Speiser, Krause, et al.
1300 N. 17th Street
Suite 310
Rosslyn, VA 22209

Kevin Malone, Esq. - Member of PSC
Krupnick, Campbell, et al.
700 S.E. Third Avenue
Courthouse Law Plaza, Suite 100
Fort Lauderdale, FL 33316

24596\p\psc.lis

C

## SCHEDULE "C"

**CASE NO. 96-11325 CA 10**
Merthlyn Allaway and Darren Allaway, Individually and as Co-Personal Representatives of the Estate of James Allaway, deceased, vs. Valujet Airlines, a Georgia Corporation, Aerothrust Corporation, a foreign corporation with its principal place of business in Dade County Florida and Sabretech Incorporated a foreign corporation with its principal place of business in Dade County Florida (Defendants)

**CASE NO. 96-11228 CA 10**
Pedro Rivera, Individually and as Administrator and/or Personal Representative of the Estate of Cecilia Cabrera, deceased, vs. Valujet Airlines, a Georgia Corporation, Aerothrust Corporation, a foreign corporation with its principal place of business in Dade County Florida and Sabretech Incorporated a foreign corporation with its principal place of business in Dade County Florida

**CASE NO. 96-09546 CA 10**
Brandon Perkins, Individually and as Administrator and/or Personal Representative of the Estate of Laurese Perkins, deceased, vs. Valujet Airlines, a Georgia Corporation, Aerothrust Corporation, a foreign corporation with its principal place of business in Dade County Florida and Sabretech Incorporated a foreign corporation with its principal place of business in Dade County Florida

**CASE NO. 96-10127 CA 10**
Sandra M. Thompson, Individually and as Administratrix and/or Personal Representative of the Estate of Jerrold Austen Thompson, deceased, vs. Valujet Airlines, a Georgia Corporation, Aerothrust Corporation, a foreign corporation with its principal place of business in Dade County Florida and Sabretech Incorporated a foreign corporation with its principal place of business in Dade County Florida

**CASE NO. 96-11232 CA 10**
Shawn Perry and Patricia Clifton, Individually and as Administrator and/or Co-Personal Representative of the Estate of Whilhelmenia Oliver, deceased vs. Valujet Airlines, a Georgia Corporation, Aerothrust Corporation, a foreign corporation with its principal place of business in Dade County Florida and Sabretech Incorporated a foreign corporation with its principal place of business in Dade County Florida

**CASE NO. 96-11229 CA 10**
Marcie Ehrlichman as Personal Representative of the Estate of
Bradley Stewart Ehrlichman, deceased vs. Valujet Airlines, a
Georgia Corporation, Aerothrust Corporation, a foreign corporation
with its principal place of business in Dade County Florida and
Sabretech Incorporated a foreign corporation with its principal
place of business in Dade County Florida

**CASE NO. 96-13745 CA 10**
Richard L. Westhoff, Individually and as Personal Represenetative
of the Estate of Susan Hefferman Carpenter, deceased vs. Valujet
Airlines, a Georgia Corporation, Aerothrust Corporation, a foreign
corporation with its principal place of business in Dade County
Florida and Sabretech Incorporated a foreign corporation with its
principal place of business in Dade County Florida

**CASE NO. 96-18301 CA 10**
Barbara Ann Nevil, Individually and as Co-Administratis and David
R. Nevil, Individually and as Co-Administrator of the Estate of
Andrew David Nevil, deceased vs. Valujet Airlines, a Georgia
Corporation, Aerothrust Corporation, a foreign corporation with its
principal place of business in Dade County Florida and Sabretech
Incorporated a foreign corporation with its principal place of
business in Dade County Florida

**CASE NO. 96-14325 CA 10**
Michael David Favero as Personal Representative of the Estate of
Franco Favero, deceased vs. Valujet Airlines, a Georgia
Corporation, Aerothrust Corporation, a foreign corporation with its
principal place of business in Dade County Florida and Sabretech
Incorporated a foreign corporation with its principal place of
business in Dade County Florida

**CASE NO. 96-14324 CA 10**
Michael David Favero as Personal Representative of the Estate of
Elizabeth Thomas Favero, deceased vs. Valujet Airlines, a Georgia
Corporation, Aerothrust Corporation, a foreign corporation with its
principal place of business in Dade County Florida and Sabretech
Incorporated a foreign corporation with its principal place of
business in Dade County Florida

**CASE NO. 96-14326 CA 10**
Michael David Favero as Personal Representative of the Estate of
Laura Elizabeth Favero, deceased vs. Valujet Airlines, a Georgia
Corporation, Aerothrust Corporation, a foreign corporation with its
principal place of business in Dade County Florida and Sabretech
Incorporated a foreign corporation with its principal place of
business in Dade County Florida

**CASE NO. 97-03155 CA 10**
Ruth Guiler, Individually and as Personal Representative of the
Estate of Stephan Karl Guiler, deceased vs. Valujet Airlines, Inc.,
Valujet, Inc., et al.

**CASE NO. 97-05059 CA 10**
Paul Jordan Smith, Jr., as Personal Representative and
Administrator of the Estate of Paul Jordan Smith, III, deceased vs.
Valujet Airlines, Inc., Valujet, Inc., et al.

**CASE NO. 97-06430 CA 10**
Star Bank, N.A., Indiana as Personal Representative of the Estate
of Kenneth Woods Crye, deceased vs. Valujet Airlines, Inc.,
Valujet, Inc., et al.

**CASE NO. 97-06428**
Vicki Lyn Snarr, Individually and as Personal Representative of the
Estate of Edna Crye, deceased vs. Valujet Airlines, Inc., Valujet,
Inc., et al.

**CASE NO. 97-05710 CA 10**
Patrice Bowman as Personal Representative of the Estate of Robert
Woodus, Jr., deceased, and as Natural Parent and legal guardian of
Robert Woodus, III, a minor vs. Valujet Airlines, Inc., Valujet,
Inc., et al.

**CASE NO. 96-11731 CA 10**
Sam Baker, Jr. as Personal Representative of the Estate of Sean D.
Baker vs. Valujet Airlines, Inc. and Sabretech, Inc.

**CASE NO. 96-10717 CA 10**
Heather Archibald, as Personal Representative of the Estate of
Leslie Archibald, and on behalf of Neville Archibald, surviving
parent of Leslie Archibald, deceased vs. Valujet Airlines, Inc., a
Georgia corporation and Sabretech, Inc., a Delaware Corporation.

CASE NO. 96-13207 CA 10
Bishop Mitchell, Individually and as Personal Representative of the
Estate of Ella Langley Mitchell, deceased vs. Valujet Airlines,
Inc., a Georgia corporation; Aerothrust Corporation, a foreign
corporation with its principal place of business in Dade County,
Florida and Sabretech, Inc., a foreign corporation with its
principal place of business in Dade County, Florida.


CASE NO. 96-12809 CA 10
Annette Newell, as Personal Representative of the Estate of Robert
Medeiros, deceased vs. Valujet, et al.


CASE NO. 96-12808 CA 10
Carl Summers as Personal Representative of the Estate of Amanda
Summers, deceased vs. Sabretech, Galindo.


CASE NO. 96-12807 CA 10
John Chad Jones as Personal Representative of the Estate of Judy
Medeiros, deceased vs. Valujet, et al.


CASE NO. 96-18777 CA 10
Robert C. Hayman, as Personal Representative of the Estate of
Robert L. Hayman, deceased vs. Valujet et al.


CASE NO. 96-18778 CA 10
Robert C. Hayman as Personal Representative of the Estate of Elaine
Hayman, deceased vs. Valujet, et al.


CASE NO. 96-10150 CA 10
Earl A. Marks and Carmen Roberts, Invidividually and as
Administrators and/or Co-Personal Representatives of the Estate of
Philmore Marks, deceased vs. Valujet Airlines, Inc., Aerothrust
Corporation and Sabretech, Inc.


CASE NO. 96-09816 CA 10
Rae G. White, as Personal Representative of the Estate of Mark
Griner, deceased vs. Valujet Airlines, Inc., a Georgia corporation,
and Aerothrust Corporation, a Florida Corporation.


CASE NO. 96-11366 CA 10
Randy Leonard, Individually and as Personal Representative of the
Estate of Andrew Leonard, deceased vs. Valujet Airlines, Inc., a
Georgia corporation, Sabretech, Inc., a Delaware Corporation, and
Aerothrust Corporation, a Florida corporation.

**CASE NO. 96-11541 CA 10**
Randy Leonard, Individually and as Personal Representative of the
Estate of Tabitha Leonard, deceased vs. Valujet Airlines, Inc., a
Georgia corporation, Sabretech, Inc., a Delaware Corporation, and
Aerothrust Corporation, a Florida corporation.


**CASE NO. 96-11489 CA 10**
Randy Leonard, Individually and as Personal Representative of the
Estate of Jeremy Leonard, deceased vs. Valujet Airlines, Inc., a
Georgia corporation, Sabretech, Inc., a Delaware Corporation, and
Aerothrust Corporation, a Florida corporation.


**CASE NO. 96-11562 CA 10**
Judith Bodley-Leweis, Personal Representative of the Estate of
Jimmy Alfred Lewis, deceased, on behalf of the said Estate and on
behalf of all lawful beneficiaries and survivors of Jimmy Alfred
Lewis, deceased vs. Valujet Airlines, Inc., a Nevada Corporation;
and Aerothrust Corporation, a Delaware corporation and Sabretech,
Inc., a Delaware corporation.


**FEDERAL COURT CASE NO. 96-3363-CIV-DAVIS**
Arthur J. Balandran, Individually and as Personal Representative of
the Estate of Thomas Eugene Balandran, deceased vs. Valujet
Airlines, Inc., a Georgia Corporation, Valujet, Inc., as Nevada
Corporation, Aerothrust Corporation, a Delaware with its principal
place of business in Dade County, Florida and Sabaretech, Inc., a
Delaware corporation with its principal place of business in Dade
County, Florida.

(Unknown whether or not it has been remanded and whether there is
a pending State Court action)

D

## SERVICE LIST
### Exhibit "D"

Jeffrey L. Allen, Esq.
Jeffrey L. Allen, Attorney at Law
2800 Biscayne Blvd.
Miami, FL 33137

F. Gregory Barnhart, Esq.
Chris Speed, Esq.
Searcy Denney Scarola Barnhart
  & Shipley
2139 Palm Beach Lakes Blvd.
West Palm Beach, FL 33402

Kirk Barrow, Esq.
3500 N. State Road 7
Suite 201
Lauderdale Lakes, FL 33319

D. Michael Campbell, Esq.
D. Michael Campbell, et al.
8603 South Dixie Highway
Suite 310
Miami, FL 33143

Benjaim G. Chew, Esq.
Read K. McCaffrey, Esq.
Patton, Boggs, L.L.P.
2550 M Street, N.W.
Washington, DC 20037-1350

John P. Coale, Esq.
Diane Cooley, Esq.
David K. Lietz, Esq.
195 Duke of Gloucester Street
Annapolis, Maryland 21401

George M. Fleming, Esq.
Fleming, Hovenkamp & Grayson, P.A.
1330 Post Oak Blvd.
Suite 3030
Houston, Texas 77056

M. Ann Harcourt, Esq.
John Perciva. Esq.
303 So. Peters
Norman, Oklahoma 73069

David R. Hefferman, Esq.
200 S.E. 1st Street
Suite 1100
Miami, Florida 33131

Stephen L. Jacques, Esq.
Moore, O'Brien & Jacques
Westgate Office Center
700 West Johnson Avenue, Suite 207
Cheschire, Conn 06410

David Leitz, Esq.
5335 Wisconsin Avenue, N.W.
Suite 720
Washington, D.C. 20015

Mark Leeds, Esq.
44 West Flagler Street
Suite 1600
Miami, Florida 33130

Bruce Marguilies, Esq.
Victor Rones, Esq.
16105 N.E. 18th Avenue
N. Miami Beach, Florida

Marc Moller, Esq.
Kreidler & Kreidler
100 Park Avenue
18th Floor
New York, NY 10017

Marshall I. Neurenberg, Esq.
Jaime Lebovitz, Esq.
Neurenberg Plevin Heller & McCarthy
1370 Ontario Street
First Floor
Cleveland, Ohio 44113-1792

William Norwood, Esq.
83 Walton Street
Atlanta, GA 30301

Tom Pennekamp, Esq.
Grossman & Roth
2665 S. Bayshore Drive
Penthouse I
Miami, Florida 33133

Robert L. Parks, Esq.
Haggard & Parks, P.A.
330 Alhambra Circle, First Floor
Coral Gables, FL 33134

C. Neal Pope, Esq.
Pope, McGlamry, Kilpatrick & Morrison
318 11th Street, 2nd Floor
P.O. Box 2128
Columbus, Georgia 31902-2128

Joseph P. Quirk, Esq.
Quirk & Quirk
2964 Peachtree Road, NW
450 Buckhead Centre
Atlanta, GA 30305

Larry R. Rogers, Sr., Esq.
Power, Rogers & Smith
35 West Wacker Drive
Suite 3700
Chicago, IL 60601

Herman J. Russomano, Esq.
Russomanno, Fiore & Borello, P.A.
Museum Tower #2101
150 W. Flagler Street
Miami, FL 33130

William R. Scherer, Esq.
Conrad Scherer, et al.
633 South Federal Highway
Fort Lauderdale, FL 33301

Michael Slack, Esq.
Slack & Davis
8911 Capital of Texas Highway, North
Suite 2110
Austin, TX 78759

J.B. Spence, Esq.
Payne, Leeds, et al.
Grove Professional Building
2950 S.W. 27th Avenue
Suite 300
Miami, Florida 33133

Mark D. Swanson, Esq.
Courthouse Tower, Suite 325
44 West Flagler Street
Miami, Florida 33130

W.E. Gary, Esq.
Gary, Williams, Parenti, et al.
221 East Osceola Street
Stuart, Florida 34994

Jonathan Wald, Esq.
100 S.E. 2nd Street
Suite 3900
Miami, Florida 33131

**Wayne Walker, Esq.**
440 Louisiana
Suite 1325
Houston, Texas 77002

**Robert K. Whohlfeld, Esq.**
Marguilies, Rones & Wohlfeld, P.A.
16105 N.E. 18th Avenue
North Miami Beach, FL 33162

**Holly Davidson Schuttler, Esq.**
Dubosar & Davidson, P.A.
2255 Glades Road
Suite 300 East
Boca Raton, Florida 33431

**John W. Walker, Esq.**
1723 Broadway
Little Rock, AK 72206

24596\p\s1.p1

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.    96-09546 CA 10
96-09816 CA 10
96-09897 CA 10
96-10127 CA 10
96-10150 CA 10
96-10717 CA 10
96-11228 CA 10
96-11229 CA 10
96-11232 CA 10
96-11325 CA 10
96-11366 CA 10
96-11489 CA 10
96-11541 CA 10
96-11562 CA 10
96-11731 CA 10
96-12807 CA 10
96-12808 CA 10
96-12809 CA 10
96-13207 CA 10
96-13745 CA 10
96-14324 CA 10
96-14325 CA 10
96-14326 CA 10
96-18301 CA 10
96-18777 CA 10
96-18778 CA 10
97-03155 CA 10
97-05059 CA 10
97-05710 CA 10
97-06430 CA 10
97-06428 CA 10
97-08416 CA 10

IN RE:  AIR CRASH IN THE FLORIDA
EVERGLADES ON MAY 11, 1996

_____ /

## PLAINTIFFS' STEERING COMMITTEE MOTION FOR
## ASSESSMENT OF COSTS AND WITHHOLDING OF FEES

The Plaintiffs' Steering Committee respectfully moves for a Court Order assessing

fees and costs based upon the following:

1.      Pursuant to this Court's Order of May 12, 1997, the Court appointed a liability Steering Committee to represent the victims of the Valujet aircrash of May 11, 1996 which occurred in the Florida Everglades.  The Committee charged with conducting all liability discovery, pre-trial preparation and the liability trial consists of the following attorneys:

Aaron S. Podhurst, Esq. (Chairman of PSC)
Steven C. Marks, Esq. (Lead Liason for PSC)
Podhurst, Orseck, Josefsberg, et al.
25 West Flagler Street, Suite 800
Miami, Florida 33130

Mitch Baumeister, Esq. (Member of PSC)
Baumeister & Samuels
One Exchange Plaza
New York, New York 10006

John Howie, Esq. (Member of PSC)
Howie & Sweeney, L.L.P.
Park Place on Turtle Creek
2911 Turtle Creek Boulevard
Suite 1400
Dallas, Texas 75219

Gerald Lear, Esq. (Member of PSC)
Speiser, Krause, et al.
1300 N. 17th Street, Suite 310
Rosslyn, VA 22209

Kevin Malone, Esq. (Member of PSC)
Krupnick, Campbell, et al.
700 S.E. Third Avenue
Courthouse Law Plaza, Suite 100
Fort Lauderdale, FL 33316

2.      Even before the formal appointment, these attorneys voluntarily assumed responsibility for organizing and handling common liability issues such as preparing a "master" liability complaint, scheduling liability meetings so common issues and concerns may be addressed, negotiating a Stipulation of liability, researching and drafting a motion to remand, researching and drafting a motion to have the Southern District as a forum for

the MDL proceedings, negotiating a Wreckage Agreement, drafting discovery requests, investigating all liability issues, and in general, taking all appropriate steps to properly represent the victims of this tragedy.

3.   Now, the PSC is embarking on additional formal steps including the expenditure of significant monies which will benefit all victims from this tragedy. Accordingly, it is now appropriate for the Court to assess costs for past and future liability expenditures and establish a fair fee schedule so there can be some certainty to victims who are represented by counsel not on the PSC.

4.   Therefore, the PSC proposes that all cases pending as of May 1, 1997, be assessed costs of $2,500.00 to be paid to the Podhurst, Orseck, et al. Trust Account which funds may only be distributed pursuant to further Order of this Court. The PSC further proposes that the following fees be assessed, subject to further Court approval:

a.   3 % of any gross recovery obtained between May 1, 1997 and July 15, 1997;

b.   5 % of any gross recovery obtained between July 16, 1997 and September 15, 1997; and

c.   8 % of any gross recovery obtained between September 15, 1997 and the conclusion of all liability issues.

5.   The PSC only seeks to have the above-mentioned sums withheld from the attorney's fees charged under the non-PSC contracts so that this Court can -- at a later time -- decide what, if any, fees should be charged to non-PSC cases.

6.   At a later date, the Court can decide -- after noticing to all counsel and parties -- what fees are appropriate. However, without an Order directing that monies should be held in Trust, it will be difficult for t his Court to enforce any subsequent award.

Depending upon the PSC's efforts, after a full evidentiary hearing, the Court can later decide an appropriate award for fees and costs.

7.     The PSC will make all subsequent cost requests and disbursements subject to further Court approval which will protect all concerned.

WHEREFORE, the PSC respectfully requests that the court order all non-PSC Plaintiffs' counsel to withhold the percentages set forth above subject to further Court Order and to immediately pay $2,500.00 for past and future costs. The PSC members have and/or will make their cost payments of $2,500.00 per case voluntarily.

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been mailed to all counsel on the attached service list on this 25th day of July, 1997.

Respectfully submitted,

PODHURST, ORSECK, JOSEFSBERG,
EATON, MEADOW, OLIN & PERWIN, P.A.
25 West Flagler Street, Suite 800
Miami, Florida 33130
(305) 358-2800 / Fax (305) 358-2382

By:_____
        STEVEN C. MARKS
        Fla. Bar No. 516414

24596\p\mfc

## SERVICE LIST
## Plaintiffs' Steering Committee


**Aaron S. Podhurst, Esq. - Chairman of PSC**
**Steven C. Marks, Esq. - Member of PSC**
Podhurst, Orseck, Josefsberg, et al.
25 West Flagler Street
Suite 800
Miami, Florida 33130


**Mitch Baumeister - Member of PSC**
Baumeister & Samuels
One Exchange Plaza
New York, NY 10006


**John Howie, Esq. -- Member of PSC**
Howie & Sweeney, L.L.P.
Park Place on Turtle Creek
2911 Turtle Creek Boulevard
Suite 1400
Dallas, TX 75219


**Gerald Lear, Esq. - Member of PSC**
Speiser, Krause, et al.
1300 N. 17th Street
Suite 310
Rosslyn, VA 22209


**Kevin Malone, Esq. - Member of PSC**
Krupnick, Campbell, et al.
700 S.E. Third Avenue
Courthouse Law Plaza, Suite 100
Fort Lauderdale, FL 33316

24596\p\psc.lis

## SCHEDULE "A"

Francis Anania, Esq.
Anania, Bandklayer & Blackwell
100 Southeast Second Street
Suite 3300
Miami, Fla. 33131

Dennis M. O'Hara, Esq.
Wicker, Smith, Tutan,
   O'Hara, McCoy, Graham & Ford, P.A.
One East Broward Blvd.
Suite 500
P.O. Box 14460
Fort Lauderdale, Fla. 33302

Thomas Scott, Esq.
Davis, Scott, Weber & Edwards
Two South Biscayne Blvd.
One Biscayne Tower
Suite 1500
Miami, Fla. 33131

Thomas C. Woods, Esq.
Kimbrell & Hamann, P.A.
Suite 900, Brickell Centre
799 Brickell Plaza
Miami, Florida 33131-2805

24596\P\SL.def

## SERVICE LIST

Jeffrey L. Allen, Esq.
Jeffrey L. Allen, Attorney at Law
2800 Biscayne Blvd.
Miami, FL 33137

F. Gregory Barnhart, Esq.
Chris Speed, Esq.
Searcy Denney Scarola Barnhart
  & Shipley
2139 Palm Beach Lakes Blvd.
West Palm Beach, FL 33402

Kirk Barrow, Esq.
3500 N. State Road 7
Suite 201
Lauderdale Lakes, FL 33319

D. Michael Campbell, Esq.
D. Michael Campbell, et al.
8603 South Dixie Highway
Suite 310
Miami, FL 33143

Benjaim G. Chew, Esq.
Read K. McCaffrey, Esq.
Patton, Boggs, L.L.P.
2550 M Street, N.W.
Washington, DC 20037-1350

John P. Coale, Esq.
Diane Cooley, Esq.
David K. Lietz, Esq.
195 Duke of Gloucester Street
Annapolis, Maryland 21401

George M. Fleming, Esq.
Fleming, Hovenkamp & Grayson, P.A.
1330 Post Oak Blvd.
Suite 3030
Houston, Texas 77056

M. Ann Harcourt, Esq.
John Perciva. Esq.
303 So. Peters
Norman, Oklahoma 73069

David R. Hefferman, Esq.
200 S.E. 1st Street
Suite 1100
Miami, Florida 33131

Stephen L. Jacques, Esq.
Moore, O'Brien & Jacques
Westgate Office Center
700 West Johnson Avenue, Suite 207
Cheschire, Conn 06410

David Leitz, Esq.
5335 Wisconsin Avenue, N.W.
Suite 720
Washington, D.C. 20015

Mark Leeds, Esq.
44 West Flagler Street
Suite 1600
Miami, Florida 33130

Bruce Marguilies, Esq.
Victor Rones, Esq.
16105 N.E. 18th Avenue
N. Miami Beach, Florida

Marc Moller, Esq.
Kreidler & Kreidler
100 Park Avenue
18th Floor
New York, NY 10017

Marshall I. Neurenberg, Esq.
Jaime Lebovitz, Esq.
Neurenberg Plevin Heller & McCarthy
1370 Ontario Street
First Floor
Cleveland, Ohio 44113-1792

William Norwood, Esq.
83 Walton Street
Atlanta, GA 30301

Tom Pennekamp, Esq.
Grossman & Roth
2665 S. Bayshore Drive
Penthouse I
Miami, Florida 33133

Robert L. Parks, Esq.
Haggard & Parks, P.A.
330 Alhambra Circle, First Floor
Coral Gables, FL 33134

C. Neal Pope, Esq.
Pope, McGlamry, Kilpatrick & Morrison
318 11th Street, 2nd Floor
P.O. Box 2128
Columbus, Georgia 31902-2128

**Joseph P. Quirk, Esq.**
Quirk & Quirk
2964 Peachtree Road, NW
450 Buckhead Centre
Atlanta, GA 30305

**Larry R. Rogers, Sr., Esq.**
Power, Rogers & Smith
35 West Wacker Drive
Suite 3700
Chicago, IL 60601

**Herman J. Russomano, Esq.**
Russomanno, Fiore & Borello, P.A.
Museum Tower #2101
150 W. Flagler Street
Miami, FL 33130

**William R. Scherer, Esq.**
Conrad Scherer, et al.
633 South Federal Highway
Fort Lauderdale, FL 33301

**Michael Slack, Esq.**
Slack & Davis
8911 Capital of Texas Highway, North
Suite 2110
Austin, TX 78759

**J.B. Spence, Esq.**
Payne, Leeds, et al.
Grove Professional Building
2950 S.W. 27th Avenue
Suite 300
Miami, Florida 33133

**Mark D. Swanson, Esq.**
Courthouse Tower, Suite 325
44 West Flagler Street
Miami, Florida 33130

**W.E. Gary, Esq.**
Gary, Williams, Parenti, et al.
221 East Osceola Street
Stuart, Florida 34994

**Wayne Walker, Esq.**
440 Louisiana
Suite 1325
Houston, Texas 77002

**Robert K. Whohlfeld, Esq.**
Marguilies, Rones & Wohlfeld, P.A.
16105 N.E. 18th Avenue
North Miami Beach, FL 33162

**Holly Davidson Schuttler, Esq.**
Dubosar & Davidson, P.A.
2255 Glades Road
Suite 300 East
Boca Raton, Florida 33431

**John W. Walker, Esq.**
1723 Broadway
Little Rock, AK 72206

24596\p\pltf.al

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.   96-09546 CA 10
96-09816 CA 10
96-09897 CA 10
96-10127 CA 10
96-10150 CA 10
96-10717 CA 10
96-11228 CA 10
96-11229 CA 10
96-11232 CA 10
96-11325 CA 10
96-11366 CA 10
96-11489 CA 10
96-11541 CA 10
96-11562 CA 10
96-11731 CA 10
96-12807 CA 10
96-12808 CA 10
96-12809 CA 10
96-13207 CA 10
96-13745 CA 10
96-14324 CA 10
96-14325 CA 10
96-14326 CA 10
96-18301 CA 10
96-18777 CA 10
96-18778 CA 10
97-03155 CA 10
97-05059 CA 10
97-05710 CA 10
97-06430 CA 10
97-06428 CA 10
97-08416 CA 10

IN RE:  AIR CRASH IN THE FLORIDA
EVERGLADES ON MAY 11, 1996

_____/

## NOTICE OF HEARING
### (Special Appointment)

TO:   All counsel on attached list

YOU ARE HEREBY NOTIFIED that we will call up for hearing before THE HONORABLE MARGARITA ESQUIROZ in her chambers at the Dade County Courthouse, Miami, Florida on Friday the **8th day of August, 1997, at 9:30 A.M.**, or as soon thereafter as same can be heard:

**PLAINTIFFS' STEERING COMMITTEE MOTION FOR ASSESSMENT OF COSTS AND WITHHOLDING OF FEES**

PLEASE BE GOVERNED ACCORDINGLY.

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been sent via facsimile to all counsel on the attached service list on this _____ day of July, 1997.

Respectfully submitted,

PODHURST, ORSECK, JOSEFSBERG,
EATON, MEADOW, OLIN & PERWIN, P.A.
25 West Flagler Street, Suite 800
Miami, Florida 33130
(305) 358-2800 / Fax (305) 358-2382

By:_____
STEVEN C. MARKS
Fla. Bar No. 516414

24596\p\nh

## SCHEDULE "A"

**Francis Anania, Esq.**
Anania, Bandklayer & Blackwell
100 Southeast Second Street
Suite 3300
Miami, Fla. 33131

**Dennis M. O'Hara, Esq.**
Wicker, Smith, Tutan,
   O'Hara, McCoy, Graham & Ford, P.A.
One East Broward Blvd.
Suite 500
P.O. Box 14460
Fort Lauderdale, Fla. 33302

**Thomas Scott, Esq.**
Davis, Scott, Weber & Edwards
Two South Biscayne Blvd.
One Biscayne Tower
Suite 1500
Miami, Fla. 33131

**Thomas C. Woods, Esq.**
Kimbrell & Hamann, P.A.
Suite 900, Brickell Centre
799 Brickell Plaza
Miami, Florida 33131-2805

24596\P\SL.def

<u>SCHEDULE "B"</u>
Plaintiffs' Steering Committee


**Aaron S. Podhurst, Esq. – Chairman of PSC**
**Steven C. Marks, Esq. - Member of PSC**
Podhurst, Orseck, Josefsberg, et al.
25 West Flagler Street
Suite 800
Miami, Florida 33130


**Mitch Baumeister - Member of PSC**
Baumeister & Samuels
One Exchange Plaza
New York, NY 10006


**John Howie, Esq. -- Member of PSC**
Howie & Sweeney, L.L.P.
Park Place on Turtle Creek
2911 Turtle Creek Boulevard
Suite 1400
Dallas, TX 75219


**Gerald Lear, Esq. - Member of PSC**
Speiser, Krause, et al.
1300 N. 17th Street
Suite 310
Rosslyn, VA 22209


**Kevin Malone, Esq. - Member of PSC**
Krupnick, Campbell, et al.
700 S.E. Third Avenue
Courthouse Law Plaza, Suite 100
Fort Lauderdale, FL 33316

24596\p\psc.lis

## SERVICE LIST

Jeffrey L. Allen, Esq.
Jeffrey L. Allen, Attorney at Law
2800 Biscayne Blvd.
Miami, FL 33137

F. Gregory Barnhart, Esq.
Chris Speed, Esq.
Searcy Denney Scarola Barnhart
  & Shipley
2139 Palm Beach Lakes Blvd.
West Palm Beach, FL 33402

Kirk Barrow, Esq.
3500 N. State Road 7
Suite 201
Lauderdale Lakes, FL 33319

D. Michael Campbell, Esq.
D. Michael Campbell, et al.
8603 South Dixie Highway
Suite 310
Miami, FL 33143

Benjaim G. Chew, Esq.
Read K. McCaffrey, Esq.
Patton, Boggs, L.L.P.
2550 M Street, N.W.
Washington, DC 20037-1350

John P. Coale, Esq.
Diane Cooley, Esq.
David K. Lietz, Esq.
195 Duke of Gloucester Street
Annapolis, Maryland 21401

George M. Fleming, Esq.
Fleming, Hovenkamp & Grayson, P.A.
1330 Post Oak Blvd.
Suite 3030
Houston, Texas 77056

M. Ann Harcourt, Esq.
John Perciva. Esq.
303 So. Peters
Norman, Oklahoma 73069

David R. Hefferman, Esq.
200 S.E. 1st Street
Suite 1100
Miami, Florida 33131

Stephen L. Jacques, Esq.
Moore, O'Brien & Jacques
Westgate Office Center
700 West Johnson Avenue, Suite 207
Cheschire, Conn 06410

David Leitz, Esq.
5335 Wisconsin Avenue, N.W.
Suite 720
Washington, D.C. 20015

Mark Leeds, Esq.
44 West Flagler Street
Suite 1600
Miami, Florida 33130

Bruce Marguilies, Esq.
Victor Rones, Esq.
16105 N.E. 18th Avenue
N. Miami Beach, Florida

Marc Moller, Esq.
Kreidler & Kreidler
100 Park Avenue
18th Floor
New York, NY 10017

Marshall I. Neurenberg, Esq.
Jaime Lebovitz, Esq.
Neurenberg Plevin Heller & McCarthy
1370 Ontario Street
First Floor
Cleveland, Ohio 44113-1792

William Norwood, Esq.
83 Walton Street
Atlanta, GA 30301

Tom Pennekamp, Esq.
Grossman & Roth
2665 S. Bayshore Drive
Penthouse I
Miami, Florida 33133

Robert L. Parks, Esq.
Haggard & Parks, P.A.
330 Alhambra Circle, First Floor
Coral Gables, FL 33134

C. Neal Pope, Esq.
Pope, McGlamry, Kilpatrick & Morrison
318 11th Street, 2nd Floor
P.O. Box 2128
Columbus, Georgia 31902-2128

Joseph P. Quirk, Esq.
Quirk & Quirk
2964 Peachtree Road, NW
450 Buckhead Centre
Atlanta, GA 30305

Larry R. Rogers, Sr., Esq.
Power, Rogers & Smith
35 West Wacker Drive
Suite 3700
Chicago, IL 60601

Herman J. Russomano, Esq.
Russomanno, Fiore & Borello, P.A.
Museum Tower #2101
150 W. Flagler Street
Miami, FL 33130

William R. Scherer, Esq.
Conrad Scherer, et al.
633 South Federal Highway
Fort Lauderdale, FL 33301

Michael Slack, Esq.
Slack & Davis
8911 Capital of Texas Highway, North
Suite 2110
Austin, TX 78759

J.B. Spence, Esq.
Payne, Leeds, et al.
Grove Professional Building
2950 S.W. 27th Avenue
Suite 300
Miami, Florida 33133

Mark D. Swanson, Esq.
Courthouse Tower, Suite 325
44 West Flagler Street
Miami, Florida 33130

W.E. Gary, Esq.
Gary, Williams, Parenti, et al.
221 East Osceola Street
Stuart, Florida 34994

Wayne Walker, Esq.
440 Louisiana
Suite 1325
Houston, Texas 77002

**Robert K. Whohlfeld, Esq.**
Marguilies, Rones & Wohlfeld, P.A.
16105 N.E. 18th Avenue
North Miami Beach, FL 33162

**Holly Davidson Schuttler, Esq.**
Dubosar & Davidson, P.A.
2255 Glades Road
Suite 300 East
Boca Raton, Florida 33431

**John W. Walker, Esq.**
1723 Broadway
Little Rock, AK 72206

24596\p\pltf.el

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

WANDA HAMMOND, Individually and            )
as Personal Representative of the Minors,   )
Briana Culver and Jada Culver; MICHAEL      )
CULVER and MARCUS CULVER,                   )
Individually and as Co-Administrators of    )
the Estates of Rodney Dwayne Culver and     )
Karen Culver,                               )          CASE NO. 97 1775 CA 10
                                            )
        Plaintiffs,                         )
                                            )
v.                                          )
                                            )
VALUJET AIRLINES, INC., a foreign           )
corporation with a principal place of       )
business in Dade County, Florida; and       )
SABRETECH, INC., a foreign corporation,     )
with a principal place of business in Dade  )
County, Florida,                            )
                                            )
        Defendants.                         )

## MOTION FOR ADMISSION PRO HAC VICE

NOW COMES Gary S. Phillips and hereby respectfully moves this Court for admission *pro hac vice* of Gary S. Freed and Benjamin I. Fink to the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, General Jurisdiction division for the limited purpose of allowing Gary S. Freed and Benjamin I. Fink to appear as counsel on behalf of the Plaintiffs Wanda Hammond and Michael and Marcus Culver in the above-captioned matter. In support thereof, the undersigned shows unto the Court as follows:

1.

Gary S. Freed and Benjamin I. Fink are attorneys duly licensed to engage in the practice of law in the State of Georgia and practice with the law firm of Freed, Lester & Berman, P.C., Fourteen North Parkway Square, 4200 Northside Parkway, N.W., Atlanta, Georgia 30327-3054.

2.

Gary S. Freed and Benjamin I. Fink are members in good standing in the State Bar of Georgia and are authorized to practice before all Georgia State Courts.  Gary S. Freed is also an active member in good standing of the State Bar of New York and is also in good standing and admitted to practice in the United States District Court for the Northern District of Georgia and the United States Court of Appeals for the Sixth and Eleventh Circuits.  Benjamin I. Fink is also an active member in good standing in the State Bar of New Jersey and is also in good standing and admitted to practice in the United States District Court for the Northern District of Georgia, the United States District Court for the Southern District of Georgia, the United States Court of Appeals for the Eleventh Circuit and the United States Tax Court.

3.

At all times, Gary S. Phillips of the law firm of Phillips, Eisinger & Koss, P.A., 4000 Hollywood Boulevard, Suite 265 South, Hollywood, Florida 33021 will act as local counsel.  Mr. Phillips is a duly admitted member of the trial bar of this Court and is hereby entering his appearance in this matter.

4.

Attached hereto is a written statement consenting to the designation and the address and telephone number of the named designee, Gary S. Phillips, who maintains an office in this District

2

for the practice of law and with whom the Court and opposing counsel may readily communicate regarding the conduct of the case and upon whom papers shall be served.

5.

Mr. Freed has applied for admission to practice *pro hac vice* in the State of Florida twice in the past three years. Mr. Freed is currently admitted *pro hac vice* in the Circuit Court of the Eighteenth Judicial District in and for Brevard County, Florida. Mr. Fink has applied for admission to practice *pro hac vice* in the State of Florida once in the past three years. Mr. Fink is also currently admitted pro hac vice in the Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, Florida.

WHEREFORE, the undersigned respectfully requests this Court for an Order allowing Gary S. Freed and Benjamin I. Fink admission *pro hac vice* in the above-captioned matter to appear in this action as co-counsel on behalf of Plaintiffs Wanda Hammond and Michael Culver and Marcus Culver and for such other and further relief as shall be just and proper.

I hereby certify that a true and correct copy of the foregoing was mailed this _31st_ day of July, 1997 to:

> Dennis M. O'Hara, Esquire
> Wicker, Smith, Tutan, O'Hara, McCoy,
>  Graham & Ford, P.A.
> One East Broward Blvd., Suite 500
> P.O. Box 14460
> Ft. Lauderdale, Florida 33302
>
> Thomas Scott, Esquire
> Davis, Scott, Weber & Edwards
> One Biscayne Tower
> Suite #1500
> Two South Biscayne Boulevard
> Miami, Florida 33131

3

Stephen L. Jacques, Esquire
Moore, O'Brien, Jacques & Yelenak
700 West Johnson Avenue - Suite #207
Cheshire, Connecticut 06410

Respectfully submitted,

PHILLIPS, EISINGER & KOSS, P.A.

Gary S. Phillips
Florida State Bar No. 329841

Presidential Circle
4000 Hollywood Boulevard
Suite 265 South
Hollywood, Florida 33021
(954) 894-8000

h:\6382-3\pro-hac-.mot

4

Gary S. Freed and Benjamin I. Fink hereby designate Gary S. Phillips, a member of the trial bar of the State of Florida, who maintains an office at 4000 Hollywood Boulevard, Suite 265 South Hollywood, Florida 33021, telephone number (954) 894-8000 within the District for the practice of law with whom the Court and opposing counsel may readily communicate regarding the conduct of the case and upon whom papers shall be served.

Gary S. Freed
Georgia Bar No. 275275

Benjamin I. Fink
Georgia Bar No. 261090

h:\6382-3\phillips.des

1      IN THE CIRCUIT COURT OF THE
       11TH JUDICIAL CIRCUIT IN AND
2      FOR DADE COUNTY, FLORIDA

3      GENERAL JURISDICTION DIVISION

4      Case No. 96-09546 CA 10

5  IN RE:  AIR CRASH IN THE   )
  FLORIDA EVERGLADES ON    )
6  MAY 11, 1996,       )
                )
7                )

8          73 West Flagler Street
          Miami, Florida
9          August 8, 1997
          9:30 a.m. to 10:05 a.m.
10

11

12

13

14

15

16     Hearing in above-styled cause taken

17  before Judge Margarita Esquiroz, reported by

18  Victor Selvaggi, Jr., Certified Shorthand Reporter

19  and Notary Public in and for the State of Florida

20  at Large, pursuant to Notice filed in the above

21  cause.

22      - - - - - - -

23

24

25

```
 1        APPEARANCES:

 2

 3

            ON BEHALF OF THE PLAINTIFFS STEERING
 4          COMMITTEE

 5                  PODHURST, ORSECK, JOSEFSBERG, EATON,
                    MEADOW, OLIN & PERWIN
 6                  25 West Flagler Street
                    Miami, Florida  33130
 7                  BY:  Aaron Podhurst, Esq.
                         Mitch Baumeister, Esq.
 8                       John Howie, Esq.

 9          ON BEHALF OF THE DEFENDANT VALUJET AIRLINES,
            INC.
10
                    WICKER, SMITH, TUTAN, O'HARA, McCOY,
11                  GRAHAM & FORD
                    One East Broward Boulevard
12                  Fort Lauderdale, Florida  33301
                    BY:  Robert C. Bauroth, Esq.
13                       Gregory M. Palmer, Esq.
                         Francis A. Anania, Esq.
14
            ON BEHALF OF THE DEFENDANT SABRETECH, INC.
15
                    DAVIS, SCOTT, WEBER & EDWARDS
16                  Two South Biscayne Boulevard
                    Miami, Florida  33131
17                  BY:  Thomas E. Scott, Jr., Esq.
                         Marc R. Levinson, Esq.
18
            ON BEHALF OF THE PLAINTIFF ESTATE OF ALIYA
19          GI LANDRY

20                  LAW OFFICE OF JEFFERY L. ALLEN
                    2800 Biscayne Boulevard
21                  Miami, Florida  33137
                    BY:  Jeffery L. Allen, Esq.
22

23
                        - - - - - - -
24

25
```

1          MR. PODHURST:  Good morning, your

2     Honor.  How are you?

3          THE COURT:  Okay.  First order of

4     business.

5          MR. PODHURST:  Judge, I have a number of

6     things that have been agreed to and a couple of

7     matters that we would like to inform the Court of,

8     and then there may or may not be objections to one

9     or two, so if your Honor wants, I'll go through

10    and do that.

11         THE COURT:  Okay.

12         MR. PODHURST:  Your Honor, there are two

13    matters that concern both the State and the

14    Federal Court.  One is that in the scheduling

15    order that your Honor has in front of you, you

16    recall that we had one disagreement amongst the

17    parties with regard to a trial date, and I think

18    we agreed on everything else.

19         Judge Davis, at the status conference,

20    said he ordered me, as the chairman of the

21    plaintiff's steering committee, to file a schedule

22    scheduling hearings consistent with what we have

23    done here and gave me until August 15th.  I

24    advised Judge Davis that we had the status

25    conference in front of you.  The only thing that

1    we didn't have, of course, is the trial date which

2    your Honor had under advisement.

3              THE COURT:  Or an agreement as to the

4    deadline on discovery.

5              MR. PODHURST:  Yes.  There are two ways

6    to handle it.  I could submit to Judge Davis the

7    same things that we have already submitted to

8    you.  I think he's willing to make sure that we

9    don't have any conflicts between the two, and we

10   all agreed we will take one round of discovery, so

11   I'm really asking you procedurally whether your

12   Honor --

13             THE COURT:  If you want me to pick the

14   date, I will.

15             MR. PODHURST:  I think he does and I do,

16   only because he doesn't want to be inconsistent.

17             THE COURT:  He wants me to pick them

18   instead of him picking them?

19             MR. PODHURST:  Yes.  He said to me I

20   have to file it by August 15th.  Most cases are

21   here, your Honor.

22             THE COURT:  That's fine.

23             MR. PODHURST:  So I told him I would

24   advise you of what he had said and that the only

25   thing is I would ask you, and I have to submit

1    something to him by August 15th.

2              THE COURT:  I have the order right here.

3              MR. PODHURST:  Okay.  So if you can let

4    us know if it's not an imposition on your Honor,

5    by August 15th, I don't want to be in conflict

6    with what he's asked me to do.  He agrees it ought

7    to be the same.

8              The second issue, Judge, that concerns

9    everybody, and let me stop.  There is a gentleman

10   here from Mr. Pope's office in Georgia.

11             We have worked out, have we not, the

12   discovery and depositions that are taking place on

13   September 15th and September 22nd.  We are in

14   agreement how we are going to take it, so there is

15   nothing before the Court.

16             Would you like to make a statement?

17             MR. McCLAMRY:  I think that's correct.

18   Mike McClamry from Atlanta and Ted Dempsey is

19   here.  We just wanted to make sure that we are in

20   agreement.  We are basically going to do what we

21   agreed to before your Honor.

22             MR. PODHURST:  So there is no problem

23   with the Georgia case.  We worked out the

24   discovery and how we are going to do it.

25             THE COURT:  Okay.  Those are issues that

1   were raised at the last conference regarding

2   the --

3                MR. PODHURST:  We have been working them

4   all out, so there are no more issues for the

5   Court.

6                Do the defendants have anything to say?

7                MR. BAUROTH:  Robert Bauroth on behalf

8   of Valujet.  I think there has been agreement

9   between all parties, including Sabretech, that one

10  deposition which will pertain to all the cases for

11  judicial economy in all of them.

12               MR. SCOTT:  The witnesses again are

13  individual witnesses that you already heard about

14  and also the 30B6 representative on behalf of

15  Sabretech.  We will have our witness there.  All

16  we asked from day one is we do one deposition for

17  both Georgia and Florida, and if preferable, we

18  would like to have that deposition of our witness

19  in Miami rather than Phoenix, Arizona.

20               MR. PODHURST:  Yes.

21               MR. SCOTT:  We will have our witness

22  there and ready to go.

23               THE COURT:  It's changed from the last

24  hearing.  Initially, the Georgia attorneys were

25  going to depose the witnesses that were from down

1      here and you were going to be allowed to be

2      present and participate to some extent.  Now

3      that's not going to happen anymore.  There will be

4      one deposition and you will be questioning and the

5      Georgia --

6                  MR. PODHURST:  Yes, your Honor.

7                  THE COURT:  -- attorneys will be

8      questioning?

9                  MR. PODHURST:  We have been able to work

10     it out.

11                 THE COURT:  That's even better.

12                 MR. SCOTT:  The same witness has been

13     noticed by Valujet.  Let the plaintiffs go before

14     even Valujet.  You have the first crack, so to

15     speak, but it's up to them.

16                 MR. BAUROTH:  We are reviewing that with

17     our client, Judge, and I believe we will probably

18     be able to work it out.  If we can't work it out

19     between the parties, we will have to come back to

20     you, but we have a month, five weeks time before

21     that deposition, so there won't be any problem.

22                 MR. PODHURST:  At this moment, I think

23     we worked it out.  If we have any questions, we

24     will come back to Judge Esquiroz, but with this we

25     are okay.

1              MR. BAUROTH:  If I may before Mr.

2     Podhurst goes on to another matter.

3              With regard to the discovery order, just

4     to remind you, I believe you still have a copy of

5     what we submitted to you back in June.

6              THE COURT:  Right here.

7              MR. BAUROTH:  The one set of dates are

8     plaintiff's request for dates and the other set

9     are defendant's dates, and Mr. Podhurst is correct

10    that this was submitted to Judge Davis at the last

11    Federal conference, and if you would pick them,

12    either cut the baby in half, one of the other or

13    mix them up, then we can all proceed.

14              THE COURT:  I'll probably do something

15    like that.

16              MR. PODHURST:  Thank you, Judge.

17              Your Honor, the next issue, there are a

18    couple of issues that don't concern everybody.

19    I'll leave those for last, but there is a motion

20    for the plaintiff steering committee for the

21    assessment of costs and withholding the fees.  I

22    don't know what objections there are going to be.

23    I will advise you, your Honor, that I didn't have

24    time to file it, but the same motion was filed in

25    front of Judge Davis because there are cases in

1    Federal Court and he has drafted the motion.  He

2    has signed the order, and I have a copy of the

3    order that is signed.

4            As a way of background, Judge, and just

5    for the record, as you know, many, many months ago

6    most of the lawyers voluntarily had come into my

7    office and we had tried to work out the

8    consolidation problems that the various plaintiffs

9    had.  We did, and they eventually, all but two

10   people, agreed on the committee.  The committees

11   were appointed by both your Honor and by Judge

12   Davis, the same committee with myself as chairman,

13   and since that time, we have, as a committee,

14   taken part from the beginning, at least in the

15   multidistrict hearings that occurred that sent

16   these to Judge Davis, we have taken part in

17   numerous, numerous drawings of stipulations on

18   liability.  Some people have accepted, some have

19   not.

20           We have taken part in the remand motion

21   to get these cases back in front of your Honor

22   when they were moved to Federal Court.  We have

23   taken part in the wreckage, we have taken part in

24   the wreckage problems that occurred with the US

25   Attorney and various people that all of us, the

1    defendants and us, have been involved with, and we

2    certainly have discovery that's out.   I think

3    Sabretech has produced 60 boxes --

4              MR. SCOTT:   100 boxes, over 300,000

5    documents.

6              MR. PODHURST:   Many more, etcetera.

7    This motion only asks you to withhold the three

8    percent.

9              THE COURT:   I read the motion.

10             MR. PODHURST:   It doesn't ask you to

11   assess --

12             THE COURT:   I was looking to see if I

13   kept a copy of it here.

14             MR. PODHURST:   It doesn't ask you to

15   assess anything at this time, but if you don't

16   withhold it, we have no way of collecting at the

17   end.   Judge Davis approved it and we think it's

18   appropriate.

19             THE COURT:   Does anyone have any

20   objection?

21             You noticed the motion for hearing?

22             MR. PODHURST:   Yes, I did.

23             THE COURT:   You noticed everyone

24   involved?

25             MR. PODHURST:   I talked to people who

1    had objections, who now don't have objections and

2    are not here.

3            THE COURT:  I presume if they had notice

4    and objections, they would be here to raise them,

5    otherwise I'll assume there are none.

6            MR. ALLEN:  Jeffery Allen.  Judge,

7    quickly.  I spoke to Will Gary on the phone last

8    night.  He asked me to express to the Court he's

9    registering his objection.  I'm saying that on his

10   behalf.

11           Also, with respect to my case, there is

12   no secret to the Judge I have special

13   circumstances in my case.  I would ask the Court

14   that perhaps maybe, of course, we have the

15   greatest PSC Committee here.  If there is any way

16   possibly that, maybe I can sit down with our PSC,

17   I can convey to them my special circumstances or

18   before the Judge imposes anything, give us maybe

19   some additional time to rightfully respond to the

20   motion.  I'm not against the motion.

21           For my own sake and my client's sake, I

22   need to create some sort of rational basis so I

23   can note it in my file and so forth.

24           MR. PODHURST:  The only response to

25   Jeff, and I have no problem with this.  We were

1   not imposing anything.  This is only the

2   withholding process.  Before a fee is set, a

3   hearing has to be held in front of Judge Esquiroz

4   or Judge Davis to have any fees.  The only thing

5   that's occurring now is a cost of $2500 will be

6   put in my account so we all share the costs, which

7   absolutely nobody's objected to.

8           The second issue would be that when a

9   defendant settles a case, he will have to withhold

10  that interest, depending upon when the case is

11  settled, and at some point your Honor will have to

12  have a hearing, which we will have to set at the

13  end of this case, to see if you want to or what

14  you are going to impose in that.  There are no

15  impositions at this time, your Honor.

16          THE COURT:  The only objection I hear is

17  that raised by the attorney that just spoke last

18  night.

19          MR. ALLEN:  Will Gary expresses an

20  objection.

21          THE COURT:  Does he have any grounds?

22          MR. ALLEN:  He asked me to express to

23  the Court his objection with respect to that.

24          THE COURT:  All right.  If that's the

25  only objection there is, and I hear nothing else,

1    I will grant the motion.

2              MR. PODHURST:  Thank you, your Honor.  I

3    will submit the same order, if it's all right with

4    you, that Judge Davis, signed.

5              THE COURT:  Absolutely.  I have

6    something else which you submitted here, which is

7    a joint motion for approval of the wreckage

8    agreement.  You submitted this to me?

9              MR. PODHURST:  Judge, --

10             MR. BAUROTH:  Judge, I believe that that

11   may have somehow ended up with your Honor at the

12   status conference in June which was a point in

13   time, I think right before or right after Judge

14   Davis approved --

15             MR. SCOTT:  If it was submitted, we can

16   withdraw that motion.

17             MR. PODHURST:  We all agreed about the

18   US Attorney's investigation and all of that, and

19   that this authority was to be in front of Judge

20   Davis.  Unless you disagree, we can withdraw that.

21             THE COURT:  Do you remember what it is?

22             MR. PODHURST:  I believe it's -- let me

23   just check.

24             THE COURT:  The joint motion that's been

25   submitted to me, it should be filed even though

1    the order is not signed.

2              MR. PODHURST:  Your Honor, --

3              THE COURT:  That's the original.

4              MR. PODHURST:  Is this the one that

5    Judge Davis signed?  Does anybody even know?

6              MR. SCOTT:  I think it's the same one.

7    I think that issue is before Judge Davis.  I don't

8    think there is any necessity for this Court to

9    become involved.

10             MR. PODHURST:  We will leave it in front

11   of you, your Honor.  I'm only asking the

12   procedure.  I don't think you can take anything

13   out of the file, but we can do what you want.

14             MR. BAUROTH:  Your Honor, I note that

15   the actual agreement, which is referred to as

16   Exhibit A, is not actually attached to what you

17   have.  I don't know if you have that.

18             THE COURT:  That's all I have.

19             MR. BAUROTH:  It would be the same

20   agreement executed by the parties and approved

21   before Judge Davis.

22             THE COURT:  Folks, if everyone who

23   signed this wants to withdraw it and take it back,

24   it really doesn't have to be filed.

25             MR. PODHURST:  Okay.  I'll do that,

1     unless the defendants object.

2                MR. BAUROTH:  I think it would be

3     simpler to leave it in front of one court.

4                THE COURT:  So you are taking it back by

5     agreement?

6                MR. PODHURST:  Yes, your Honor, because

7     Judge Davis has it and we agreed with the US

8     Attorney that he would have, and we agreed with

9     the Georgia plaintiffs that he would have,

10    certainly, jurisdiction.  I see no reason to

11    change that.

12                THE COURT:  Anything else?

13                MR. ALLEN:  Judge, if I may.  You ruled

14    on the order with respect to the assessment of the

15    fees, but for the record, could I possibly, more

16    or less, register sort of a modified objection on

17    my behalf, bearing in mind my special

18    circumstances with respect to the escalated scale

19    with the fees relative to the dates that are

20    imposed with respect to cases settling?

21                If it's possible, I would like to speak

22    to the plaintiff steering committee regarding

23    that, because as I mentioned to your Honor, my

24    particular case has special circumstances.

25                THE COURT:  That is true.

1              MR. ALLEN:  I would ask the Court, I'm

2     making a plea to the Court that you take it under

3     consideration.

4              THE COURT:  Okay.  Let me just, while

5     you brought that up, I wanted to make a comment.

6     When I get a stipulation for settlement in any of

7     these cases, my secretary always invariably is

8     instructed to call you folks to make sure there

9     doesn't need to be a hearing to approve that

10    stipulation because there may be minors involved

11    and that's a question that she asks you.  She's

12    been calling each and every attorney to make sure

13    that's not the case.

14              She then gets back to you and she has

15    been inquiring about minors.  She puts in minors

16    and I sign the order.  From this point forward, we

17    need to make sure there doesn't need to be a

18    hearing for any reason, and I'll be asking the

19    questions of what you are submitting as a partial

20    settlement of any sort.

21              It is true that most of the plaintiffs

22    before me are the personal representatives of the

23    estate, correct?

24              MR. ALLEN:  That's correct.

25              THE COURT:  I have to assume that that

1    personal relative is a duly appointed personal

2    representative of the estate unless I'm told

3    otherwise.  So all I'm saying is, you will be

4    getting a call from my office and be expected to

5    inform me if there is any kind of hearing that

6    would be necessary based upon any theory that's

7    applicable, because I don't know.  We had a

8    situation yesterday.

9              MR. ALLEN:  We sure did.

10              THE COURT:  I had to vacate an order

11    approving the settlement.

12              Do you want to talk to Mr. Podhurst

13    about your particular situation?

14              MR. ALLEN:  Yes, relative to the

15    escalating scale of the fees, and I may seek from,

16    some relief from this Court.

17              THE COURT:  You are welcome to do that.

18    Anything that you do by agreement is fine with me,

19    and if you need relief from me, fine.

20              MR. ALLEN:  Pardon?

21              THE COURT:  That's all I had to say

22    about that.  That also applies particularly to the

23    defendants.  You should be checking these things

24    out.

25              MR. PODHURST:  Judge, the only -- there

1    are only three more things, two of them are mine.

2    It is our request that the defendants withhold

3    these sums and interest.  I don't think I made it

4    clear.  I certainly did not intend to be unclear,

5    but normally in these cases, the defendants

6    withhold, before they settle, withhold it and hold

7    it in an interest bearing account and that's what

8    I think we are asking the Court to do.

9              MR. SCOTT:  Can you give us a letter

10   outlining what you want that to be?

11             MR. PODHURST:  Before we submit the

12   order, I'll send a letter to you.

13             MR. SCOTT:  Send us a letter saying this

14   is what we think the order says.

15             MR. PODHURST:  Then I'll submit the

16   order.

17             MR. SCOTT:  Then I could deal with the

18   insurers.

19             MR. PODHURST:  One other thing, and I

20   don't know whether we should bring this up.  Mr.

21   Scott and I have agreed in principal, I guess is

22   the word, that we are making an attempt as the

23   plaintiffs to allow the individual defendants,

24   your Honor, to be dismissed without prejudice,

25   provided that we agree on the language whereby any

1   inferences with regard to the theoretic Fifth

2   Amendment position or any inference with regard to

3   punitive damages or anything, that none of the

4   plaintiffs would be prejudiced, so that it would

5   be treated as if they were still defendants in

6   terms of whatever the Court ruling will be on

7   inference, etcetera.  The reason for that is to

8   allow -- it's twofold.

9                One, as a matter of morality, we don't

10  necessarily want to sue the individual defendants

11  who are covered by the insurance; and number two,

12  there is a great expense that the defendants are

13  going through getting separate counsel for each

14  one of these individual defendants, now that Mr.

15  Scott is an important person, your Honor, and I

16  have --

17                THE COURT:  I was going to say that.

18                MR. PODHURST:  Very important person.

19                THE COURT:  He should be congratulated.

20  That was a nice picture in the paper.

21                MR. SCOTT:  Yes, about 20 years ago.

22  Yes, 20 years ago.

23                MR. PODHURST:  Now he can do me personal

24  harm.

25                MR. SCOTT:  That's when I was 31.

1              MR. PODHURST:  Now that I'm afraid of

2      him, your Honor, I certainly want to be very

3      serious, Judge.  I think it's a good idea.  We are

4      going to try to work a stipulation that we can

5      agree on, the plaintiff's committee and the

6      defendants.  We wanted to advise you, and Mr.

7      Scott this morning suggested we take the first

8      crack with the stipulation.

9              Tom, is there anything else you want to

10     add?

11             MR. SCOTT:  No.  We are willing to agree

12     to -- we understand by naming individual

13     defendants, they may get certain jurisdictions and

14     we are prepared to enter into a stipulation, if

15     the individual defendant was present, any

16     evidentiary issue that would be present, if he was

17     here, could be raised as if he was not there, and

18     in exchange for that, the plaintiffs committee

19     understands that we are trying to cut expenses and

20     stuff like that, they would dismiss the defendant

21     and take the moral issues away from these people,

22     so we are going to work that out if we can.

23             MR. PODHURST:  Tom did mention the

24     jurisdiction theory.  There will be removal

25     because they are not Florida.

1         MR. SCOTT:  Yes.

2         MR. PODHURST:  As far as the entire

3  case.  I have two matters in my cases.  I don't

4  know of any other issues.

5         Do the defendants have any issue that I

6  have not raised?

7         MR. BAUROTH:  I can't think of anything.

8         MR. ANANIA:  I want to be clear with

9  respect to withholding of fees, and you and I will

10  discuss that.

11         MR. PODHURST:  We are going to tell you

12  what we request.  If we can agree, we will agree.

13  If not, we will submit orders.

14         MR. SCOTT:  Just lay it out for us.  I

15  want to be able to give something in writing to

16  the insurers.

17         MR. PODHURST:  It's been done in Pan Am

18  cases and other cases.  That's all that concerns

19  me.

20         I have two matters of my own, unless

21  somebody has something on the committee.

22         MR. PALMER:  One thing I would like to

23  bring up.

24         THE COURT:  Are we done with this

25  hearing?

1           MR. PODHURST:  I have two matters on

2   Valujet, but only on my cases.  I want to let them

3   all go.

4           MR. PALMER:  This is something that may

5   affect what happened yesterday.  There are a

6   number of cases which have been filed by different

7   individuals claiming to be the personal relative

8   of the decedent.

9           THE COURT:  Mr. Scott, congratulations.

10  I don't think he heard me.

11          MR. SCOTT:  I'm sorry?

12          THE COURT:  Congratulations.

13          MR. SCOTT:  Thank you, Judge.

14          THE COURT:  It really is.  It's a great

15  honor, but well deserved.

16          MR. SCOTT:  I said this to several

17  people, that if I can do half the job they expect

18  of me, I would consider that a victory.

19          THE COURT:  A lot of people have great

20  expectations.  Thank you.

21          I'm sorry.

22          MR. PALMER:  That's all right.  There

23  are a number of cases, a handful around the

24  country in which there are two different or three

25  different people claiming to be personal

1    representatives, and like the situation we

2    encountered yesterday, to avoid such a similar

3    situation, I would like to, on behalf of our

4    client anyway, at least advise your office, I

5    don't know how we would do this, maybe an ex parte

6    communication, to give you a list of those cases

7    that are multiple personal representatives so a

8    situation such as yesterday doesn't occur again,

9    in which an order is signed to approve settlement

10   for a personal representative who, in fact, is not

11   the personal representative.

12           I don't know how you want to handle

13   that.

14           THE COURT:  Well, I have thought that

15   maybe, I don't know if it will complicate matters

16   very much, but a statement that's signed by both

17   the plaintiff's attorney and the defendant if

18   there is anybody else involved, of course that

19   person will have to sign it, too, certifying to me

20   that there is no hearing required, as there is no

21   issue that would require a hearing, in particular,

22   approved by the court other than an ex parte

23   approval, other than just sending in an ex parte

24   without a hearing.  That would mean there are no

25   minors, no incompetents, no partial settlements,

1    no survivor issues, no partial settlements, no

2    survivor issues, no issues about apportionment of

3    a settlement in any way, shape or form.  I can't

4    think of any other situation where a hearing might

5    be necessary.

6          MR. ANANIA:  Your Honor, I generally

7    attend hearings related to the approval of

8    settlements.  There is really no way for the

9    defendants to know whether there is a survivor

10   objecting to it.

11         THE COURT:  Maybe we can have a

12   certification from the plaintiff's attorney.  Of

13   course, you wouldn't have, I guess it's not your

14   duty to certify, but the plaintiff's attorney

15   would have to certify in writing as an officer of

16   the court and, of course, he would subject himself

17   to a lot of trouble that he certified something

18   which is not true.

19         MR. ANANIA:  With regard to yesterday, I

20   would like to apologize for not appearing at that

21   hearing.  I never received notice.  I would ask

22   Mr. Allen serve me a notice.

23         THE COURT:  There are two lawyers for

24   Valujet and Sabretech.

25         MR. ANANIA:  I just wanted the Court to

1    be aware of why I wasn't in attendance.  Other

2    than settlements, I do try to coordinate with

3    plaintiff's counsel on all matters relating to the

4    appointment of a personal representative, whether

5    the orders are, in fact, in the court file and

6    whether there are any surviving parties who

7    object, but I have to rely upon plaintiff's

8    counsel.

9            THE COURT:  I understand.  I believe

10   that probably the order appointing a personal

11   representative should be in the court file and the

12   plaintiff's attorney should certify that there is

13   no need for a hearing involving court approval and

14   there are no issues that require that kind of

15   hearing and we referred to what those issues may

16   be.  I believe that it may be appropriate to enter

17   some kind of an order that requires that at this

18   point in time.

19           Would you please draft a proposed

20   order?

21           MR. PALMER:  I will draft an order and

22   submit it.

23           THE COURT:  You can go ahead and send a

24   copy to the plaintiff's steering committee so they

25   can review it, requiring the order appointing the

1    personal representative to appear in the court

2    file and also a certification by the plaintiff's

3    attorney that the court can't proceed to sign an

4    order approving a stipulation for settlement ex

5    parte without a hearing because there are no

6    issues requiring a hearing, to wit; motions

7    regarding minors, incompetents and the like.

8            MR. PODHURST:  Anything else?  I have

9    two matters that I would like to approach that

10   nobody is involved in.

11           Judge, we had a hearing in the Erichman

12   matter before with regard to the intervention.

13   Our form of the order is that she can participate

14   in everything on the damages.  This is where one

15   represents the father and we represent the

16   personal representative.

17           THE COURT:  This was argued at the last

18   hearing.

19           MR. PODHURST:  Yes.  That's the form of

20   the order.  Our form of the order, you do not rule

21   with regard to the trial.

22           For instance, in her form, she wanted to

23   be with me for all purposes at trial, and it seems

24   to me we are the PR I thought on that.  Two people

25   cannot put in net accumulation, and all I've done,

1    she can participate in everything if and when we

2    come to a trial.  We will work out how the trial

3    is handled.  It wouldn't be fair to the defendants

4    and certainly not fair to the plaintiff with two

5    people trying to put on the same evidence.  We are

6    the attorneys for the PR and that's what the

7    statute says.  I think our form puts off the

8    issue, which is kind of moot.  It could be

9    settled.

10             THE COURT:  The attorney on the other

11   side is Ms. Levin?

12             MR. PODHURST:  Yes.  Her form of the

13   order says that she should participate in damages,

14   including the trial for all purposes, and I think

15   the trial is a separate problem, that if and when

16   we get to it, we can do it.  She certainly has no

17   right to represent the PR on matters that the PR

18   has the responsibility to put on, and one of them

19   would be net accumulations.

20             If there was preconscious pain and

21   suffering, we can't have two lawyers putting it

22   in, so I'm suggesting that we put that off because

23   it's a problem that is not going to come up until

24   trial.  She will participate and get notice of

25   everything on damages up to trial.  We already put

1    that in there.

2              THE COURT:  Has she seen the order?

3              MR. PODHURST:  Yes, and she's not in

4    agreement with it.  We told her we would submit

5    our order.

6              THE COURT:  Let me have my office call

7    her.  I don't know if she submitted anything.  I

8    certainly have not seen it.  It had been pending.

9              MR. PODHURST:  It had been pending a

10   while.

11             The other matter, the case was settled a

12   long time ago.

13             THE COURT:  I don't think I've seen an

14   order from her on this.

15             MR. PODHURST:  Well, I have no problem.

16   I'll call her or you can call her.  We told her to

17   submit her order.  We told her to submit her own.

18   I thought she was going to be here.  She's not.

19             The other one here is self explanatory.

20   Under the rule, the division of fees is different

21   than 75-25.

22             THE COURT:  Okay.

23             MR. PODHURST:  I'll leave that with

24   you.  That's a case that was settled a long time

25   ago.  There is an affidavit from Mr. Marks.

1            THE COURT:  All right.

2            MR. PODHURST:  I can leave that with

3      you.

4            THE COURT:  Leave it with me.  I'll have

5      to ask you if you complied with the rules

6      regulating the Florida Bar as far as notice.

7            MR. PODHURST:  Yes.

8            THE COURT:  I believe that the rule

9      requires when the apportionment is other than

10      standard, that you be responsible for the work.

11            MR. PODHURST:  It's in the affidavit of

12      Mr. Marks, your Honor, if it meets with your

13      approval.  Nobody objected to it.  I think the

14      affidavit complies.

15            THE COURT:  All right.

16            MR. PODHURST:  I don't have anything

17      else.  Does anybody?  Your Honor, that's all that

18      I know of that we have in front of your Honor.

19            I was wondering, your Honor, if it would

20      be possible on September 12th, since we are

21      starting the depositions on the 15th, I don't know

22      if your Honor will be here, which is a Friday, if

23      we can have another status conference just in case

24      my brethren and I don't agree on everything.  We

25      have been doing that every month.  I think it's a

1   good idea.

2            THE COURT:  Okay.  September 12th sounds

3   fine.  I believe that's a jury week.  However, I

4   believe that I am going to be gone the first three

5   days of that week anyway, so I don't know if I'll

6   be picking a jury on Thursday.  Check with my

7   office about the time and we will try to do it.

8            MR. PODHURST:  I'll have my secretary

9   check with your office, your Honor, and we will

10  try to do it just in case.  We have been doing it

11  approximately every month.

12           THE COURT:  That's fine.  I was going to

13  ask you if you needed to set the next conference,

14  go ahead and do it.

15           MR. PODHURST:  Thank you, your Honor.

16           THE COURT:  You quite welcome.  Have a

17  very nice day.

18       (Thereupon the hearing was concluded.)

19

20

21

22

23

24

25

1              CERTIFICATE

2

STATE OF FLORIDA:
3                    : SS.
COUNTY   OF   DADE:

4

5

6              I, Victor Selvaggi, Jr., being a

7    Certified Shorthand Reporter and Notary Public in

8    and for the State of Florida at Large, do hereby

9    certify that the above-styled cause pending in the

10   above-styled court was heard before the Honorable

11   Judge MARGARITA ESQUIROZ, on August 8, 1997; that

12   I was authorized to and did report in shorthand

13   the proceedings and evidence in said cause, and

14   that the foregoing pages, numbered from 1 through

15   30, inclusive, constitute a true and correct

16   transcription of my shorthand report of the

17   proceedings at that time.

18              IN WITNESS WHEREOF I have hereunto

19   affixed my hand this 12th day of August, 1997.

20

21

22                    Victor Selvaggi, Jr., CSR,
                     NOTARY PUBLIC AT LARGE.
23                    MY COMMISSION EXPIRES:
                     5-10-01

24

25

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

WANDA HAMMOND, Individually and          )
as Personal Representative of the Minors,  )
Briana Culver and Jada Culver; MICHAEL    )
CULVER and MARCUS CULVER,                 )
Individually and as Co-Administrators of   )
the Estates of Rodney Dwayne Culver and    )
Karen Culver,                              )          CASE NO. 97 1775 CA 10
                                           )
        Plaintiffs,                        )
                                           )
v.                                         )
                                           )
VALUJET AIRLINES, INC., a foreign          )
corporation with a principal place of      )
business in Dade County, Florida; and      )
SABRETECH, INC., a foreign corporation,    )
with a principal place of business in Dade )
County, Florida,                           )
                                           )
        Defendants.                        )

## PLAINTIFFS' MOTION FOR ORDER OF DISMISSAL WITHOUT PREJUDICE TO REFILE

COME NOW Plaintiffs Wanda Hammond, individually and as personal representative of the minors Briana Culver and Jada Culver and Michael Culver and Marcus Culver, individually and as co-administrators of the Estates of Rodney Dwayne Culver and Karen Culver and pursuant to Rule 1.420(a)(2) of the Florida Rules of Civil Procedure, move this Court for entry of an order dismissing this action without prejudice to refile on the grounds set forth below.

1

1.

This action arises out of the crash of ValuJet Flight 592 into the Florida Everglades on May 11, 1996 in which Plaintiffs' decedents were killed.

2.

Plaintiff Wanda Hammond, formerly known as Wanda Williams, filed a Complaint for Damages for Wrongful Death (the "First Action") in this Court on or about May 28, 1996 by and through her former counsel of record Garrett M. Moore and Steven L. Jacques of Moore, O'Brien & Jacques (the "Former Counsel").

3.

On or about July 1, 1996, Defendant ValuJet Airlines, Inc. filed a Notice of Removal requesting the First Action be removed from this Court to the United States District Court for the Southern District of Florida, Southern Division (the "Federal Court").

4.

On July 10, 1996, James Lawrence King, United States District Judge, signed an Order of Transfer transferring the case to the Federal Court.

5.

The parties then filed Stipulations for Withdrawal of Action Without Prejudice (the "Stipulations") pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure.

6.

On January 8, 1997, K.M. Moore for Edward B. Davis, United States District Judge entered an order dismissing the case without prejudice from the Federal Court (the "Dismissal Order").

2

7.

It is unclear whether the Stipulations and/or the Dismissal Order constitute a dismissal for the purposes of the two dismissal rule under Florida and Federal law.

8.

On January 15, 1997, Plaintiffs by and through the Former Counsel, filed another Complaint for Damages for Wrongful Death in this Court (the "Second Action").

9.

On about March 25, 1997, Defendants ValuJet Airlines, Inc. and Sabretech, Inc. timely filed their Answers and Affirmative Defenses in the Second Action.

10.

No discovery has been conducted in the Second Action.

11.

On June 12, 1997, Plaintiffs terminated the employment of the Former Counsel.

12.

Plaintiffs have retained the undersigned counsel in Atlanta, Georgia (and Hollywood, Florida, as local counsel) to represent their interests, prospectively.

13.

Defendants' attorneys will not stipulate to dismissal of the Second Action without prejudice to refile.

14.

The Plaintiffs have filed a Complaint in the State Court of Fulton County, Georgia, a true and correct copy of which is attached hereto as Exhibit "A."

3

15.

Under Georgia law, the pendency of a prior action in another states does not abate an action between the same parties for the same cause which is filed in Georgia. See O.C.G.A. § 9-2-45 (copy attached). Therefore, the Georgia action may proceed regardless of the pendency of this action.

16.

The appropriate venue for litigation of this matter is in the State of Georgia given that all the Plaintiffs reside in Georgia, and that ValuJet Airlines' headquarters are located in Georgia.

17.

Pursuant to Rule 1.420(a)(2) of the Florida Rules of Civil Procedure, the Court may dismiss this action without prejudice upon such terms and conditions as the Court deems proper.

18.

The Court's dismissal of this action without prejudice will not bar Plaintiffs from pursuing their claims against Defendants, prospectively. See American Cyanamid Co. v. McGhee, 317 F.2d 295 (5th Cir., 1963); Sutton Place Dev. Co. v. Abicus Mortgage Inv. Co., 826 F.2d 637, 640 (7th Cir., 1987); Crump v. Goldhouse Restaurants, Inc., 96 So. 2d 215, 216 (Fla. 1957).

19.

Plaintiffs file this Motion out of an abundance of caution to ensure that this action is properly closed and that their claims against the Defendants raised in Georgia are not affected.

20.

Attached hereto is a proposed Order in this matter.

WHEREFORE, for the reasons set forth above, Plaintiffs' Motion for Order of Dismissal Without Prejudice to Refile should be GRANTED.

4

This the ___ day of August, 1997.

Respectfully submitted,

FREED, LESTER & BERMAN, P.C.

By:_____

Gary S. Freed
Georgia Bar No. 275275
Application for Admission Pro Hac Vice Pending

By:_____

Benjamin I. Fink
Georgia Bar No. 261090
Application for Admission Pro Hac Vice Pending

Fourteen North Parkway Square
4200 Northside Parkway, N.W.
Atlanta, Georgia 30327-3054
(404) 261-7711

PHILLIPS, EISINGER, KOSS & ROSENFELDT, P.A.

By:_____

Gary S. Phillips
Florida State Bar No. 329841

Presidential Circle
4000 Hollywood Boulevard
Suite 265 South
Hollywood, Florida 33021
(954) 894-8000

COUNSEL FOR PLAINTIFFS
WANDA HAMMOND, Individually, and
as Personal Representative of Minors
BRIANA CULVER and JADA CULVER;
MICHAEL CULVER and MARCUS CULVER,
Individually and as Co-Administrators of the
ESTATE OF RODNEY DWAYNE CULVER
and KAREN CULVER

5

*5313 Code, 9-2-45

# CODE OF GEORGIA
## TITLE 9. CIVIL PRACTICE
## CHAPTER 2. ACTIONS GENERALLY
## ARTICLE 3. ABATEMENT

*Current through the End of 1996 Reg. Sess.*

## 9-2-45   No abatement for pendency of action in another state.

The pendency of a prior action in another state shall not abate an action between the same parties for the same cause in this state.

*(Civil Code 1895, § 3738; Civil Code 1910, § 4332; Code 1933, § 3-602.)*

### NOTES, REFERENCES, AND ANNOTATIONS

**History of section.** -- This section is derived from the decision in Chattanooga, R. & C.R.R. v. Jackson, 86 Ga. 676, 13 S.E. 109 (1891).

### JUDICIAL DECISIONS

**Parties to affected actions.** -- This section applies where the second action is instituted by defendant in the first action, as well as where plaintiff in both actions is the same person. Ambursen Hydraulic Constr. Co. v. Northern Contracting Co., 140 Ga. 1, 78 S.E. 340, 47 L.R.A. (n.s.) 684 (1913).

**Alimony action not precluded by pending out-of-state divorce action.** -- Under § 19-6-10, the Legislature did not intend to preclude maintenance of alimony action where a divorce action was pending in another state. Ward v. Ward, 223 Ga. 868, 159 S.E.2d 81 (1968).

**Texas divorce decree not affected by action pending in this state.** -- Mere fact that husband had a divorce action pending in court in this state when he procured a Texas divorce is not sufficient to rebut prima facie validity of the Texas decree, since whether or not there was an action pending in this state for the same cause was not a jurisdictional fact in the case in Texas. Meeks v. Meeks, 209 Ga. 588, 74 S.E.2d 861 (1953).

Cited in Harmon v. Wiggins, 48 Ga. App. 469, 172 S.E. 847 (1934); Lumpkin v. Lumpkin, 173 Ga. App. 755, 328 S.E.2d 389 (1985); Atlantic Wood Indus., Inc. v. Lumbermen's Underwriting Alliance, 196 Ga. App. 503, 396 S.E.2d 541 (1990).

### RESEARCH REFERENCES

**Am. Jur. 2d.** -- 1 Am. Jur. 2d, Abatement, Survival, and Revival, §§ 10, 17.

**C.J.S.** -- 1 C.J.S., Abatement and Revival, §§ 63-67.

**ALR.** -- Statute requiring filing of formal notice of lis pendens in certain classes of cases as affecting common-law doctrine of lis pendens in other cases, 10 ALR 306.
*5314 Action or suit as abating mandamus proceeding or vice versa, 37 ALR 1432.

Abatement by pendency of another action as affected by addition or omission of parties defendant in second suit, 44 ALR 806.

Res judicata as available in support of demurrer, 101 ALR 1325.

Pendency of criminal prosecution as ground for continuance or postponement of civil action involving facts or transactions upon which prosecution is predicated, 123 ALR 1453.

Official Code of Georgia Annotated Copyright 1982-1996 State of Georgia.

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served the foregoing PLAINTIFFS' MOTION FOR

ORDER OF DISMISSAL WITHOUT PREJUDICE TO REFILE upon the following persons this

date by depositing the same in the United States mail, postage prepaid, and properly addressed as

follows:

Dennis M. O'Hara, Esquire
Wicker, Smith, Tutan, O'Hara, McCoy,
Graham & Ford, P.A.
One East Broward Blvd., Suite 500
P.O. Box 14460
Ft. Lauderdale, Florida 33302          COUNSEL FOR VALUJET AIRLINES, INC.

Thomas Scott, Esquire
Davis, Scott, Weber & Edwards
One Biscayne Tower
Suite #1500
Two South Biscayne Boulevard
Miami, Florida 33131          COUNSEL FOR SABRETECH, INC.

Bruce R. Wildermuth, Esq.
Mendes & Mount, LLP
750 Seventh Avenue
New York, New York 10019-6829          COUNSEL FOR SABRETECH, INC.

Thomas C. Woods, Esquire
Kimbrell & Hamann, P.A.
799 Brickle Plaza, Suite 900
Brickle Center
Miami, Florida 33131          COUNSEL FOR SABRETECH, INC.

This the _1th_ day of August, 1997.

Benjamin I. Fink
Georgia Bar No. 261090

1          IN THE CIRCUIT COURT OF THE ELEVENTH

2             JUDICIAL CIRCUIT IN AND FOR

3               DADE COUNTY, FLORIDA

4            CASE NO.: 96-09546 CA 10

5            "ALL CONSOLIDATED CASES"

6

7

8

9   IN RE:  AIR CRASH IN THE FLORIDA     :
      EVERGLADES ON MAY 11, 1996,        :

10                               :
                               :

11          Plaintiff(s),         :

12  _____:

13

14

15                    73 West Flagler Street

16                    Miami, Florida
                         September 12, 1997

17                    3:10 p.m.

18       The above-entitled cause came on for

19  hearing before the Honorable Margarita Esquiroz,

20  Circuit Court Judge, in chambers, pursuant to

21  Notice.

22

23                - - - - -

24

25

2

```
1   APPEARANCES:

2         On behalf of the Plaintiffs Steering
              Committee:
3
              PODHURST, ORSECK, JOSEFSBERG, EATON,
4             MEADOW, OLIN & PERWIN
              25 West Flagler Street
5             Miami, Florida 33130
              BY:  AARON PODHURST, ESQ.
6
              KRUPNICK, CAMPBELL, MALONE, ROSELLI
7             ROSELLI, BUSER, SLAMA & HANCOCK, P.A.
              700 S. E. 3rd Avenue
8             Suite 100
              Ft. Lauderdale, Florida 33316
9             BY:  IVAN F. CABRERA, ESQ.

10
          On behalf of the Plaintiffs:
11
              FREED & BERMAN, P.C.
12            14 North Parkway Square
              4200 Northside Parkway, N.W.
13            Atlanta, Georgia 30327
              BY:  GARY S. FREED, ESQ.
14                 BENJAMIN I. FINK, ESQ.

15            PHILLIPS, EISINGER & KOSS, P.A.
              4000 Hollywood Boulevard
16            Hollywood, Florida
              BY:  GARY PHILLIPS, ESQ.
17
              JORGE PIEDRA, ESQ.
18

19        On behalf of the Defendant Valujet
          Airlines, Inc.
20
              WICKER, SMITH, TUTAN, O'HARA, McCOY,
21            GRAHAM & FORD
              One East Broward Boulevard
22            Suite 500
              Fort Lauderdale, Florida 33301
23            BY:  ROBERT C. BAUROTH, ESQ.
                   DENNIS M. O'HARA, ESQ.
24

25
```

3

```
 1    APPEARANCES CONTINUED:

 2         On behalf of the Defendant Valujet
      Continued:
 3
                 ANANIA, BANDKLAYER & BLACKWELL
 4               Co-Counsel
                 100 S. E. 2nd Street
 5               Suite 3300
                 Miami, Florida 33131
 6               BY:  FRANCIS ANANIA, ESQ.

 7
           On behalf of the Defendant Sabretech, Inc.:
 8
                 ANDERSON, MOSS, SHEROUSE & PETROS, P.A.
 9               25th Floor, New World Tower
                 100 North Biscayne Boulevard
10               Miami, Florida 33132
                 BY:  THOMAS M. SHEROUSE, ESQ.
11                    ED MOSS, ESQ.

12               KIMBRELL & HAMANN, P.A.
                 Suite 900, Brickell Centre
13               799 Brickell Plaza
                 Miami, Florida 33131
14               BY:  THOMAS C. WOODS, ESQ.

15               MENDES & MOUNT LLP
                 Co-Counsel
16               750 Seventh Avenue
                 New York, New York 10019
17               BY:  GARRETT FITZPATRICK, ESQ.

18    ALSO PRESENT:

19               MR. ROMANA

20

21

22

23

24

25
```

4

P R O C E E D I N G S

- - - - - - -

1      THE COURT:  Okay.  I have -- I have Mr.
2   Phillips' motion.
3      MR. PHILLIPS:  Yes, Your Honor.
4      May it please the court, Gary Phillips
5   and Jorge Piedra on behalf of the Plaintiffs.
6      We have with us today, Gary Freed and
7   Ben Fink.  They are both from Atlanta.  We
8   have filed a motion, but an Order has not
9   been entered.
10      THE COURT:  Well ---
11      MR. PHILLIPS:  Verification ---
12      THE COURT:  Which one is that?  Okay.
13      I took this up with the Steering
14   Committee this afternoon, but you --
15   basically, when your matter came up I
16   realized that you were set for another time,
17   that this came while I was on vacation and
18   you brought it here so that I could address.
19      Let me see if the motion is sufficient.
20   It's Mr. Freed and Mr. Fink?
21      MR. PHILLIPS:  Yes.
22      MR. FINK:  Yes.
23      THE COURT:  Admitted in the State of

5

Georgia in good standing.

1         Mr. Freed has applied for admission in
2    the past, twice in the past three years.
3         MR. FREED:  Yes, Your Honor.
4         THE COURT:  Mr. Freed is currently
5    admitted pro hac vice in Brevard County, so
6    -- Mr. Freed has applied for admission how
7    many times, total, two or three?
8         MR. FREED:  This may be the third.
9         THE COURT:  This is the third?
10        MR. FREED:  I applied for admission to
11   the courts in Melbourne and that matter has
12   been stayed and arbitration has been ordered
13   and I was admitted to the Southern District
14   of Florida in a matter last year for --
15   which was resolved prior to trial.
16        THE COURT:  So, this is the third one?
17        MR. FREED:  Yes, ma'am.
18        THE COURT:  What does the Rule say?
19   The Rule says you should so state how many
20   times you have been admitted in the past
21   three years, but it does not have any limit
22   as to how far the number of times that the
23   court can consider, correct?
24        MR. FINK:  No.

```
 1          MR. PHILLIPS:  There is no limit in the
 2     Rules.
 3          THE COURT:  It's probably discretionary.
 4          MR. PHILLIPS:  Right.
 5          THE COURT:  Mr. Fink has applied for
 6     admission in the past three years.
 7          MR. FINK:  That is correct, Your Honor.
 8          THE COURT:  You also are admitted in
 9     Brevard County.  That is a separate matter?
10          MR. FINK:  Correct.
11          THE COURT:  That is two times?
12          MR. FINK:  The one in Brevard County,
13     the only one.
14          THE COURT:  Okay.
15          MR. FREED:  Your Honor -- in Brevard
16     County, the only thing that happened was a
17     Motion to Stay.
18          An Order of Arbitration was entered and
19     that action will be dismissed after the
20     arbitration, which begins Monday.
21          THE COURT:  Your verification is back
22     here -- okay.  Okay.  Let me give it to her,
23     so she can conform.
24          MR. FINK:  Thank you, Your Honor.
25          MR. FREED:  Thank you, Your Honor.
```

1          MR. PHILLIPS:  Your Honor, we have been
2     here many times before.  The first time was
3     the Defendant's Motion for Dismissal ---
4          THE COURT:  Okay.
5          MR. PHILLIPS:  Mr. Freed would like to
6     address the merits of the motion.
7          THE COURT:  The Plaintiff wants to
8     dismiss their own action without prejudice?
9          MR. PHILLIPS:  Right.  We're not sure
10    that we need to be here, Judge.
11         THE COURT:  No, you can voluntarily
12    dismiss a case anytime you want.
13         MR. PHILLIPS:  I understand stand that,
14    but in the federal court case, there was a
15    dismissal, an Order of Dismissal.
16         We're concerned about -- we filed in
17    Georgia, so there are two cases pending, and
18    we're concerned about the two-dismissal rule.
19         The Defendants, as in their memorandum,
20    have noted that they think it's their opinion
21    that we would be -- we would fall under the
22    two-dismissal rule if we took a voluntary
23    dismissal and not be entitled to refile.
24         We're not sure because of the Order
25    entered, but in an abundance of caution we'd

1    like you to enter an Order dismissing this
2    case, so that we can proceed with the case
3    in Atlanta.  That is the status of the case
4    by which we're operating right now.
5         THE COURT:  Okay.  The Plaintiff wants
6    to dismiss this action and wants me to enter
7    an Order of Dismissal in this action so that
8    you can proceed in Atlanta?
9         MR. PHILLIPS:  Correct.
10        THE COURT:  Well, I don't have a problem
11   with that.  Are you concerned that you are
12   not going to be able to refile in Florida?
13        MR. PHILLIPS:  We don't want to refile
14   here.
15        THE COURT:  What is the ---
16        MR. PHILLIPS:  The only problem -- we'd
17   like an Order authorizing that activity.
18        MR. WOODS:  Do you want to hear from
19   the other side?
20        Thomas Woods for Sabretech.
21        For the record, this case, the first
22   case was filed in June of '96 and removed to
23   federal court.
24        There was a dismissal without prejudice
25   entered in the federal court matter.

```
 1            THE COURT:  As a result of ---
 2            MR. WOODS:  Stipulation and dismissal
 3       under the federal rules.
 4            THE COURT:  So, that was a voluntary
 5       dismissal?
 6            MR. WOODS:  Without prejudice and there
 7       was one filed by the Plaintiff in the state
 8       court records in which the case had
 9       originally been removed.
10            I don't know why, but there is another
11       one in the state court records, even though
12       the case was dismissed, which was pending
13       before Judge Davis.
14            THE COURT:  So, the case was
15       voluntarily dismissed once in federal court.
16            MR. WOODS:  Correct, and if they want
17       you to enter an Order upon their Motion for
18       Dismissal Without Prejudice, then we have to
19       make it clear on the record that we believe
20       under Florida law that that is going to
21       trigger the two-dismissal rule and
22       adjudication upon the merits, which will
23       have full faith and credit, we believe, in
24       the Georgia court.
25            So, we're not agreeing to the motion.
```

```
 1              There is an issue of waiver here and we
 2         believe that this will act under the
 3         two-dismissal rule and there is a second
 4         story, we have a settlement with the
 5         predescessor counsel, counsel before this
 6         gentleman, which we'd like to have brought
 7         before the court.
 8              THE COURT:  In which case?
 9              MR. WOODS:  In the Culvert case.  This
10         case, Your Honor.
11              THE COURT:  This case?
12              MR. WOODS:  Yes.
13              THE COURT:  Which was removed to
14         federal court and voluntarily dismissed and
15         then refiled?
16              MR. WOODS:  Refiled, yes, Your Honor.
17              THE COURT:  With predescessor counsel
18         being?
19              MR. WOODS:  Mr. Jacques.
20              THE COURT:  Who does he represent?
21              MR. WOODS:  He represents the Culverts.
22              THE COURT:  Everyone, all of the
23         Plaintiffs?
24              MR. WOODS:  Yes, ma'am.
25              THE COURT:  Hammond, as personal
```

1      representative ---

2          MR. WOODS:  For the deceased in a

3      wrongful death action.

4          Both the first time and this time.

5          In the first action it was Wanda

6      Hammond as personal representative for the

7      Culverts, the decedents and in this case,

8      Wanda Hammond, and they added Michael ---

9          THE COURT:  What happened?   Was -- Mr.

10     Phillips, what happened?  They withdrew?

11         MR. PHILLIPS:  Your Honor, what happened

12     was the Plaintiffs did not authorize Mr.

13     Jacques to certain things that he did.

14         They didn't know that he was

15     representing some of the parties.  He was

16     discharged and there is an ethics complaint

17     pending before the Connecticut Bar, but we

18     don't believe that that has anything to do

19     with what we're here for today.

20         If they felt that there was a

21     settlement they should have filed a Motion

22     to Enforce the Settlement and set forth the

23     terms of the settlement.

24         MR. WOODS:  Which is what we'll do.

25         MR. FREED:  Your Honor, I think we're

1      dealing with certain things in a vacuum and

2      maybe it ---

3              THE COURT:  Wait a minute.  Am I not

4      really being asked to make a decision that is

5      premature?   It's like an advisory opinion.

6              Whatever the effect, this Plaintiff

7      wants to take a dismissal, they can take it

8      and I can enter an Order approving it and it

9      does not have to say that it's with or

10     without prejudice because anybody can take a

11     voluntary dismissal.

12             We're not going to keep them from doing

13     that.  If they want to refile, that's when

14     the issue will come up, but I don't think

15     that now is the -- it's kind of moot.  It's

16     -- you may never -- I may never need to

17     reach the issue.

18             MR. BAUROTH:  Your Honor, Robert

19     Bauroth on behalf of Valujet.

20             I want to make it clear that Valujet

21     does not agree to any dismissal that the

22     Plaintiffs seek here, either by serving the

23     notice or by filing the motion with the

24     court as they have.

25             I believe Your Honor is correct that

13

```
1        they're asking for an advisory opinion as to
2        what will the effects of this be, and we
3        would strenuously oppose that, as our
4        memorandum of law states to the court,
5        signing an Order approving the dismissal
6        that they want.
7             If they want a dismissal, they are free
8        to file a Notice.
9             THE COURT:  You don't need an Order from
10       the court to voluntarily dismiss the case.
11            You can voluntarily dismiss a case by
12       filing a notice of voluntary dismissal
13       anytime before the case is submitted to the
14       jury or to the judge for dismissal in a
15       nonjury case.
16            You don't need an Order from me.
17            MR. PHILLIPS:  We know that, but if it
18       was that simple, we would not be here.
19            We have a reason.  We do not -- Mr.
20       Freed is ready to argue ---
21            THE COURT:  Well, you're evidently
22       qualified and knowledgeable on the law.  You
23       should know what the affect of your actions
24       are and, I mean, you really want to make
25       sure that you're not kicked out of court at
```

1          this time and the issue has not arisen

2          because you've not tried to refile the case.

3                  MR. FREED:  Your Honor, the action has

4          already been filed in Georgia.

5                  My client's prior counsel in

6          Connecticut filed an action in Florida and

7          then voluntarily stipulated with the consent

8          of opposing counsel to a dismissal of that

9          action in December of 1996.

10                 THE COURT:  Of which action?

11                 MR. FREED:  What happened was an action

12         was filed in this court.  It was removed to

13         federal court.

14                 THE COURT:  I understand.

15                 MR. FREED:  That action was dismissed

16         and the federal court judge ordered it

17         dismissed.

18                 Then counsel refiled the action here

19         and that action is pending.

20                 There has been no discovery and no

21         depositions and no mandatory disclosure and

22         no motion other than the foremost, having to

23         deal with the remand from the federal to

24         state court.

25                 My client did not consent to a

1          settlement under the terms that were
2          proposed and it would have to be addressed
3          by the probate court in Atlanta where my
4          client lives because there are minors who
5          are two and three years of age.
6               We have refiled the action in Atlanta
7          and any claim by the Defendants that there
8          is a resolution can be brought before the
9          Honorable Gino Brodgon, in the state court
10         in Fulton County, Georgia.
11              My clients are there and we're there.
12         Valujet is there.  Sabretech has been
13         served.  The problem is if we stipulate to a
14         second dismissal, the authority is split,
15         that it might act in some way as an estoppel
16         of a third action, which we have now filed.
17              THE COURT:  I don't understand.  What
18         say is there over anything that the Georgia
19         court has.
20              MR. FREED:  Valujet headquarters are in
21         Atlanta, Judge.
22              THE COURT:  If you're worried about
23         your case in Atlanta, Georgia, that case
24         staying alive, that -- that is not up to me.
25              MR. PHILLIPS:  You're right, it's not.

```
 1            THE COURT:  It's not up to me.
 2            MR. FREED:  Your Honor, all we need ---
 3            THE COURT:  I don't mean to laugh, but
 4       ---
 5            MR. PHILLIPS:  The way the case law
 6       reads, it says if we take the voluntary
 7       dismissal ---
 8            THE COURT:  I understand and that
 9       action has an adjudication on the merits.
10            MR. PHILLIPS:  Right.  And if you order
11       it on our motion and you enter an Order of
12       Dismissal Without Prejudice, we can go
13       forward in Atlanta and leave Florida.
14            MR. BAUROTH:  Can I address the court,
15       Your Honor?
16            MR. FREED:  There is a case right on
17       point which we did not put in our brief.
18            We found it yesterday.  It's the case
19       of -- it's right here.  DER versus DuPont,
20       which is a 1992 Middle District of Florida
21       decision, which would act as precedence on
22       this court, Your Honor.
23            MR. WOODS:  We've not seen it, but that
24       is a federal rule and that is different.
25            I have a case right on point in the
```

1          Third District, if you would like to see it.
2          It's the Tinsley case, Your Honor, 378 So.2d
3          817.
4               MR. BAUROTH:  And we have another case
5          which is on point that says if you sign any
6          order that he's requesting under their
7          motion, it's an adjudication on the merits
8          because it's the second time around.
9               MR. FREED:  That would be up to the
10         Fulton County judge to determine.
11              We're asking for this court to enter an
12         Order to Dismiss and any issue that any of
13         the Defendants have in regard to that Order
14         can be brought to the court in Fulton
15         County.
16              THE COURT:  What do you want my Order
17         to say?
18              MR. FREED:  That this action is
19         dismissed without prejudice.
20              THE COURT:  Okay.  Let me -- you know,
21         we're kind of having a disjointed argument.
22              Let me -- we're talking back and forth.
23         We're all talking at the same time.
24              Let me give you the courtesy of reading
25         this case, if you have a case, and I will

```
 1          read it and I will read it as quickly as I
 2          can and tell you what I think about this.
 3               MR. BAUROTH:  Your Honor, I submitted a
 4          memorandum of law.  I don't know if Your
 5          Honor has seen it or the attached cases.
 6               THE COURT:  This is what I have
 7          (indicating).
 8               THE COURT:  Sure.
 9               MR. FREED:  I did not receive your
10          brief, by the way.
11               MR. WOODS:  I did not file a brief.
12               MR. PHILLIPS:  I got the brief
13          yesterday.
14               MR. PIEDRA:  Your Honor, may I respond?
15          Jorge Piedra.
16               Your Honor, the Tinsley case, which
17          they have cited, is a case about revisiting
18          a motion on a Notice of Voluntary Dismissal.
19               It has nothing to do with what we're
20          here before the court on today.  We're here
21          asking for this court to enter a voluntary
22          dismissal without prejudice.
23               There is nothing in the rules that says
24          that what they're trying to argue, what
25          should be before the Georgia court, if that
```

1      order is entered.

2          There is nothing to suggest that any of

3      the cases that they have cited that says we

4      can't ask for it, and this court cannot

5      enter an order of voluntary dismissal

6      without prejudice.

7          I have the Crump case, which is a 1957

8      Florida Supreme Court case.  It's directly

9      on point.

10          The case that is dicta from the Third

11      DCA and the Crump case has not been ---

12          MR. WOODS:  It's been overturned, Your

13      Honor.

14          MR. PIEDRA:  Your Honor, I just simply

15      would like to reiterate what they are

16      suggesting is contrary to the plain meaning

17      of the rule.

18          There is nothing before this court to

19      suggest that the court cannot enter an Order

20      of Voluntary Dismissal Without Prejudice.

21          They are arguing what would be argued in

22      the next case.  We're only here for an Order

23      of Voluntary Dismissal Without Prejudice and

24      I have a copy of the Proposed Order.

25          THE COURT:  Do you want to respond or

1        did you already?

2            MR. WOODS:  I've not had a chance.  The

3        Crump case is not close.  The Crump case was

4        before we had our modern Rules of Florida

5        Procedure, 1.35, which was part of the

6        federal rules that says you can't dismiss

7        after an Answer is filed, and since that time

8        we've eliminated that requirement under our

9        rules.

10           Now, also, if you read the Crump case,

11       you don't have the identity of the parties.

12       You have different people coming along and

13       filing later lawsuits, so they didn't have

14       the same people dismiss twice, and I think

15       you had serial causes of action that were

16       different, that were not subject to

17       dismissal, so the Crump case, we don't

18       believe, has any effect on the issues before

19       the court.

20           MR. BAUROTH:  On behalf of Valujet, I

21       would agree with Mr. Wood's statement about

22       the Crump case.

23           There is no identity of the parties

24       where the identity of a cause of action.

25           Here we have the identity of the cause

1    of action and I might point out, Judge, in
2    their motion, they stated no discovery has
3    been conducted in the second action.
4         Well, the second action is part of the
5    consolidated case before this court, and
6    there has been a high amount of discovery
7    going on and they are part of the Plaintiffs
8    Steering Committee, and the Defendants have
9    participated in some 500,000 documents.
10        Valujet has participated in discovery,
11   significantly, and, Your Honor, that is the
12   purpose of the Rule, which is not to allow
13   parties to file lawsuits upon a mere whim or
14   lightly when they take up the time and
15   expense of the people and the courts and
16   everything else and for that reason we
17   oppose, we oppose Your Honor signing a
18   motion granting or any Order granting the
19   motion that they ask, and they have given
20   you no law that says you have to grant their
21   motion and sign the Order.
22        THE COURT:  Thank you.
23        Counsel?
24        MR. WOODS:  Sabretech joins.
25        THE COURT:  I've reviewed this DER

1    versus DuPont and the Morrison Company case,

2    which is a U.S. District, Middle District of

3    Florida case, and it appears after reading

4    the cases, that this is the first time this

5    case was dismissed.

6        This is not a two-dismissal case.

7        The issue here was costs and the court

8    concluded that the Defendant argued that it

9    is entitled to recover its costs under Rule

10   41D.

11       However, Rule 41D only applies to

12   claims which has already been dismissed.

13       Rule 41D states, "If a Plaintiff who

14   has once dismissed an action in the court

15   commences an action based upon or including

16   the same claim against the same Defendant,

17   the court may make such order for the

18   payment of costs of the action previously

19   dismissed as it may be deem proper and may

20   stay the proceedings in the action until the

21   Plaintiff has complied with the Order."

22       That's not the case here.  So,

23   basically, the court went ahead and held

24   that the Motion for Voluntary Dismissal

25   Without Prejudice should be granted.

1          This is not a case where the court was
2     deciding anything about a prior dismissal.
3     This is the first time the case was
4     dismissed by the Plaintiff.
5          MR. FREED:   That is correct, Your Honor.
6          THE COURT:   I don't know why you're
7     citing that case to me for.
8          MR. FREED:   The reasons that the court
9     considered making that determination were
10    that whether or not the Plaintiff gained a
11    tactical advantage.
12         THE COURT:   Well, that is not a case
13    that stands for any authority that once you
14    dismiss a case, that I can enter an Order of
15    Dismissal Without Prejudice.
16         MR. FREED:   Your Honor, the difference
17    in the Tinsley case was a stipulation of
18    dismissal.
19         It was signed by Sabretech and signed
20    by Valujet, and a federal judge signed an
21    Order.
22         THE COURT:   I didn't mean for you to go
23    through these things and let you argue.
24         MR. FREED:   I'm sorry, Your Honor.
25         THE COURT:   I was just reading the case

1    and telling you what my analysis of the
2    problem is.
3         MR. FREED:  Your Honor, Georgia law
4    provides that an out-of-state action is not
5    an abatement.
6         We could have two parallel actions
7    proceeding, so we have asked for the
8    convenience of everyone ---
9         THE COURT:  Again, you've cited the DER
10   case to me as authority for what you're
11   asking me to do, and I repeat, this case
12   does not have -- say anything in that case
13   where a case had been dismissed once.
14        It dealt with issues regarding costs.
15        Okay.  Now, the Crump case ---
16        MR. FREED:  That is authority, Your
17   Honor.
18        THE COURT:  The Crump case is
19   authority?  Well, I don't know about that
20   because the Crump case says -- the first
21   thing it says, "The first suit sought only
22   an injunction against the
23   Defendant-directors holding a meeting of the
24   board of directors of the corporation for
25   the purpose of selling or issuing unissued

1    stock or increasing the membership of the

2    board without an election by the

3    stockholders on the ground that such action

4    was not authorized by the charter and was,

5    for the purpose of gaining control of the

6    corporation by the defendant-directors."

7         The instant suit, filed by Plaintiff in

8    his own name, did not seek an injunction; it

9    contained allegations of fraud and

10   mismanagement on the part of the Defendant.

11        The first thing it says is you don't

12   have the same cause of action, which is what

13   the two-dismissal rule is intended.

14        The same cause of action being filed

15   once before and what the effect of that

16   second voluntary dismissal of the same cause

17   of action is, so the first thing they did

18   was distinguish that.

19        Then the court points that the only

20   voluntary dismissal taken by the Plaintiff

21   on Rule 1.35(a)(1) was that filed in the

22   second suit.

23        Thus, the third suit is not barred

24   under the two-dismissal rule, even if it's

25   assumed that the plaintiff was bound by the

1        dismissal in the first two suits, which we
2        don't have that situation here.
3            You have the Tinsley case and in that
4        case you had a judge who entered an order of
5        dismissal on a second voluntary dismissal,
6        who is asked to set it aside and the Third
7        District said that the court didn't have
8        authority to do that.
9            It says, "In the present case, however,
10       it is argued that the second dismissal was
11       by motion, with the resulting order
12       specifically stating that the dismissal was
13       without prejudice.
14           It appears that this distinction is
15       without substance because all voluntary
16       dismissals, except in certain specified
17       instances refer to in the rule, are without
18       prejudice."
19           All dismissals are without prejudice,
20       and the exception to that is if the law says
21       otherwise.
22           Unless otherwise stated in the Notice
23       or stipulation, the dismissal is without
24       prejudice, except that a Notice of Dismissal
25       operates as adjudication upon the merits.

1    You know, I can yell it out without

2    prejudice and if the Third District says what

3    you did has the effect of being a dismissal

4    with my stamp of approval, it ain't going to

5    help you.

6    I just don't -- you know, don't see how

7    else to rule.

8    I don't think I have to enter an Order

9    on this.  You can voluntarily dismiss the

10   case, unless there is a requirement under

11   the Rule that you get an Order in a certain

12   stage of the proceedings.

13   I don't know if that is in there.

14   MR. BAUROTH:  Are you then denying the

15   motion?

16   THE COURT:  Or if I enter an Order,

17   it's only going to say that you're Notice of

18   Voluntary Dismissal is correct, the case is

19   dismissed and, you know, whatever legal

20   effect that dismissal has is a question for

21   another day.

22   It's not even a question for now, but

23   in my view I'm not too sure this is a

24   dismissal, if you take it.

25   MR. PHILLIPS:  That's why we've not

1       filed a notice, but if the Defendants are so

2       sure it's going to act as a dismissal with

3       prejudice no matter what you say, we're

4       willing to take the risk.

5           THE COURT:  With all due respect, I do

6       not want to do something that in my best

7       sense tells me it's legally incorrect.

8           To put the words "without prejudice" in

9       there, what I'm telling you that that is an

10      ineffective language in an Order, because

11      that is -- that is not going to help you and

12      I'm not sure it's a dismissal without

13      prejudice and I don't want to put something

14      in an Order that I do not necessarily

15      believe in.

16          MR. PHILLIPS:  Judge, if we file the

17      federal court stipulation for dismissal, and

18      you see the stipulation and that Order of

19      Dismissal, I think ---

20          THE COURT:  What difference is that?

21      What difference will that make?

22          I'm seeing the facts in the light most

23      favorable to you.  I don't need to know ---

24          MR. PHILLIPS:  If you assume we

25      voluntarily dismissed it, which we didn't

1    do, but if you assume that there was a

2    stipulation filed by the Plaintiffs ---

3         THE COURT:  Isn't that a voluntary

4    dismissal?  It's just a settlement ---

5         MR. WOODS:  No, no.

6         THE COURT:  Look, this has been

7    discussed ad nauseum and ---

8         MR. WOODS:  He wants to dismiss the

9    cause without prejudice.

10        THE COURT:  If he wants to dismiss

11    this, that's fine.  I cannot give you an

12    advisory opinion at this point in time,

13    which is what you're asking me, that this

14    action is not dismissed without prejudice.

15        I can't -- I can't do that, and it

16    seems to me that if the first dismissal was

17    a voluntary dismissal, if you once dismissed

18    the voluntary dismissal, then this dismissal

19    may be very well with prejudice, if that's

20    what you've done in the past.

21        Your position is that you didn't do

22    that?

23        MR. PHILLIPS:  We're taking the

24    position that the Order entered by the

25    federal court, based upon the stipulation,

1    may -- may prevent the two-dismissal rule.

2         We didn't want to take the chance by

3    filing a notice here and that's why we came

4    before you, Judge.

5         THE COURT:  That the Order signed by

6    the federal judge may take it out of the

7    two-dismissal rule?

8         Unless you have a case right on point

9    on that and I don't see one -- you all

10   dismiss the case without settling?

11        You just -- the Plaintiff decided to

12   dismiss the case?

13        MR. BAUROTH:  Yes.  The federal rule

14   provides that the Plaintiff can simply --

15   let me try and make -- a Plaintiff can

16   simply file a notice, like they did, in

17   state court, and circulate a stipulation.

18        There was a stipulation, but all the

19   stipulation said is that we agree that it's

20   without prejudice.

21        MR. FREED:  Your Honor, may I request

22   the court stay this action, so that we may

23   proceed in Fulton County state court?

24        THE COURT:  Well, if you want the court

25   to do that, you have to file a separate

1    motion.

2         MR. WOODS:  We'll be filing papers

3    regarding the question of settlement and

4    we'll be requesting an evidentiary hearing.

5         THE COURT:  I'm just going to enter an

6    Order denying this motion, and the reasons

7    have been very clear for the record.

8         I'm not going to give you an Order that

9    says that this is dismissed without

10   prejudice.  I can give you an Order, but I

11   don't know what the effect of that Order is

12   and at this time it's not an issue before

13   me.

14        MR. FREED:  Thank you, Your Honor.

15        MR. BAUROTH:  Judge, do you want one of

16   us to prepare the Order?

17        THE COURT:  Prepare an Order that says

18   Plaintiffs Motion to Refile Without

19   Prejudice is denied for the reasons

20   extensively stated on the record.

21        MR. BAUROTH:  Thank you, Your Honor.

22        (Thereupon, the hearing was concluded

23        at 3:25 p.m.)

24        - - - - - -

25

1                    C E R T I F I C A T E

2    STATE OF FLORIDA   )
                        : SS.
3    COUNTY OF BROWARD  )

4                    I, JOAN COMPARATO, Shorthand

5    Reporter do hereby certify that I was authorized

6    to and did report the above hearing at the time

7    and place herein stated, and that it is a true

8    and correct transcription of my stenotype notes

9    taken during said hearing to the best of my

10   ability.

11                    IN WITNESS WHEREOF I have hereunto

12   set my hand and seal this 22nd day of September

13   1997.

14

15

16

17                                                ____

18                         JOAN COMPARATO
                           Shorthand Reporter
19

20
     My Commission Expires:  January 30, 1999
21

22

23

24

25



# Phillips, Eisinger, Koss & Rosenfeldt, P.A.

## Attorneys At Law

Presidential Circle
4000 Hollywood Boulevard
Suite 265 South
Hollywood, Florida 33021

Miami Location
Alfred I. Dupont Building
169 East Flagler Street
Suite 1000
Miami, Florida 33131

Please respond to:
Hollywood Office (X)
Miami Office       ( )

TELEPHONE:
954 894-8000
FACSIMILE
954 894-8015

September 5, 1997

Honorable Margarita Esquiroz
Dade Circuit Court
Room 505
73 West Flagler Street
Miami, Florida  33130

Re:  Wanda Hammond, et al. v. Valuejet Airlines, Inc., et al.
      Case No.: 97-1775 CA 10

Dear Judge Esquiroz:

Enclosed please find a copy of Gary S. Freed and Benjamin I. Fink's Motion for Admission Pro Hac Vice in the above referenced matter.  I have also enclosed a proposed order regarding the same.

If the Motion and the Order meet with your approval, please enter the Order and have your judicial assistant forward conformed copies to counsel of record in the enclosed, self addressed, stamped envelopes.

Respectfully Submitted,

GARY S. PHILLIPS

GSP/pja

cc:  Counsel of Record

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

WANDA HAMMOND, Individually and          )
as Personal Representative of the Minors, )
Briana Culver and Jada Culver; MICHAEL   )
CULVER and MARCUS CULVER,                )
Individually and as Co-Administrators of  )
the Estates of Rodney Dwayne Culver and   )
Karen Culver,                            )        CASE NO. 97 1775 CA 10
                                         )
          Plaintiffs,                    )
                                         )
v.                                       )
                                         )
VALUJET AIRLINES, INC., a foreign        )
corporation with a principal place of    )
business in Dade County, Florida; and    )
SABRETECH, INC., a foreign corporation,  )
with a principal place of business in Dade )
County, Florida,                         )
                                         )
          Defendants.                    )

**ORDER ON MOTION FOR ADMISSION PRO HAC VICE**

This cause came before the Court upon Plaintiffs' Motion for Admission Pro Hac Vice and

the Court having reviewed the filing being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that the Motion is granted and Gary S. Freed and Benjamin

I. Fink are hereby admitted to the bar of this Court, *pro hac vice* for the limited purpose of

representing the Plaintiffs in this action.

DONE AND ORDERED in Chambers, Dade County of Florida on this the 12th day of Sept.

1997.

JUDGE, ELEVENTH JUDICIAL
CIRCUIT, DADE COUNTY,
FLORIDA

JUDGE MARGARITA ESQUIROZ

Conformed copies to:

Gary S. Phillips, Esquire
Phillips, Eisinger & Koss, P.A.
Presidential Circle
4000 Hollywood Boulevard
Suite 265 South
Hollywood, Florida 33021

Dennis M. O'Hara, Esquire
Wicker, Smith, Tutan, O'Hara, McCoy,
 Graham & Ford, P.A.
One East Broward Blvd., Suite 500
P.O. Box 14460
Ft. Lauderdale, Florida 33302

Thomas Scott, Esquire
Davis, Scott, Weber & Edwards
One Biscayne Tower
Suite #1500
Two South Biscayne Boulevard
Miami, Florida 33131

Stephen L. Jacques, Esquire
Moore, O'Brien, Jacques & Yelenak
700 West Johnson Avenue - Suite #207
Cheshire, Connecticut 06410

h:\6382-3\prohacvi.ord

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 96-09546 CA 10
All Consolidated Cases

IN RE:  AIR CRASH IN THE FLORIDA
EVERGLADES ON MAY 11, 1996

## ORDER

THE COURT upon its own Motion, having reviewed this matter, having heard argument of counsel and being otherwise fully advised, does hereby ORDER AND ADJUDGE that:

1.     All motions seeking the approval of settlements, and stipulations and Orders of Dismissal must contain a certificate from plaintiffs' counsel certifying that:  (1) there are no other claimants, survivors, beneficiaries, dependents, or other persons or entities who may have a claim arising from the death of the decedent in the subject air crash; (2) all of the decedent's survivors, beneficiaries and dependents agree to the amount and allocation of the proposed settlement and there are no objections to same; (3) the proposed settlement does not affect any other survivors, beneficiaries or dependents of the decedent who are minors or incompetents; (4) there are no pending or potential

attorneys' fee claims or liens; and (5) that Plaintiffs' counsel has provided payment to the Podhurst Orseck, et al. Trust Account consistent with this Court's prior Order regarding Plaintiffs' Steering Committee fees and costs.

2.    Each motion for approval of settlement or stipulation and order of dismissal must contain copies of all orders appointing personal representative(s) and letters of administration.  In those jurisdictions where no order appointing a personal representative or letters of administration are issued, the motion for approval of settlement or stipulation and order of dismissal must include a declaration of Plaintiff's counsel that no probate proceedings are necessary under the applicable state law.

DONE AND ORDERED at Miami, Dade County, Florida, this 18th day of Sept, 1997,

JUDGE MARGARITA ESQUIROZ

_____
CIRCUIT COURT JUDGE

Copies furnished to all counsel of record:

g:akr:valujet:order.821

## SERVICE LIST
### Plaintiffs' Steering Committee

Aaron S. Podhurst, Esq. - Chairman of PSC
Steven C. Marks, Esq. - Member of PSC
Podhurst, Orseck, Josefsberg, et al.
25 West Flagler Street
Suite 800
Miami, FL 33130

Mitch Baumeister - Member of PSC
Baumeister & Samuels
One Exchange Plaza
New York, NY 10006

John Howie, Esq. - Member of PSC
Howie & Sweeney, L.L.P.
Park Place on Turtle Creek
2911 Turtle Creek Boulevard
Suite 1400
Dallas, TX 75219

Gerald Lear, Esq. - Member of PSC
Speiser, Krause, et al.
1300 North 17th Street
Suite 310
Rosslyn, VA 22209

Kevin Malone, Esq. - Member of PSC
Krupnick, Campbell, et al.
Courthouse Law Plaza, Suite 100
700 S.E. Third Avenue
Ft. Lauderdale, FL 33316

## SCHEDULE "A"

Francis A. Anania, Esq.
Anania, Bandklayder & Blackwell
One International Place, Suite 3300
100 S.E. Second Street
Miami, FL 33131


Dennis M. O'Hara, Esq.
Wicker, Smith, Tutan, O'Hara, et al.
One East Broward Blvd.
Suite 500
Ft. Lauderdale, FL 33302


Thomas Scott, Esq.
Davis, Scott, Weber & Edwards
One Biscayne Tower, Suite 1500
2 South Biscayne Blvd.
Miami, FL 33131


Thomas C. Woods, Esq.
Kimbrell & Hamann, P.A.
Brickell Centre, Suite 900
799 Brickell Plaza
Miami, FL 33131-2805

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
FLORIDA

GENERAL JURISDICTION
DIVISION

CASE NO.  97 1775 CA 10

WANDA HAMMOND, Individually and
as Personal Representative of the Minors,
Briana Culver and Jada Culver;
MICHAEL CULVER and MARCUS
CULVER, Individually and as Co-Adminis-
trators of the Estates of Rodney Dwayne
Culver and Karen Culver

      Plaintiffs

vs.

VALUJET AIRLINES, INC., a foreign corporation
with a principal place of business in Dade County,
Florida; and SABRETECH, INC., a foreign
corporation, with a principal place of business
in Dade County, Florida,

      Defendants

## MOTION TO WITHDRAW AS COUNSEL

      COMES NOW, the law firm of Moore, O'Brien, Jacques & Yelenak, and

moves this Honorable Court for the entry of an Order permitting it to withdraw as

counsel of record for the plaintiffs, and as grounds therefore would state that on or about June 12, 1997, the plaintiffs discharged Moore, O'Brien, Jacques & Yelenak and retained the law firm of Freed, Lester & Berman, P.C. of Atlanta, Georgia.

WHEREFORE, the undersigned law firm moves this Honorable Court for entry of an Order permitting it to withdraw as counsel of record for the plaintiffs and providing that all future pleadings be furnished to Freed, Lester & Berman at Fourteen North Parkway Square, 4200 Northside Parkway, N.W., Atlanta, Georgia 30327.

I HEREBY CERTIFY that a copy of the foregoing was served by mail upon Freed, Lester & Berman at the above-referenced address on this 17th day of September, 1997.

MOORE, O'BRIEN, JACQUES
& YELENAK
Attorneys for plaintiffs
700 West Johnson Avenue
Suite 207
Cheshire, CT 06410


By_____
Stephen Jacques, Esq.

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
CASE NO.   96-09546 CA 10
All Consolidated Cases
96-09816 CA 10
96-09897 CA 10
96-09938 CA 10
96-10127 CA 10
96-10150 CA 10
96-10717 CA 10
96-11228 CA 10
96-11229 CA 10
96-11232 CA 10
96-11325 CA 10
96-11366 CA 10
96-11489 CA 10
96-11541 CA 10
96-11562 CA 10
96-11731 CA 10
96-12807 CA 10
96-12808 CA 10
96-12809 CA 10
96-13207 CA 10
96-13745 CA 10
96-14324 CA 10
96-14325 CA 10
96-14326 CA 10
96-18301 CA 10
96-18777 CA 10
96-18778 CA 10
97-03155 CA 10
97-05059 CA 10
97-05634 CA 10
97-05710 CA 10
97-06430 CA 10
97-06428 CA 10
97-08416 CA 10
97-01005 CA 10
97-10366 CA 10
97-10388 CA 15
97-10398 CA 10
97-10402 CA 10
97-10690 CA 10
97-14227 CA 10

IN RE: AIR CRASH IN THE FLORIDA
EVERGLADES ON MAY 11, 1996
_____ /

## ORDER GRANTING PLAINTIFFS' STEERING COMMITTEE'S
## MOTION FOR ASSESSMENT OF COSTS AND WITHHOLDING OF FEES

The Court having considered the above-captioned motion, and being fully advised in the premises, it is hereby

ORDERED and ADJUDGED:

1.      All cases pending as of May 1, 1997, are assessed costs of $2,500.00 to be paid to the Podhurst, Orseck, et al. Trust Account, which funds may only be distributed pursuant to further order of this Court.

2.      Additional fees will be assessed, subject of court approval, according to the following formula:

a.      3 % of any gross recovery obtained between May 1, 1997 and July 15, 1997;

b.      5 % of any gross recovery obtained between July 16, 1997 and September 15, 1997; and

c.      8 % of any gross recovery obtained between September 15, 1997 and the conclusion of all liability issues.

3.      The above-listed sums will be withheld from the attorneys' fees charged under the non-PSC contracts so that this Court, at a later time, can decide what, if any, fees should be charged to non-PSC cases. The PSC will make all subsequent costs requests and disbursement subject to further Court approval. The Defendants are directed to withhold such monies from future settlements and pay the Podhurst, Orseck Trust Account these

funds so that monies will available when the Court rules upon the appropriate fee to be

levied as non-PSC Cases.

    DONE AND ORDERED in Chambers, Dade County, Florida this 11th day of

November
~~October~~, 1997.

                    JUDGE MARGARITA ESQUIROZ

                    _____
                    **JUDGE MARGARITA ESQUIROZ**

Copies furnished to All
  Counsel of Record

## Plaintiffs' Steering Committee

**Aaron S. Podhurst, Esq. - Chairman of PSC**
**Steven C. Marks, Esq. - Member of PSC**
Podhurst, Orseck, Josefsberg, et al.
25 West Flagler Street
Suite 800
Miami, Florida 33130

**Mitch Baumeister - Member of PSC**
Baumeister & Samuels
One Exchange Plaza
New York, NY 10006

**John Howie, Esq. -- Member of PSC**
Howie & Sweeney, L.L.P.
Park Place on Turtle Creek
2911 Turtle Creek Boulevard
Suite 1400
Dallas, TX 75219

**Gerald Lear, Esq. - Member of PSC**
Speiser, Krause, et al.
1300 N. 17th Street
Suite 310
Rosslyn, VA 22209

**Kevin Malone, Esq. - Member of PSC**
Krupnick, Campbell, et al.
700 S.E. Third Avenue
Courthouse Law Plaza, Suite 100
Fort Lauderdale, FL 33316

24596\p\psc.lis

## SCHEDULE "A"

**Francis Anania, Esq.**
Anania, Bandklayer & Blackwell
100 Southeast Second Street
Suite 3300
Miami, Fla. 33131

**Dennis M. O'Hara, Esq.**
Wicker, Smith, Tutan,
  O'Hara, McCoy, Graham & Ford, P.A.
One East Broward Blvd.
Suite 500
P.O. Box 14460
Fort Lauderdale, Fla. 33302

**Thomas Sherouse, Esquire**
Anderson, Moss, Sherouse & Petro, P.A.
100 North Biscayne Boulevard
Suite 2500
Miami, FL 33132

**Thomas C. Woods, Esq.**
Kimbrell & Hamann, P.A.
Suite 900, Brickell Centre
799 Brickell Plaza
Miami, Florida 33131-2805

**Garrett Fitzpatrick, Esq.**
Mendes & Mount, LLP
750 7th Avenue
New York, New York 10019

24896\P\SL.def

## SERVICE LIST

Jeffrey L. Allen, Esq.
Jeffrey L. Allen, Attorney at Law
2800 Biscayne Blvd.
Miami, FL 33137

F. Gregory Barnhart, Esq.
Chris Speed, Esq.
Searcy Denney Scarola Barnhart
  & Shipley
2139 Palm Beach Lakes Blvd.
West Palm Beach, FL 33402

Kirk Barrow, Esq.
3500 N. State Road 7
Suite 201
Lauderdale Lakes, FL 33319

D. Michael Campbell, Esq.
D. Michael Campbell, et al.
8603 South Dixie Highway
Suite 310
Miami, FL 33143

Benjaim G. Chew, Esq.
Read K. McCaffrey, Esq.
Patton, Boggs, L.L.P.
2550 M Street, N.W.
Washington, DC 20037-1350

John P. Coale, Esq.
Diane Cooley, Esq.
David K. Lietz, Esq.
195 Duke of Gloucester Street
Annapolis, Maryland 21401

George M. Fleming, Esq.
Fleming, Hovenkamp & Grayson, P.A.
1330 Post Oak Blvd.
Suite 3030
Houston, Texas 77056

M. Ann Harcourt, Esq.
John Perciva. Esq.
303 So. Peters
Norman, Oklahoma 73069

Stephen L. Jacques, Esq.
Moore, O'Brien & Jacques
Westgate Office Center
700 West Johnson Avenue, Suite 207
Cheschire, Conn 06410

David Leitz, Esq.
5335 Wisconsin Avenue, N.W.
Suite 720
Washington, D.C. 20015

Bruce Marguilies, Esq.
Victor Rones, Esq.
16105 N.E. 18th Avenue
N. Miami Beach, Florida

Marc Moller, Esq.
Kreidler & Kreidler
100 Park Avenue
18th Floor
New York, NY 10017

Marshall I. Neurenberg, Esq.
Jaime Lebovitz, Esq.
Neurenberg Plevin Heller & McCarthy
1370 Ontario Street
First Floor
Cleveland, Ohio 44113-1792

William Norwood, Esq.
83 Walton Street
Atlanta, GA 30301

Tom Pennekamp, Esq.
Grossman & Roth
2665 S. Bayshore Drive
Penthouse I
Miami, Florida 33133

Robert L. Parks, Esq.
Haggard & Parks, P.A.
330 Alhambra Circle, First Floor
Coral Gables, FL 33134

C. Neal Pope, Esq.
Pope, McGlamry, Kilpatrick & Morrison
318 11th Street, 2nd Floor
P.O. Box 2128
Columbus, Georgia 31902-2128

Joseph P. Quirk, Esq.
Quirk & Quirk
2964 Peachtree Road, NW
450 Buckhead Centre
Atlanta, GA 30305

Larry R. Rogers, Sr., Esq.
Power, Rogers & Smith
35 West Wacker Drive
Suite 3700
Chicago, IL 60601

Herman J. Russomano, Esq.
Russomanno, Fiore & Borello, P.A.
Museum Tower #2101
150 W. Flagler Street
Miami, FL 33130

William R. Scherer, Esq.
Conrad Scherer, et al.
633 South Federal Highway
Fort Lauderdale, FL 33301

Michael Slack, Esq.
Slack & Davis
8911 Capital of Texas Highway, North
Suite 2110
Austin, TX 78759

J.B. Spence, Esq.
Payne, Leeds, et al.
Grove Professional Building
2950 S.W. 27th Avenue
Suite 300
Miami, Florida 33133

Mark D. Swanson, Esq.
Courthouse Tower, Suite 325
44 West Flagler Street
Miami, Florida 33130

W.E. Gary, Esq.
Gary, Williams, Parenti, et al.
221 East Osceola Street
Stuart, Florida 34994

Wayne Walker, Esq.
440 Louisiana
Suite 1325
Houston, Texas 77002

Robert K. Whohlfeld, Esq.
Marguilies, Rones & Wohlfeld, P.A.
16105 N.E. 18th Avenue
North Miami Beach, FL 33162

**Holly Davidson Schuttler, Esq.**
Holly Davidson Schuttler, P.A.
Of Counsel to Siegel Lipman Dunay et al.
5355 Town Center Road
Suite 801
Boca Raton, Florida 33486

**John W. Walker, Esq.**
1723 Broadway
Little Rock, AK 72206

24596\p\pltf.sl

```
 1                          IN THE CIRCUIT COURT OF THE
                           11TH JUDICIAL CIRCUIT IN
 2                         AND FOR DADE COUNTY, FLORIDA

 3                         (GENERAL JURISDICTION DIVISION)

 4                         CASE NO. 97-1775 (10)

 5
    WANDA HAMMOND, individually and as
 6  Personal Representative of the
    Minors, Briana Culver and Jada Culver,
 7  MICHAEL CULVER and MARCUS CULVER,
    individually and as Co-Administrators
 8  of the Estates of Rodney Dwayne
    Culver and Karen Culver,
 9
              Plaintiffs,                   COPY
10
    vs.
11
    VALUJET AIRLINES, INC. a foreign
12  corporation with a principal place
    of business in Dade County, Florida;
13  and SABRETECH, INC., a foreign
    corporation, with a principal place
14  of business in Dade County, Florida,

15            Defendants.

16  _____/

17                         Dade County Courthouse
                           73 West Flagler Street
18                         Miami, Florida
                           Wednesday, 1:30 p.m.
19                         April 22, 1998

20

21          The above-entitled cause came on for

22      hearing before The Honorable Margarita Esquiroz

23      pursuant to Notice.

24                         - - -

25
```

FRIEDMAN, LOMBARDI & OLSON

APPEARANCES:

      FREED & BERMAN, by
      GARY S. FREED, ESQ. & BENJAMIN I. FINK, ESQ.
        and
      PHILLIPS, EISINGER, KOSS & ROSENFELDT, by
      GARY S. PHILLIPS, ESQ., of counsel,
      Attorneys for the Plaintiffs

      PODHURST, ORSECK, JOSEFSBERG, EATON, MEADOW, OLIN,
       & PERWIN, by
      AARON PODHURST, ESQ. & STEVEN MARKS, ESQ.
        and
      KRUPNICK, CAMPBELL, MALONE, ROSELLI, BUSER, SLAMA
       & HANCOCK, by
      KEVIN MALONE, ESQ., of counsel,
        and
      BAUMEISTER & SAMUELS, by
      MICHEL F. BAUMEISTER, ESQ., of counsel,
      Attorneys for the Plaintiffs' Steering Committee

      KIMBRALL & HAMAN, by
      THOMAS C. WOODS, ESQ., of counsel,
        and
      GRAY & GILLILAND, by
      T. CULLEN GILLILAND, ESQ., of counsel,
        and
      ANDERSON, MOSS, SHEROUSE & PETROS, by
      EDWARD MOSS, ESQ., of counsel,
      Attorneys for Defendant Sabretech

      WICKER, SMITH, TUTAN, O'HARA, MCCOY, GRAHAM
       & FORD, by
      DENNIS O'HARA, ESQ., of counsel,
      Attorney for Defendant ValuJet

3

1      THE COURT:  Good afternoon, everybody.

2   I'm going to ask you to try and move this along

3   swiftly, because I'm in the middle of a jury

4   trial.

5      MR. PODHURST:  Judge, we worked out many

6   of our problems, which we're happy to say.

7   Unfortunately, we always need a hearing before

8   you can work problems out.  But with your

9   permission, Steve Marks, who is a member of the

10   PSC, is going to state an agreement between

11   SabreTech and ValuJet and the defendants, and

12   then I would let Mr. Moss and Mr. O'Hara and

13   anybody else who wants to comment, say if the

14   agreement is as he states.  If we can do that,

15   we can save a lot of time.

16      MR. MOSS:  The agreement is between

17   SabreTech, ValuJet and the plaintiffs.

18      MR. MARKS:  We had pending before today a

19   motion to amend which joined additional

20   individual defendants in our proposed complaint

21   and also added counts for punitive damages

22   against SabreTech and ValuJet.

23      THE COURT:  You didn't have those in there

24   before.

25      MR. MARKS:  We had some of the



FRIEDMAN, LOMBARDI & OLSON

4

1    individuals, but not all of them, and then

2    there was some question as to whether the

3    amendment would apply to individuals who never

4    joined these individuals.

5         There was also an issue on some of the

6    complaints that the individuals did not ever

7    effectuate service, so it was perhaps technical

8    non-compliance with the 120 day rule while we

9    were negotiating an agreement with SabreTech

10   and ValuJet concerning that liability and the

11   consequences of any stipulation.

12        What we've agreed to do is file within the

13   next ten days a master complaint.  We will not

14   pursue the punitive damage motion to amend at

15   this stage because of scheduling matters.  We

16   will seek a hearing from your Honor as soon as

17   we can in May when everyone's available.

18        MR. MOSS:  Let me just -- everything that

19   you said, I want to be sure that the master

20   complaint, that amended master complaint you're

21   going to file will not have the punitive damage

22   count in it.

23        MR. MARKS:  Not at this stage.  What we're

24   going to have is the proposed additional

25   individuals, perhaps additional individuals

5

1    which we believe within the next ten days,

2    defendants have agreed we can amend to join

3    these additional parties and whatever

4    non-punitive claims against affiliates or other

5    related parties to the defendants who are

6    already present.

7         That the master complaint will be

8    applicable to all past filed actions and future

9    filed actions.

10        That the service of the master complaint

11   will be service as if it was made in each of

12   the individual pending cases.

13        That we have an extension of time to the

14   extent there was any technical non-compliance

15   with the 120 day rule to serve the individuals

16   who have already been parties to this action.

17        That we will at a later date schedule our

18   motion to amend to add punitive damages when

19   everyone is available, and that we will submit

20   an agreed order in Federal Court as well

21   confirming or adopting this stipulation.

22        That we are going to postpone and at this

23   point withdraw a motion for summary judgment

24   based upon the representation of SabreTech and

25   ValuJet.



FRIEDMAN, LOMBARDI & OLSON

1          That they will on or before May 1 of this

2     year give substantive answers to the Fabre/Nash

3     interrogatories we recently served, so that

4     they will identify for us each and every

5     non-party they contend may be liable and

6     identify the substance of their contention as

7     to how they may be liable so we can join them,

8     if we want to, before the statute runs

9     potentially on May 11.

10         Most importantly, your Honor, the punitive

11    damage issue that we are agreeing to postpone

12    that was set for today, whenever it's heard in

13    May, June or whatever the date we ultimately

14    agree upon, will be considered to be heard as

15    if it was heard before the statute of

16    limitations.  So that if there is any

17    consequence that a statute affects the motion

18    for punitive damages, any subsequent ruling on

19    our motion to amend to join claims for

20    punitives will be deemed to be ruled upon

21    before the two year anniversary.

22         MR. PODHURST:  Judge, let me just make it

23    clear, there are reasons of time and reasons of

24    personal convenience that SabreTech and ValuJet

25    do not want us to have a hearing before May

1    11th, which is the two years involved.

2         We've worked out a stipulation.  Whatever

3    you rule on, whether we've set the factual

4    predicate or not set the factual predicate as

5    is required under the procedure in Florida for

6    the punitive damages, it will be as if that

7    argument took place with all the substantive

8    effect of it and procedural effect of it;

9    whether it be to insurance, whether it be to

10   any item, whatever, as if the argument took

11   place prior to the statute running.  And by

12   that way we take the pressure off everybody to

13   file whatever memorandums they want to file and

14   to do it whenever the Court can give us that

15   process.

16        Have I stated it correctly, Ed or Danny?

17        MR. MOSS:  ValuJet and SabreTech agree to

18   what he just said; that there is an agreement

19   between ValuJet and SabreTech and the PSC on

20   this issue.

21        MR. O'HARA:  ValuJet agrees.  I frankly

22   don't think technically it's even necessary,

23   the stipulation, but this was the motion we had

24   filed on the subject.  It's obviously going to

25   become moot, but we wanted you to have that.

FRIEDMAN, LOMBARDI & OLSON

8

1      MR. PODHURST:  Mitch, do you have any

2  problem, Kevin?

3      MR. MARKS:  There was one other problem,

4  your Honor.

5      THE COURT:  This is your original, so this

6  needs to be filed with the clerk.

7      MR. O'HARA:  Yes, ma'am.

8      THE COURT:  I'll hand it over to the

9  clerk.

10     MR. MARKS:  Our proposed master complaint

11 that's intended to cover every pending action

12 before your Honor, even those filed

13 subsequently, will include additional parties

14 such as SabreLiner, which we understand is not

15 represented here today.  They haven't been a

16 party.  They're not part of the stipulation.

17 That will be done before the two year

18 anniversary.

19      The parties to the stipulation will agree

20 that whenever you rule on the punitives as it

21 relates to everyone, including individuals,

22 there won't be an argument at least by those

23 defendants that it needed to be done within the

24 two years, and your ruling on the motion to

25 amend to add punitive claims will be decided as

1      if it was decided before the May 11th, 1998

2      potential statute.

3           MR. BAUMEISTER:  I don't mean to throw a

4      ringer in this, but I'm a little confused.  You

5      do not represent SabreLiner.  They are not

6      represented here.  Are we going to know before

7      the statute, even though technically that's not

8      an issue, as to whether we have to make a

9      motion to add punitive damages against

10     SabreLiner because we're going to add them in

11     as party, or are we agreeing as to SabreLiner,

12     as to that fact today, we're putting off the

13     punitive damages motion as to SabreLiner and

14     when it's heard as to SabreLiner, it will be

15     referenced back like everybody else?

16          MR. MOSS:  Mitch, we're confusing apples

17     and oranges.  The only parties that are before

18     the Court that are part of this agreement are

19     SabreTech and ValuJet.  I don't speak for

20     SabreLiner.  SabreLiner is not a party to this

21     case.  So I can't deal -- I mean there's no way

22     that we can speak for SabreLiner, and there's

23     no way you could ever require SabreLiner to

24     speak before May 11th.  You haven't even served

25     them yet.

10

1      I mean I thought I was perfectly clear on

2    what Steve, Aaron and Danny and I had

3    discussed.  We never discussed SabreLiner,

4    because there was nothing to discuss.  So that

5    is not part of the stipulation.  We have agreed

6    they have leave to amend.

7      MR. MARKS:  We've agreed SabreLiner will

8    be a party before May 11th and whatever

9    consequences a subsequent ruling has.

10      MR. PODHURST:  It is correctly stated.

11      MR. MARKS:  We all agree it relates back

12    anyway to the original filing.  So that there

13    wouldn't be really a statute of limitations

14    issue to begin with, and that's why.

15      THE COURT:  If they're added as a party

16    within the two years --

17      MR. MARKS:  So that if you decide two

18    years from now we have punitive damage claims

19    against all these defendants, it relates back

20    to the original filing.  So that this is really

21    a non-issue in this case.

22      THE COURT:  Okay.

23      MR. PODHURST:  That's it, your Honor.

24    We'd like to have you approve it so all of

25    these motions become moot.



FRIEDMAN, LOMBARDI & OLSON

1          THE COURT:  Fine.   I don't have a problem.

2          MR. MOSS:  There's one other note I made,

3      and I think maybe I misheard or someone

4      misspoke.

5          We are agreeing with regard to your leave

6      to amend the complaint that you're going to do.

7      I am not agreeing that you don't have to serve

8      the new parties.  I can't do that and I thought

9      I heard that.

10         MR. MARKS:  No.

11         MR. MOSS:  Then we're in good shape.

12         MR. MARKS:  Service of the master

13     complaint would serve as service in all of the

14     actions.

15         MR. MOSS:  That's fine.

16         MR. PODHURST:  With those agreements,

17     Judge, I think we've obviated a series of

18     motions.

19         THE COURT:  Okay, that's fine.  I don't

20     have a problem with it.  It's your agreement.

21     That's fine.

22         MR. MOSS:  This will mean for your

23     calendar, your Honor, that the May 8th hearing

24     that was scheduled is off.

25         THE COURT:  Okay.  The reason I laugh is

1    because I have to give the time to somebody

2    else.

3         MR. MOSS:  I'm sure of that.

4         THE COURT:  Somebody is requesting two

5    hours on the moratorium case.

6         MR. PODHURST:  We'll set another date,

7    your Honor, when we try to get the hearing on

8    the punitive damages, but we appreciate you're

9    giving us these hearings, because they do

10    resolve the problems.

11         THE COURT:  I am sure that's what keeps

12    you all under the gun and makes you stipulate.

13         MR. PODHURST:  It does serve its purpose,

14    your Honor.

15         THE COURT:  So you don't have anything

16    else for me today?

17         MR. PODHURST:  Not with the PSC.

18         THE COURT:  I have business with them.

19         MR. PODHURST:  Not with the PSC.  PSC,

20    we've agreed on everything?

21         MR. MOSS:  We've agreed our business is

22    done.

23         THE COURT:  And the May 8th hearing is

24    off?

25         MR. PODHURST:  Yes, and we'll try to get

13

1          another hearing for the punitive damages, which

2          would give them enough time to do what they

3          needed to.

4               THE COURT:  Okay.

5               MR. PODHURST:  Thank you, Judge.

6               THE COURT:  You're welcome, unless you

7          want to stick around, which you're welcome to

8          do.

9               Where are you, over here?  Mr. Woods, you

10         were for SabreTech.  You didn't file a

11         memorandum of law, you just filed cases.

12              MR. PHILLIPS:  We filed an original

13         memorandum of law we were relying on.  That was

14         the original one.

15              THE COURT:  That was the one filed before.

16              MR. PHILLIPS:  You said you didn't want

17         cases, so we just did summary of the facts.

18         It's the same case.

19              THE COURT:  Okay.  Do you want to present

20         brief argument on this?

21              MR. WOODS:  If that be your Honor's

22         pleasure.

23              THE COURT:  Go ahead.

24              MR. WOODS:  Your Honor, we have briefed

25         it.  Both sides have briefed it.  We have our

14

1       submissions of the pertinent testimony already,

2       as you received by evidence and testimony at

3       the evidentiary hearing.  We filed our own

4       precis of facts I think on both sides.  The

5       issue essentially comes back that this is a

6       matter of law as SabreTech presents it.

7           Your Honor, as you know, as a statement of

8       black letter law in Florida, settlements are

9       vigorously enforced and favored.  The issue of

10      settlements are essentially ex contractus, a

11      matter of contract.

12          Your Honor's decision is what choice of

13      law rule of Florida you should apply as to

14      determining whether or not, as SabreTech

15      contends, there's a contract of settlement

16      reached between the parties, as confirmed

17      between their attorneys.

18          You may remember, your Honor, that

19      SabreTech's position in our briefs and

20      submissions is that settlement was reached

21      between the attorneys, Mr. Wildermuth on behalf

22      of SabreTech and Mr. Jacques on behalf of the

23      plaintiffs, on May 6 of 1997.

24          Subsequent to that time with new counsel,

25      now Mr. Jacques having been let go, there was a



FRIEDMAN, LOMBARDI & OLSON

15

1    disagreement as to whether there was a

2    settlement.  There was a request for

3    renegotiation, it was declined.

4         We also presented evidence, you may

5    remember, your Honor, that the amount in

6    controversy is $9.1 million as to what we say

7    the settlement amount is.

8         This was presented in a structured

9    settlement manner providing up to $28 million

10   over time.

11        We submit, your Honor, that the choice of

12   law rule you should apply would be as contained

13   within the Restatement of Conflict of Laws

14   (1971), which would be Section 188, which would

15   be for purposes of a settlement contract, a

16   most significant relationships test.

17        We previously presented the cases to

18   your Honor as well as argument at our first

19   evidentiary hearing, citing the last time that

20   the Florida Supreme Court has touched upon the

21   issue of whether or not the traditional or what

22   they said the archaic rule of lex loci

23   contractus is still applicable.  They declined

24   to rule that in other than national automobile

25   insurance policies, lex loci contractus would

FRIEDMAN, LOMBARDI & OLSON

1    be the law that would be applied in Florida as

2    the choice of law.

3        Since that time two Federal opinions have

4    come out, and as you're aware, the Federal

5    Courts are required to have to determine what

6    the Florida law is.

7        In one opinion, which we have in our

8    brief, your Honor, Shapiro, Judge Faye

9    determined the Florida's choice of law rule

10   regarding contracts as to the matter before it

11   would be that of the most significant

12   relationships.

13       There was another 11th Circuit opinion

14   also in force, in which they also agreed that

15   the restatement of conflicts would be

16   applicable; the most significant relationships

17   test would be the test applied.

18       The plaintiffs -- I guess respondents in

19   this matter, contend that indeed the law of New

20   York or Connecticut may apply.  We find,

21   your Honor, and submit that if you were

22   applying the law of either New York or

23   Connecticut, and that would be where the

24   confirming letters went back and forth between

25   the plaintiffs' attorney and the defense

1    attorney, that they have no interest

2    whatsoever.  Neither state has any interest

3    whatsoever in this matter.  And that would

4    defeat any possible reasonable use of a

5    traditional rule.

6         In other words, why would we use a

7    traditional rule to say that by happenstance,

8    the law of Connecticut or New York would apply

9    to a settlement that was reached where all the

10   plaintiffs reside in Georgia, all matters are

11   pertaining to Georgia.

12        THE COURT:  Now, Mr. Jacques was in

13   Georgia at the time the May 7th letter was --

14        MR. WOODS:  Mr. Jacques was in

15   Connecticut.  He previously was in Georgia.

16        THE COURT:  He was in Connecticut.

17        MR. WOODS:  He was in New York City on May

18   6th and May 7th.

19        Now, as to the most significant

20   relationships, and I won't be more than a

21   couple more minutes, there is a plethora -- if

22   I can find the chart, your Honor -- of reasons

23   why the most significant relationships would

24   compel that Georgia law would be the proper

25   choice of law.

1        You have all the plaintiffs are residents

2    of Georgia.  All the plaintiffs were residents

3    of Georgia at the time of the underlying

4    accident.  The decedents, Rodney and Karen

5    Culver, were residents of Georgia.

6        ValuJet's principal place of business is

7    certainly Georgia.

8        Mr. Jacques' contract for legal services

9    was entered into in Georgia.  Mr. Jacques'

10   authority to represent the plaintiffs in our

11   litigation and settlement negotiations arose

12   out of his contract of employment, which was

13   entered into in Florida.

14        Miss Hammond has been appointed by the

15   Georgia Probate Court as the guardian of the

16   personal property of the two surviving children

17   of Rodney and Karen Culver.

18        The estates of Rodney and Karen Culver

19   will be administered in the Cherokee County,

20   Georgia courts.

21        The property of each of the decedents'

22   estates are located in Georgia.

23        The plaintiffs reviewed the proposed

24   settlement documents and gave, we submit, their

25   initial approvals in Georgia.

1            The settlement contract was essentially to

2       be performed in Georgia.

3            Probate Court approvals were to be

4       obtained by the plaintiffs in Georgia.

5            The structured settlement payments over

6       the course of years were to be paid in Georgia.

7            The last act or completion of overall

8       settlement that would be the final payment of

9       the structure would have been in Georgia as

10      well.

11           And also the pending action, of course, is

12      now located in Georgia, and Mr. Freed, the

13      present counsel and his firm, were originally

14      retained by the plaintiffs to do probate work

15      in Georgia.

16           Your Honor, if you use the most

17      significant relationship test of Section 188,

18      there's no question, we submit, that you have

19      to apply Georgia law.  And by applying Georgia

20      law, then you must enforce this contract,

21      because Georgia law, as you see in our

22      submission, clearly says that an attorney binds

23      the clients in settlement.  Without

24      exception -- there's only one.  That's if the

25      plaintiff were to tell the defense attorney

1    that the plaintiff's attorney had no authority.

2    That's never in here.  It's not even a

3    question.

4         The fact of settlement between the two

5    attorneys under Georgia law means that there is

6    a settlement and it is enforceable in Georgia

7    law, without question.

8         Your Honor, Mr. Moss --

9         MR. MOSS:  Has about 30 seconds of

10   comment.

11        MR. WOODS:  Any question, your Honor?

12        THE COURT:  Well, plaintiff's position, of

13   course, is that even under Georgia law there

14   wasn't any meeting of the minds, if I

15   understand the position correctly.

16        Of course, their position is a lot

17   stronger under Florida law and under

18   Connecticut and New York law, which is about

19   the same, give or take.  But they claim that

20   even if you go by Georgia law, that there's no

21   meeting of the minds evidenced by your own

22   evidence, because they take the position that

23   after that May 7th letter, Mr. Jacques went

24   back to Wildermuth and said, "I need to have

25   some modifications to this," and they went back

FRIEDMAN, LOMBARDI & OLSON

21

1    and forth, making changes to the agreement.

2    And then ultimately, it's uncontroverted that

3    resulted in the clients finally fired them,

4    etc.   That's their position.

5         You don't have a situation where under

6    Georgia law there's no question that it's

7    uncontradicted that the two attorneys entered

8    into a settlement, no ifs, ands or buts;

9    perhaps reduced it to writing or not.   But

10   that's what they claim.   That's not that

11   situation.

12        MR. WOODS:   Your Honor, in our brief we

13   cited about seven cases that clearly show that

14   clients will be bound by a settlement agreement

15   entered into by their attorneys, whether or not

16   the clients agreed to, authorized, or

17   understood the terms of the settlement.   That's

18   black letter Georgia law.

19        THE COURT:   That's what they say.

20        MR. WOODS:   Your Honor, this small

21   revision referred to never changed the amount

22   of the settlement.   It's just reworking the

23   figures to who gets what when.

24        The $9.1 million never changed.   That

25   remained the same.   There was no change

FRIEDMAN, LOMBARDI & OLSON

1    whatsoever as to that sum.

2         THE COURT:  Would that rule be the same

3    when Court approval of that agreement is

4    required before the agreement is effected; the

5    rule in Georgia by the Court presiding over the

6    case?

7         MR. WOODS:  There still would be, I

8    believe, in Georgia the same as in Florida,

9    that at some time the Court would have to

10   approve the settlement.  But we're talking

11   about the contract of settlement to go forward,

12   requiring the approval process.

13        THE COURT:  Okay.

14        MR. WOODS:  Thank you, your Honor.

15        THE COURT:  Anything else, Mr. Moss?

16        MR. MOSS:  Judge, I think the question you

17   ask is basically the area that I want to very

18   briefly talk about, because under the Georgia

19   law, the issue of the clients' understanding,

20   as far as it may seem to us following the

21   Florida law, is not the issue.

22        The lawyer has the plenary power to bind

23   the client.  If the client somewhere along the

24   line disagrees with what the lawyer did, then

25   the dispute is between the client and the

1     lawyer, not the party that settled the case

2     with the lawyer that had the apparent

3     authority.

4          The situation -- and you asked the

5     question.  The case was settled for $9.1

6     million.  The plaintiffs advised, not the

7     defendants, as to how that total dollar amount

8     should be broken down, both as to up front cash

9     and both as to allocation of the people that

10    were making claims as a result of the loss of

11    lives of these two decedents.  Defendants were

12    willing, basically, to allocate it in any

13    reasonable way it was asked, and they were told

14    how to do it.  And they did.

15         The point I get back to, your Honor, is

16    that this case was settled for $9.1 million.

17    If there is an allocation problem and if the

18    Court, this Court determines that there is a

19    real conflict of interest between the

20    claimants, including the children, if the

21    children's interests are not being looked after

22    properly, I would suggest what the Court ought

23    to do is determine the case is settled and then

24    after due consideration and proper testimony or

25    submissions, decide what an appropriate and

24

1    reasonable allocation ought to be so that the

2    Court takes control or the Probate Court takes

3    control of this inherent conflict that is

4    causing this case or this settlement not to go

5    forward.  Because that's what this is all

6    about, your Honor.

7         THE COURT:  I believe that if I were to

8    grant the motion to enforce the settlement,

9    that has the same effect as though settlement

10   had transpired here in front of me.

11        I have the settlement in front of me and I

12   think that I would have to appoint a guardian

13   ad litem for them.  I would have to take a look

14   into the settlement, what it provides, if it

15   does provide --

16        MR. MOSS:  And indeed, the settlement

17   agreement contemplated that when they talked

18   about Court approval.

19        THE COURT:  Then that would be a

20   contingency, because there's no way that I can

21   completely enforce that settlement without

22   having a recommendation from the guardian ad

23   litem, favorable or not.  Of course, the Court

24   would have to find that the settlement is in

25   the best interest of the children, even if from

FRIEDMAN, LOMBARDI & OLSON

25

1     a legal standpoint the Court would grant the

2     motion.

3          MR. MOSS:  But in Florida we do that in

4     every case when there's an incompetent before

5     the Court, and it doesn't void the settlement.

6          THE COURT:  No.  I'm separating the legal

7     aspects of it that you're arguing here today.

8     But I'm saying that there's no way that -- you

9     know, you're saying if I find a conflict, I

10    could allocate.  I would have to appoint the

11    guardian ad litem.

12         MR. MOSS:  That's what I meant by "due

13    consideration".  I did not want to -- we're

14    taking up a lot of your time.  You're in a

15    trial and I understand that, and I was trying

16    to use some shorthand, so to speak.

17         All right, thank you.

18         THE COURT:  Thank you, Mr. Moss.

19         MR. O'HARA:  Just for a second on behalf

20    of ValuJet.

21         Judge, I believe that clearly, the

22    evidence that I listened to in this Court that

23    was presented before you clearly spells out an

24    agreement between Mssrs. Wildermuth and

25    Jacques.  I think the law overwhelmingly

FRIEDMAN, LOMBARDI & OLSON

1     indicates that you should apply Georgia law.

2          So certainly we have a settlement here and

3     I think you very appropriately pointed out that

4     there are other issues that the Court after

5     finding the settlement would then take possibly

6     jurisdiction of.

7          I might also point out the Georgia court

8     has refused to get involved in those issues,

9     and this is something that would be totally

10    appropriate for this Court or the Probate Court

11    here to resolve in terms of the best interest

12    of the children, etc.  But you've got to get to

13    the first step first, and I think clearly the

14    evidence overwhelmingly points to an agreement,

15    and there was a settlement here.

16         I submit that that's how you should rule.

17    Thank you.

18         THE COURT:  Okay.  Thank you very much.

19         MR. PHILLIPS:  If it please the Court,

20    your Honor.  I have with me Gary Freed and Ben

21    Fink from Freed and Berman in Atlanta, and you

22    have not met Wanda Hammond, the mother of the

23    decedents in this case, and her husband,

24    Thermond Hammond.

25         Judge, one thing that the moving party

FRIEDMAN, LOMBARDI & OLSON

1    fails to ever reference in this case is the

2    settlement agreement that they forwarded for

3    signature, and the settlement agreement itself

4    states that, "The agreement is entered into in

5    the State of Florida and shall be construed and

6    interpreted in accordance with its laws."

7         Now, Florida law is clear --

8         THE COURT:  You're quoting?

9         MR. PHILLIPS:  I'm quoting verbatim from

10   the settlement agreement prepared at the

11   direction of Mr. Wildermuth and forwarded to

12   Mr. Jacques in Connecticut.

13        The other thing, I don't want you to get

14   confused when the defendants say you have a

15   Connecticut lawyer talking to a New York

16   lawyer.  For purposes of this case, your Honor,

17   you admitted them pro hac vice.  They were

18   bound by the rules regulating the Florida bar.

19   They were acting as Florida counsel in this

20   case, because it was a Florida case that was

21   pending.  This wasn't New York and Connecticut

22   laws that were being applied.  We believe that

23   Florida law should be applied.

24        Nowhere in any brief have the defendants

25   ever negated the statements set forth in their

1    own settlement agreement.  In fact, if you

2    recall during the hearing when Mr. Wildermuth

3    was on the witness stand, he was asked what is

4    the settlement agreement.  He said it's the May

5    6th conversation.  How is it memorialized?  By

6    three or four letters.

7         On cross examination I finally got him to

8    admit, "Mr. Wildermuth, isn't this agreement,

9    this settlement agreement, the one you're

10   seeking the Court to enforce?"  His answer was

11   "yes".

12        Judge, the law in Florida is very clear

13   that the first place you look with respect to

14   enforcing a settlement agreement is the intent

15   of the parties.  Now, it's obviously

16   plaintiff's position there was no settlement.

17   But it was clearly the Defendant's intent.

18   There could be no other intent other than to

19   have Florida law apply, and in Georgia they

20   filed a notice of following Florida law before

21   the Georgia court.

22        In fact, Judge, this agreement that's

23   called a settlement agreement, if you read

24   their brief, they won't even acknowledge it's a

25   settlement agreement.  They say in their brief,

FRIEDMAN, LOMBARDI & OLSON

29

1          "We call it a settlement agreement when

2      referring to the release," and we'll go through

3      all the terms of the settlement agreement and

4      you'll see it's more than just a release,

5      Judge.

6          Lex loci contractus is the law in Florida.

7      I've heard them on three occasions now, the

8      defendants, say it's the significant

9      relationships test.

10          In Jemco, the case we cited, the Third DCA

11      acknowledged that we still apply the lex loci

12      contractus as the law in Florida, and all that

13      means is a choice of law rule; is that a

14      contract is made at the last place necessary to

15      enter into the contract, which in this case is

16      Florida, because it required the Florida Court

17      approval.

18          In 1995, your Honor, in the Nicole Santos

19      case, the Fourth DCA -- this is long after the

20      1988 Supreme Court case which defendants are

21      saying applies significant relationships.   In

22      1995 lex loci was applied as the choice of law

23      provision.

24          In fact, in 1988 in the Florida Supreme

25      Court case cited by the defendants, lex loci

FRIEDMAN, LOMBARDI & OLSON

was relied upon by the Florida Supreme Court as the law that must be followed in Florida. What happened was there was a certified question of great importance, public interest, which said should we apply that in all insurance cases.

Well, the Florida Supreme Court said all we have before us is an automobile insurance case, and in automobile insurance cases you apply lex loci; you do not apply the significant relationships test.

The only two cases besides the Florida Supreme Court case which stands for lex loci, which concludes Florida law applies, are two Federal Court cases cited by the defendants. Both cases are property/casualty cases, as if this courthouse was insured by an out-of-state insuror.

In both cases they said, "We believe since you're dealing with a regulated industry, the insurance industry, and the insurance was on Florida property, you have to apply the law of Florida." Otherwise, you could circumvent all of the laws regulating insurance contracts in Florida.

Made sense in that isolated instance, and

1   they said it was an exception but not the rule.

2   They don't have one case that says significant

3   relationships is the rule.

4       I'm going to move on, your Honor, because

5   I think we made it clear that the choice of law

6   is Florida law.  We're not saying New York or

7   Connecticut.  We're saying if it's not Florida,

8   it's probably New York or Connecticut, and

9   certainly not Georgia under any circumstance.

10       But even if you applied Georgia law,

11  Judge, when we cited these two cases in our

12  brief, in Wilkins v. Butler, which is a SE.2d

13  case, 1988, Georgia law provides under an

14  agreement entered into in Georgia, it must meet

15  the same requirements of formation and

16  enforceability as any other contract.  That's

17  the question you asked; isn't it the same in

18  Florida.  They still have to have the same

19  elements, definite and certain terms to a

20  contract.

21       The answer was yes.  And then in Johnson

22  vs. Gwinnett County, there was an argument

23  whether two attorneys had agreed to a

24  settlement.  One attorney said yes, it was a

25  settlement; the other attorney said there isn't

1    a settlement.  The Georgia Court says where you

2    have a conflict on an oral settlement, we're

3    not going to enforce it.  No oral agreement was

4    established by the Georgia Court rule that they

5    cite, and the agreement must be in writing to

6    be enforced.

7         Your Honor, I went over briefly what

8    agreement they're trying to enforce, and at no

9    time did you hear Mr. Woods or Mr. Moss

10   reference the written settlement agreement.

11   Because if they tried to enforce that written

12   settlement agreement, you will find that there

13   was never any agreement between the attorneys

14   on the bulk of the definite and certain terms

15   set forth in this agreement, which weren't

16   agreed to.  And you know that under contract

17   law you have offers, counteroffers, you need an

18   acceptance and a meeting of the minds.

19        There was an offer made on May 6th.  There

20   were counteroffers made up to the 15th.

21   Finally a written settlement offer was written

22   and then Judge, what they didn't reference was

23   Mr. Wildermuth again testified on the stand --

24   I said to him after this written settlement

25   agreement was entered into, "Did you talk to

FRIEDMAN, LOMBARDI & OLSON

1   Mr. Freed?"  "Yes".  "Did Mr. Freed tell you

2   there was no agreement?"  "Yes".  "Did you tell

3   Mr. Freed there might be more money?"  And he

4   said yes.  The operative word is "might", but

5   there might be more money.  So there was never

6   even an acceptance.  They were still making

7   offers and counteroffers on the settlement

8   itself.

9       So even if you applied Georgia law, which

10  we don't think is applied, there's still no

11  meeting of the minds between the attorneys and

12  still no settlement agreement.

13      The terms of this settlement agreement,

14  your Honor -- and I just need to point them out

15  for the record -- one, they say "representation

16  and comprehension of document" and they put in

17  here, "You have gone over this with your

18  clients.  Your clients have read it, your

19  clients understand it, and they agree to it and

20  they voluntarily sign it."

21      Then there's another provision regarding

22  signing; that this is not effective -- it's not

23  even effective until it's signed by the

24  clients, which is what Mr. Jacques testified

25  to.

34

1    The facts, Judge, you recall it was just

2  two weeks ago, Wanda Hammond testified through

3  her deposition that she didn't agree to the

4  settlement.  She didn't agree to the provisions

5  regarding the payments to the children over the

6  period of years it was to be paid.  She wanted

7  it changed and requested changes.  She told

8  Mr. Jacques she wouldn't agree, and she

9  believed the settlement was for $28 million,

10  not $9 million.

11    Marcus Culver also testified he didn't

12  agree to the way it was going to be paid out,

13  the number of years, and his mother always said

14  she'd never take less than $15 million.

15    Mike Culver said the same thing.

16    Mr. Jacques testified by deposition -- I

17  think we both cited most of the same portions

18  of the deposition -- on page 75 the settlement

19  was not reached on May 6th.

20    Page 86, it was understood between he and

21  Mr. Wildermuth that there was no settlement

22  until signed off by the clients.

23    On page 94, he said it was never fully

24  explained to his clients.  And on page 148, he

25  said each conversation after May 6th discussed



FRIEDMAN, LOMBARDI & OLSON

35

1    changes in the settlement agreement.

2         Mr. Wildermuth acknowledged during his

3    testimony that Mr. Jacques had several of these

4    conversations with him regarding that.

5         THE COURT:  Your clients obviously do not

6    want this agreement enforced.  They do

7    understand that whereas that agreement, I don't

8    think, is subject to PSC and their attorneys'

9    fees, that they go back to square one if I rule

10   for you, correct?

11        MR. PHILLIPS:  Yes, we know that.

12        THE COURT:  And any settlement as reached

13   now will be subject to costs and attorneys'

14   fees.

15        MR. PHILLIPS:  I think that's up to

16   your Honor later, at a later hearing, depending

17   upon use of their depositions and involvement.

18        THE COURT:  Obviously, any fees would have

19   to be approved by me.

20        MR. PHILLIPS:  We know they have a claim.

21        THE COURT:  If I understand the order that

22   I entered on the attorneys' fees, was that

23   settlement reached by a certain day would not

24   be subject to any attorneys' fees; by a certain

25   day this, by a certain day that.

FRIEDMAN, LOMBARDI & OLSON

36

1          There are certain cases that came to me at
2     maybe a hearing a couple of months ago where
3     they wanted to be exempted from that order
4     based upon particular circumstances, and some
5     of them were crew members, if you recall.
6          MR. PHILLIPS:  Right.
7          THE COURT:  But other than that, what I'm
8     saying is as a general rule, that's going to be
9     true for all the cases that are settled after a
10    certain date.
11         MR. PHILLIPS:  Judge, unfortunately --
12         THE COURT:  For passengers anyway.  I just
13    wanted to ask you that question.
14         MR. PHILLIPS:  Unfortunately, I don't
15    think that would affect the return to the
16    clients.  That might affect our attorneys' fees
17    as lawyers.  So I don't think that really
18    should make a difference.
19         I also don't know that we were parties and
20    ever part of that order when it was brought to
21    the Court.
22         THE COURT:  That's a different matter.  I
23    just wanted to bring that up.
24         MR. PHILLIPS:  That should not be a
25    consideration.

FRIEDMAN, LOMBARDI & OLSON

37

1      THE COURT:  Well, it could be, because

2  it's money coming out of the settlement from

3  wherever, but -- it could be money coming out

4  of the settlement.

5      MR. PHILLIPS:  It affects the lawyers

6  more than our clients.

7      In addition, your Honor, one of the issues

8  is -- I'm going to wrap up and Mr. Freed has

9  about two minutes.

10      THE COURT:  Two minutes.

11      MR. PHILLIPS:  In order to introduce what

12  he's going to argue, in Georgia, if you recall,

13  there was some testimony by Mr. Wildermuth that

14  he was circumventing this Florida Court A) to

15  avoid the Plaintiffs Steering Committee, so

16  they were rushing through the settlement to get

17  it to Georgia; B) to dismiss the case without

18  invoking the two dismissal rule to get it to

19  Georgia; and C) they would have the Probate

20  Georgia Court approval.

21      What was never brought to the Court's

22  attention is that in Probate Court in Georgia,

23  it's the only court you don't have to be a

24  lawyer.  So Georgia passed a statute similar to

25  Florida that says when you have a settlement

FRIEDMAN, LOMBARDI & OLSON

38

1    involving minors, you must get the Court's

2    approval before whom the case is pending.

3        Here the case was pending before you, and

4    they waited 11 months after they thought there

5    was a settlement and five months after there

6    was a hearing and said they would proceed

7    before they came before the Court.  Mr. Freed's

8    going to address those arguments.

9        THE COURT:  Two or three minutes, if you

10   can.

11       MR. FREED:  I'll be very brief,

12   your Honor.  The action by the motion by the

13   defendants is in the nature of a specific

14   performance action, which is an equitable

15   action in Florida.

16       Under Fromberg versus Springtree, 408

17   So.2d. 1070, and in Florida as in most states,

18   equity will not lend its extraordinary powers

19   to benefit parties who are guilty of fraud or

20   who have unclean hands.

21       Unclean hands, as the Court knows, is the

22   maxim, the cornerstone of equity jurisprudence.

23   It demands fair dealing in all who seek relief.

24   It requires decency, good faith, fairness and

25   justice.  That's codified in the Booker versus

FRIEDMAN, LOMBARDI & OLSON

39

1    Smith case, 108 So.2d., 790.

2        Now, leaving aside the fact that

3    Mr. Jacques from the first meeting with the

4    defendants disregarded his clients' authority

5    and lied to them and never got the clients to

6    approve the settlement, you've got conduct on

7    behalf of the defendants that would lead this

8    Court to find unclean hands, would bar the

9    equitable remedy they are seeking.

10        Mr. Rodney Culver was a professional

11    football player.  He was the first African

12    American captain at a University of Notre Dame

13    football game, was co-valedictorian of his high

14    school class, and was earning approximately a

15    million dollars a year.  Mr. Jacques' own

16    expert economist valued his work life at $14

17    million.  Ours has done $17 million.

18    $9 million is an inequitable resolution for

19    this case.

20        SabreTech admitted when they were on the

21    stand they rushed this deal through.  They

22    tried to get it settled quickly.  The only

23    people who benefitted from that were Jacques

24    and SabreTech, not Briana and Jada Culver, who

25    are now aged four and three, and not

40

1     Mrs. Hammond.

2          That's side deal number one.  Side deal

3     number two, as Mr. Phillips said, Georgia law

4     and Florida law require trial court approval,

5     and they conspired together to dismiss this

6     case and tried to go right to probate --

7          THE COURT:  That's pretty strong language,

8     counsel.

9          MR. MOSS:  It is.  My silence doesn't

10    mean --

11         THE COURT:  You don't have to go that far,

12    but go ahead.

13         MR. FREED:  I think what was admitted on

14    the stand, your Honor, was they were going to

15    dismiss this case before your Honor ever had

16    the opportunity to look at the case, and then

17    submit it directly to probate in Georgia

18    without getting your Honor's approval.  And

19    whether conspiracy is a strong term or not, it

20    was an illegal act.

21         THE COURT:  I don't know whether that

22    would have been true.  Somebody might have

23    picked it up and -- you know, even if it's a

24    voluntary dismissal, if there's a settlement

25    behind it, I would have to take a look at it.

FRIEDMAN, LOMBARDI & OLSON

1    MR. FREED:  The point is, your Honor, the

2    appropriate procedure to have been done by

3    these attorneys was to come to you and ask you

4    to approve the settlement, and that was never

5    done.  And there's evidence, as your Honor

6    heard, that that was not going to be done.

7    There's also an inherent conflict of

8    interest clearly between the same attorney

9    Jacques representing everyone, and there's a

10   Georgia case directly on point of Home

11   Insurance versus Wynn, 493 SE.2d 622.

12   Money was being taken from the girls to be

13   given to Mrs. Hammond, because the girls'

14   payments were being delayed from the present to

15   then 16, age 18 and age 21.  But everyone knew

16   Ms. Hammond had no legal obligation to continue

17   to support these girls.  That's an inherent

18   conflict of interest that I would say permeates

19   every attorney that was involved in that case,

20   not just Mr. Jacques as attorney, and that's a

21   paradox.

22   The other paradox, your Honor, is that

23   they rushed the settlement through to avoid

24   Steering Committee fees, and then waited nine

25   months to come back to you and say, "I want you

1  to enforce the settlement."

2  The case of Matousek versus Cooper, 111

3  So.2d., 65, the Court ruled that equity aids

4  the vigilant and does not aid those who slumber

5  or delay their rights.

6  Had the defendants legitimately admitted

7  there was a settlement, they should have been

8  here in August, July and September and asked

9  you to enforce that settlement.

10  Equity.  He who seeks equity of justice,

11  must have done equity or justice.  And for the

12  Court to allow this settlement to go through is

13  rewarding at the best, your Honor, shenanigans

14  about rushing a settlement through of this

15  nature with small girls, with a professional

16  football player who was killed in a crash of an

17  airline in a disaster that may be

18  unprecedented.

19  There was no meeting of the minds.

20  THE COURT:  Wrap it up.  I think I heard

21  all the arguments.

22  MR. FREED:  There was one further thing,

23  your Honor.  The defendants are now arguing

24  that there's a number that was agreed on, it's

25  not a proposal.  Regardless of whether the

43

1    terms change, they agreed on a number.

2         Their own letter which is attached to

3    their brief says we've agreed on a proposal,

4    not on a number.  So they're arguing from both

5    sides of their mouth depending upon, your

6    Honor, respectfully, what suits their best

7    interest.

8         We would ask the Court as a matter of law

9    to set aside the settlement, find that there is

10   no settlement.  We are proceeding to trial on

11   May 18th in Georgia.  The trial was delayed

12   from May 4th to May 18th.  We're specially set.

13   Thank you.

14        THE COURT:  Okay.  Just three weeks later.

15        MR. MOSS:  May I respond for 30 seconds?

16        THE COURT:  Yes.

17        MR. MOSS:  The court approval they're

18   talking about, certainly everyone contemplated

19   and every court would require it.  That's a

20   condition subsequent that we talked about

21   before.

22        This argument that we filed -- we waited

23   and filed this motion late bears no weight,

24   because what happened was they moved this case

25   to Georgia and your case remained dormant.  The

44

1    Georgia case was moving along.  A motion was

2    filed in Georgia with regard to the settlement.

3    It was Judge Brogdon who said, "I'm not going

4    to basically send it back here to the Florida

5    Court to decide the issues regarding the motion

6    to enforce settlement."

7        The third thing that I wanted to say and

8    I'll sit down, you know, I heard counsel's

9    argument and you know, he may very well have a

10   gripe with Mr. Jacques, the clients,

11   Mr. Jacques' clients at the time.  The Hammonds

12   may have a gripe with their lawyer Jacques.

13   But under Georgia law they put him in the

14   position of going out there and settling this

15   case.

16       We talk about a meeting of the minds.  Let

17   me ask the Court to remember one thing that

18   occurred or one part of the testimony.  The

19   night that number was agreed upon, what did

20   Mr. Jacques' office do, they called the USA

21   Today to tell them, and the next day it was

22   published that the Rodney Culver case was

23   settled.  If that doesn't tell you there was a

24   meeting of the minds, I don't know what does.

25       Thank you.



FRIEDMAN, LOMBARDI & OLSON

1                    MR. PHILLIPS:  Your Honor, just briefly,

2           Mr. Jacques testified --

3                    THE COURT:  There's no surrebuttal,

4           Mr. Phillips.

5                    MR. PHILLIPS:  That's a misrepresentation

6           of the facts on the record.  Didn't happen.

7                    THE COURT:  Thank you.  I'm going to go

8           ahead and announce my ruling at this time.

9                    The first thing that the Court reasons is

10          that it's pretty much uncontradicted that the

11          written settlement agreement was contemplated

12          to be the agreement between the parties.  I

13          don't think there's been any contradiction

14          about that.

15                   The fact that a settlement may have

16          occurred or may not have occurred in May is

17          something else, but the fact of the matter is

18          that that settlement, if it happened or not,

19          was going to be reduced to writing and the

20          terms of that written settlement were as stated

21          in the draft.

22                   Now, it seems to me it's a little

23          inconsistent to say at this point in time we

24          want to have that agreement enforced and then

25          to say the very agreement that we want enforced

```
1       is not going to be governed by Florida law,

2       when the agreement apparently contains the

3       provision that Florida law will govern, the

4       agreement between the parties.

5           So that's the first thing the Court will

6       reason.  I think there's an element of estoppel

7       here.  If I'm going to enforce that agreement,

8       I have to apply -- I should apply Florida law,

9       because that's what the agreement says.

10          Be that as it may, setting that aside,

11      you've made a very strong argument about choice

12      of law.  There's no question that the forum

13      court applies its own conflict of law rules.

14      However, nowhere in the cases that have been

15      cited to me -- I don't think there's any case

16      in Florida that still says that the significant

17      relationship test applies.  I think that even

18      though the test may have been criticized, even

19      though it may be losing strength and validity,

20      that isn't the law in Florida.

21          Lex loci contractus basically says that

22      the conflict of law rule is that a contract is

23      made at the place where the last act necessary

24      to complete the contract is done.  It's also

25      said that the validity and substantive
```

47

1    obligations of contracts are determined by the

2    law of the place where the contract is made.

3         Now, let's take a look at where that

4    happened.  The contract was entered into

5    apparently in New York or in Connecticut, one

6    of those two places; because your position is

7    that the contract was entered into at the time

8    that that letter was exchanged, and that

9    happened when one attorney was in New York and

10   the other one was in Connecticut.

11        The last act necessary to complete the

12   contract probably would have been in Florida,

13   assuming that approval of the settlement

14   agreement is to be considered a part of the

15   contract or a part necessary to complete the

16   contract, and that necessarily would have to

17   have been done by me here, because this is

18   where the case was pending.

19        I don't think the result changes whether

20   you apply Florida law, you apply New York or

21   Connecticut law.  I think the authority of an

22   attorney in any of those three states is simply

23   to negotiate.  And by virtue of the fact that

24   you've hired an attorney, that does not mean

25   the attorney has unlimited authority to bind

1    the clients.  They do not have that authority

2    in Florida, in Connecticut or in New York.

3         In Florida we all know, I think, what the

4    law is in that regard.  You cited New York case

5    law to me.  You know, that basically says the

6    same thing.  An agreement between parties or

7    their attorneys relating to any matter in an

8    action, other than one made between counsel in

9    open court, is not binding upon a party unless

10   it is in writing, subscribed by him or his

11   attorney, or reduced to that form.  That's New

12   York.

13        Connecticut -- that's from the first case

14   that you cited.  The rule is almost universal

15   that an attorney who is clothed with no other

16   authority than that arising from his

17   employment, in that capacity has no implied

18   powers by virtue of his general retainer to

19   compromise and settle his clients' claim or

20   cause of action, except in certain conditions

21   of emergency; either precedent, special

22   authority from the client, or subsequent

23   ratification by him of a compromise or an

24   agreement by an attorney that should be binding

25   on his client.

1          That's pretty clear on Connecticut law.

2          Under Georgia law, as I said, a meeting of

3     the minds is still required.  It is well

4     settled that an agreement between two parties

5     will occur only when the minds of the parties

6     meet at the same time upon the same subject

7     matter as in the same sense.

8          Now, I understand that's a different rule

9     than the rule as is stated in the cases from

10    Connecticut and New York and Florida, where the

11    attorney does not have the same authority that

12    the attorney has in Georgia.  I don't think

13    Georgia law applies in this case, because it's

14    not the place mentioned in the agreement, to

15    begin with.  And number two, it is not the

16    place where the contract was entered into, and

17    it is not the place where the last act

18    necessary -- because it wasn't in Georgia that

19    the Court needed to approve the contract.  And

20    other than perhaps payment in Georgia or

21    finalizing the terms or signing in Georgia, you

22    know, those do not seem to be relevant

23    considerations under the case; unless you deem

24    those to be the last act necessary to complete

25    the contract.

1          But even at that, even if it's signed, the

2     Court would have to approve it, and it's the

3     Florida courts that would have to approve it.

4          I don't know that a settlement can

5     really -- you can execute anything you like.

6     Until the Court puts a stamp of approval on

7     that settlement, there really is no settlement.

8     I mean if the Court finds that the settlement

9     isn't done in the best interest of the

10    children, rejects it, you're back to square

11    one.  There's no contract.

12          So therefore, based upon that reasoning,

13    it seems to me that either Florida law applies

14    because that's the forum which was stated in

15    the choice of law, which was stated in the

16    contract itself, or because the last act

17    necessary to complete the contract was to be

18    performed here; and alternatively, at best New

19    York or Connecticut, but not Georgia.

20          Even under Georgia law there's a big

21    question as to whether there was really true

22    meeting of the minds, based upon the evidence.

23          So I just really don't think it's even

24    that close.  I really have to deny this motion

25    to enforce settlement.

51

1      MR. WOODS:  Your Honor, there's one

2   related housekeeping matter.  Mr. Freed spoke

3   to you about conflicts, conflicts between the

4   parties apparently on the plaintiff's side, and

5   in view of such, we would ore tenus move that a

6   guardian ad litem in Florida be appointed to

7   the two children of the decedents.

8      THE COURT:  Well, is that necessary, now

9   that we're not talking about distribution yet?

10   When the time comes to talk about -- I don't

11   see the need, when all the cases are being

12   handled by the PSC in terms of -- at this point

13   in time you're still dealing with liability

14   aspects of the case.  I don't know that you

15   really have gotten into the managed aspects.

16      MR. FREED:  Judge Brogdon has entered an

17   order in Fulton County appointing a guardian ad

18   litem who testified.

19      THE COURT:  She's been appointed.

20      MR. FREED:  It's highly likely that case

21   will conclude before this case ever gets going

22   forward.

23      THE COURT:  Let me say this.  I certainly

24   will take, give serious consideration to any

25   request you make involving an issue that

FRIEDMAN, LOMBARDI & OLSON

52

1    concerns the protection of the children's

2    interest.   There's no question about it.   At

3    this point in time I don't have that issue

4    before me.   All I had before me was the motion

5    to enforce the settlement, which I'm denying.

6        If you think it's a valid motion and you

7    want to bring it forth, put it in writing and

8    we'll consider it at some other time, okay.

9        MR. WOODS:   Thank you, your Honor.

10       THE COURT:   I have to get on with my jury

11   case.   I'm a half hour late.

12       (Whereupon at 2:30 p.m. the hearing was

13   concluded).

14

15

16

17

18

19

20

21

22

23

24

25

FRIEDMAN, LOMBARDI & OLSON

53

CERTIFICATE

STATE OF FLORIDA )
              )   ss.
COUNTY OF DADE   )

       I, Alice J. Teslicko, CSR, do hereby certify that the case of Wanda Hammond, et al. vs. ValuJet Airlines, et al., pending in the 11th Judicial Circuit, Case No. 97-1775, was heard before the Honorable Margarita Esquiroz on April 22, 1998; that I was authorized to and did report the proceedings of said hearing; and that the foregoing pages, numbered from 1 to 53 inclusive, constitute a true and accurate transcription of my shorthand report of said proceedings.

       In witness whereof, I hereby set my hand this 23rd day of April, 1998.


_____
Alice J. Teslicko

OFFICIAL NOTARY SEAL
ALICE TESLICKO SIERRA
COMMISSION NUMBER
CC426480
MY COMMISSION EXP.
DEC. 14, 1998

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.   97-1775 (10)

WANDA HAMMOND, individually and as
Personal Representative of the
Minors, Briana Culver and Jada Culver,
MICHAEL CULVER and MARCUS CULVER,
individually and as Co-Administrators
of the Estate of Rodney Dwayne
Culver and Karen Culver,

       Plaintiffs,

vs.

VALUJET AIRLINES, INC., a foreign
corporation with a principal place of
business in Dade County, Florida;
and SABRETECH, INC., a foreign
corporation, with a principal place
of business in Dade County, Florida,

       Defendants.
_____/

## MOTION TO COMPEL COMPLIANCE
## WITH COURT ORDER OF NOVEMBER 11, 1997

The Plaintiffs' Steering Committee ("PSC") hereby moves this Court for an Order

compelling all parties and counsel in the matter of Hammond v. ValuJet, Case No. 97-1775 (10)

to comply with this Court's Order of November 11, 1997, and in support thereof states as

follows:

1.     As this Court is very much aware, this Court formed a Plaintiffs' Steering

Committee for the purpose of handling all pretrial matters involving common liability issues.

Since the formation of the Committee, the PSC has fulfilled its obligations by spending a great

deal of time and money in the prosecution of these claims.   The PSC has propounded interrogatories, sent requests for production, reviewed hundreds of thousands of pages of documents, conducted countless depositions (not only in Florida but also in several other states) and has aggressively prosecuted these claims on behalf of all Plaintiffs.

2.      After providing ample opportunity for any particular plaintiff to settle their case prior to the possible assessment of fees or costs relating to the PSC, this Court provided that any case settled before May 1, 1997, would not be assessed a fee.   Furthermore, the Court entered an Order on November 11, 1997, after at least two hearings and after countless discussions by all counsel.   This Court appropriately found that each and every case pending before this Court as of September 15, 1997, would be required to withhold 8% of any gross recovery obtained subject to a later Court hearing to determine what, if any, fee should be charged to non-PSC cases.   Even though the Hammond Plaintiffs were noticed with these Motions, Notices of hearings and subsequent Orders, they never once objected.

3.      By way of background, the Hammond case was originally filed by Stephen Jacques on June 5, 1996, but was subsequently dismissed.    It was later re-filed by Mr. Jacques on January 13, 1997 (Case No. 97-1775).   Apparently a "settlement" was almost reached by Mr. Jacques during the summer of 1997.   The Plaintiffs hired new counsel, Mr. Gary Freed, who claimed that no settlement was reached.   Mr. Freed further successfully argued his client's position before this Court which resulted in this Court's oral rulings of April 22, 1998.   In successfully arguing that the Hammond case remain pending before this Court as of April 22, 1998, the Plaintiffs and Mr. Freed were then able to pursue both the Georgia State case which was filed on August 12, 1997, as well as the earlier filed Florida State Court case.

- 2 -

4.     Mr. Freed and the Plaintiffs knew very well that if they were successful in convincing this Court that no settlement was reached -- and thus the case remained pending as of April 22, 1998 -- then the Plaintiffs would be subjected to a withholding of 8% as a possible PSC fee.

5.     Despite this Court's willingness to entertain the Plaintiff's position that no settlement was reached, knowing full well that this Court would subsequently have to be consulted concerning any possible dismissal and/or settlement of the Florida case since it involved minors, the <u>Hammond</u> Plaintiffs purported to then seek to avoid its obligations by wrongfully filing a voluntary dismissal of the Florida action and allegedly settling "only" the Georgia State action.

6.     This bad faith conduct on the part of the <u>Hammond</u> Plaintiffs is further exhibited by their failure to advise the PSC of their intention to take a voluntary dismissal of the Florida action and then seeking an ex-parte Court Order from the Georgia Court concerning the PSC's entitlement to fees. (Attached as Exhibit "A")

7.     Obviously, the Georgia State Court has no jurisdiction over the PSC. Further, the <u>Hammond</u> Plaintiffs' efforts to first take advantage of this Court and the work of the PSC by obtaining an order that no settlement was reached, then settling <u>all</u> claims arising from the accident (both the Florida and Georgia State Court cases), then filing a voluntary dismissal without permission of this Court is contrary to all notions of good faith and candor before this Court.

8.     Accordingly, on the date the <u>Hammond</u> case was settled, the Plaintiffs were are required to withhold 8% of the gross recovery as a potential PSC fees and were further obligated

- 3 -

to report to this Court as to their actions since this case involves minors. The only way that the Hammond case could possibly have been recently settled was due to this Court's ruling that no settlement was reached in the summer of 1997 (which would nevertheless subject the Plaintiffs to the minimum fee of 3% of any gross recovery) such that this case was still pending as of April 22, 1998, which could then be settled for presumably an increased amount from the earlier "settlement".

WHEREFORE, the PSC respectfully requests that this Court retain jurisdiction over this matter and find that the PSC is entitled to preserve 8% of the gross recovery obtained as well as the $2,500.00 assesses as costs, so that the Court can decide at a later date the amount, if any, of PSC fees.

WE HEREBY CERTIFY that a true and correct copy has been sent via facsimile to all counsel of record on the attached service list "A" and mailed to all remaining counsel this ⏤day of May, 1998.

Respectfully submitted,

PLAINTIFFS' STEERING COMMITTEE

By:_____
AARON S. PODHURST
Fla. Bar No. 063606
STEVEN C. MARKS
Fla. Bar No. 516414
PODHURST, ORSECK, JOSEFSBERG,
EATON, MEADOW, OLIN & PERWIN, P.A.
25 West Flagler Street, Suite 800
Miami, Florida  33130
(305) 358-2800 / Fax (305) 358-2382

24596\P\HAMMOND.mm

- 4 -

## SERVICE LIST

Kirk Barrow, Esq.
3500 N. State Road 7
Suite 201
Lauderdale Lakes, FL 33319

D. Michael Campbell, Esq.
D. Michael Campbell, et al.
8603 South Dixie Highway
Suite 310

R. Jack Clapp, Esq.
R. Jack Clapp & Associates
One Cleveland Center
Suite 2430
1375 East 9th Street
Cleveland, OH 44114

Lewis S. Eidson, Esq.
Colson Hicks, et al.
200 S. Biscayne Boulevard
Suite 4700
Miami, FL 33131

Gary S. Freed, Esq.
Benjamin I. Fink, Esq.
Freed & Berman, P.C.
14 N. Parkway Square
4200 Northside Parkway, N.W.
Atlanta, GA 30327

Ron Frank, Esq.
Jared Woodfil, Esq.
1003 Wirt Road
Suite 311
Houston, TX 77055

John Frost, Esq.
Frost, O'Toole & Saunders
395 South Central Avenue
Bartow, FL 33830

W.E. Gary, Esq.
Gary, Williams, Parenti, et al.
221 East Osceola Street
Stuart, Florida 34994

John A. Greaves, Esq.
Paul Hedlund, Esq.
12100 Wilshire Boulevard
Suite 950

Los Angeles, CA 90025

M. Ann Harcourt, Esq.
John Perciva. Esq.
303 So. Peters
Norman, Oklahoma 73069

Robert Howard, Esq.
6231 Leesburg Pike
Suite 506
Falls Church, VA 22044

Read K. McCaffrey, Esq.
Patton, Boggs, L.L.P.
2550 M Street, N.W.
Washington, DC 20037-1350

Bruce Marguilies, Esq.
Victor Rones, Esq.
Robert Wohlfeld, Esq.
Marguiles, Rones & Wohlfeld, P.A.
16105 N.E. 18th Avenue
N. Miami Beach, Florida

Jack Paris, Esq.
Leeds & Colby
2950 S.W. 27th Avenue
Suite 300
Miami, FL 33133

Joseph A. Ritzo, Esq.
426 Middle Street
P.O. Box 658
Portsmouth, NH 03802-0658

Larry R. Rogers, Sr., Esq.
Power, Rogers & Smith
35 West Wacker Drive
Suite 3700
Chicago, IL 60601

Holly Davidson Schuttler, Esq.
Holly Davidson Schuttler, P.A.
Of Counsel to Siegel Lipman Dunay et al.
5355 Town Center Road
Suite 801
Boca Raton, Florida 33486

Wilton L. Strickland, Esq.
Strickland & Seidule
Victoria Park Centre
SUite 303
1401 East Broward Blvd.
Fort Lauderdale, FL 33301

**James Thompson, Jr., Esq.**
290 21st Street, North
Suite 800
Birmingham, AL 35203

**Wayne Walker, Esq.**
440 Louisiana
Suite 1325
Houston, Texas 77002

**John W. Walker, Esq.**
1723 Broadway
Little Rock, AK 72206

24596\p\pltf.sl

<u>SERVICE LIST</u>
<u>Plaintiffs' Steering Committee</u>

**Aaron S. Podhurst, Esq. - Chairman of PSC**
**Steven C. Marks, Esq. - Member of PSC**
Podhurst, Orseck, Josefsberg, et al.
25 West Flagler Street
Suite 800
Miami, Florida 33130

**Mitch Baumeister - Member of PSC**
Baumeister & Samuels
One Exchange Plaza
New York, NY 10006

**John Howie, Esq. -- Member of PSC**
Howie & Sweeney, L.L.P.
Park Place on Turtle Creek
2911 Turtle Creek Boulevard
Suite 1400
Dallas, TX 75219

**Gerald Lear, Esq. - Member of PSC**
Speiser, Krause, et al.
2300 Clarendon Boulevard
Suite 306
Arlington, VA 22201

**Kevin Malone, Esq. - Member of PSC**
Krupnick, Campbell, et al.
700 S.E. Third Avenue
Courthouse Law Plaza, Suite 100
Fort Lauderdale, FL 33316

24596\p\psc.lis

## SCHEDULE "A"

Francis Anania, Esq.
Anania, Bandklayer & Blackwell
100 Southeast Second Street
Suite 3300
Miami, Fla. 33131

Rolando Diaz, Esq.
Kubicki Draper
25 West Flagler Street
Penthouse
Miami, FL 33130

Douglas J. Chumbley, Esq.
Carlton Fields
4000 International Place
100 S.E. Second Street
Miami, FL 33131

Dennis M. O'Hara, Esq.
Wicker, Smith, Tutan,
  O'Hara, McCoy, Graham & Ford, P.A.
One East Broward Blvd.
Suite 500
P.O. Box 14460
Fort Lauderdale, Fla. 33302

Edward Moss, Esquire
Anderson, Moss, Sherouse & Petro, P.A.
100 North Biscayne Boulevard
Suite 2500
Miami, FL 33132

Thomas C. Woods, Esq.
Kimbrell & Hamann, P.A.
Suite 900, Brickell Centre
799 Brickell Plaza
Miami, Florida 33131-2805

Garrett Fitzpatrick, Esq.
Mendes & Mount, LLP
750 7th Avenue
New York, New York 10019

Jeffrey W. Morof, Esq.
Bryan Cave LLP
120 Broadway
Suite 300
Santa Monica, CA 90401-2305

Rick Dunn, Esq.
Bilzin, Sumberg, et al.
200 S. Biscayne Blvd.
Suite 2500
Miami, Florida  33131

J. Arthur Mozley, Esq.
Mozley, Finlayson & Loggins LLP
One Premier Plaza
Suite 900
5605 Glenridge Drive
Atlanta, GA 30342

William G. Burd, Esq.
Burd, Downs & Magathan
601 Brickell Key Drive
Suite 500
Miami, FL 33131

Yale T. Freeman, P.A.
153 West Avenue
Naples, FL  34108

T. Cullen Gilliland, Esq.
Gray, Gilliland & Gold
400 Perimeter Center Terrace
Suite 1050
Atlanta, GA  30346

Donnal S. Mixon, P.A.
2600 Douglas Road, Suite 600
Coral Gables, FL  33134

Jane W. Moskowitz, P.A.
NationsBank Tower, Suite 3700
100 S.E. 2nd Street
Miami, FL  33131

Jay Moskowitz, Esq.
Sands & Moskowitz, P.A.
300 Bayview Plaza
3225 Aviation Avenue
Coconut Grove, FL  33133

Gary Freed, Esq.
14 N. Parkway Square
4200 Northside Parkway, N.W.
Atlanta, GA  30327

Gary Phillips, Esq.
4000 Hollywood Blvd.
Suite 265 South
Hollywood, FL  33021

24596\LISTS\DEFCORP.SL

*copy*
*faxed*
*to SL*

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

WANDA HAMMOND, INDIVIDUALLY     \*
AND AS PERSONAL REPRESENTATIVE \*
OF MINORS BRIANA CULVER, JADA    \*
CULVER, AND KIM CULVER;         \*
MICHAEL CULVER AND MARCUS      \*
CULVER INDIVIDUALLY AND AS       \*
CO-ADMINISTRATORS OF THE         \*
ESTATES OF RODNEY DWAYNE        \*
CULVER AND KAREN CULVER,        \*
                                 \*
     PLAINTIFFS,               \*
                                 \*
VS.                                 \*
                                 \*
VALUJET AIRLINES, INC., VALUJET,    \*
INC., SABRETECH, INC., ROBERT      \*
PRIDDY, RICHARD D'ARCY AND      \*
DAVID L. GENTRY,             \*
                                 \*
     DEFENDANTS.            \*

**FILED IN OFFICE THIS THE**
*12th* ........... Day of *May* 19*98*
......... *Un* ..................
              **Deputy Clerk**

CIVIL ACTION
FILE NO.  97VS0130479J

## ORDER APPROVING SETTLEMENT AND ADDRESSING FEE ISSUES

    **WHEREAS**, the parties having attended court ordered mediation on May 5, 1998, and

having appeared before this Court on May 11, 1998, and having announced into the record that

this action has been settled, and the Court having heard from counsel for all parties, and from the

guardian *ad litem*, the terms of the settlement, and having found that the settlement is in the best

interests of all minor children involved, and the Court having found the terms and provisions of

the settlement just and fair;

    **WHEREAS**, a lien for $2,200,000.00 in attorneys' fees has been filed in this Court by

the Plaintiffs' former counsel, Moore, O'Brien, Jacques & Yelenak, of Cheshire, Connecticut;

Honorable M. Gino Brogdon
ulton County State Court
3855 Justice Center Tower
85 Central Avenue , S W
tlanta, Georgia 30303
404) 730-7760

1

*Exhibit "A"*

and

  **WHEREAS**, the Court having been made further aware that Plaintiffs' Liability Steering Committee ("PSC") for the Eleventh Judicial Circuit in and for Dade County, Florida, appointed relative to the air crash in the Florida Everglades on May 11, 1996, has also asserted in this matter a lien in the amount of eight percent (8%) of the gross settlement proceeds; and

  **WHEREAS**, the Court having found that good cause and just reason exist for this Order and to promote the interests of judicial economy and settlement,

  **IT IS HEREBY ORDERED AND ADJUDGED** as follows:

  1. The settlement reached by and between the parties and their counsel and read into the record on May 11, 1998 is approved. The terms of the settlement shall remain confidential as to all parties and their counsel.

  2. The Defendants shall cooperate with the Plaintiffs in good faith to prepare and have executed a written settlement agreement memorializing the terms of the settlement.

  3. The Defendants shall pay into the Registry of this Court, into an interest bearing account, all fees that the Plaintiffs would be entitled to, including but not limited to, those which are addressed in the liens of either Mr. Jacques or the PSC.

  4. This Court shall conduct an evidentiary hearing on June 2, 1998 at 9:00 a.m. to address all issues concerning attorneys' fees and the liens claimed by Mr. Jacques and the PSC. This evidentiary hearing shall address all counsels' and all claimants' entitlement to fees pursuant to contract or law. All claimants to any portion of any attorneys' fees in this matter shall be heard.

Honorable M. Gino Brogdon
Fulton County State Court
3855 Justice Center Tower
85 Central Avenue  S W
Atlanta, Georgia 30303
(404) 730-7700

*(Signature on following page)*

SO ORDERED, this 12th day of MAY, 1998.

M. GINO BROGDON, JUDGE
STATE COURT OF FULTON COUNTY

cc:   Gary Freed
Benjamin Fink
Freed & Berman
Fourteen North Parkway Square
4200 Northside Parkway, NW
Atlanta, GA 30327

Edgar Neely, III
Richard North
Nelson, Mullins, Riley
  & Scarborough
400 Colony Square, Suite 2200
1201 Peachtree Street, NE
Atlanta, GA 30361

·Cullen T. Gilliland
Gray & Gilliland
Suite 1050, North Terraces
400 Perimeter Center Terrace
Atlanta, GA 30346

John Howie
Howie & Sweeney, LLP
Suite 1400, Park Place on Turtlecreek
2911 Turtlecreek Boulevard
Dallas, TX 75219

Alvin T. Wong
Gambrell & Stolz
One Peachtree Center, Suite 4300
303 Peachtree Street N.E.
Atlanta, GA 30308

Michael F. Baumeister
Baumeister & Samuels
One Exchange Plaza
New York, NY 10006-3008

Honorable M. Gino Brogdon
Fulton County State Court
185 Justice Center Tower
185 Central Avenue, S.W.
Atlanta, Georgia 30303
(404) 730-7760

3

**PODHURST ORSECK JOSEFSBERG EATON**
**MEADOW OLIN & PERWIN, P.A.**

Suite 800, City National Bank Building
25 West Flagler Street
Miami, FL 33130

**Please deliver the following page(s) to:**

Dan Barks at Speiser, Krause, et al.

**Fax Number:**  (703) 522-7905          **Our File No.:**  24596

**From:**  Elisabeth Salvadore          **Date:**  May 18, 1998

**Number of page(s):** _____ (Including cover page)

**Our Fax Number:**  (305) 358-2382          **Operator:** _____

◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

**MESSAGE:**  *This is the ONLY ORDER I am aware of, but there are memos addressing choice of law arguments. Let me know if you would like copies of these  Eliz*

◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

Original document will _____ will not _____ follow by mail.

If you do not receive all pages, please contact us immediately at:

**(305) 358-2800 - Extension 241**

●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●
**This transmittal is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure by law.  If the reader of this transmittal is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately by telephone, and return the original transmittal to us by mail.  Thank you.**
●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●

---

**Send Confirmation Report**

Line 1: PODHURST,ORSECK.LAW    HORE77 ID: 3053582382      05/18/98  3:36PM    Page  1
Line 2: PODHURST,ORSECK.LAW,LA'        ID: 3053582382

| Job | Start time | Usage | Phone Number or ID | Type | Pages | Mode | Status |
|-----|-----------|-------|--------------------|------|-------|------|--------|
| 778 | 5/18  3:34PM | 1'34" | 1052#24596#170352279 05# | Send............. | 4/ 4 | EC 96 | Completed.................................... |

Total:    1'34"     Pages sent: 4     Pages printed: 0

---

**PODHURST ORSECK JOSEFSBERG EATON**
**MEADOW OLIN & PERWIN, P.A.**

Suite 800, City National Bank Building
25 West Flagler Street
Miami, FL 33130

Please deliver the following page(s) to:

Dan Barks at Speiser, Krause, et al.

Fax Number:  (703) 522-7905          Our File No.:  24596

From:  Elizabeth Salvadore          Date:  May 18, 1998

Number of page(s): _____ (Including cover page)

Our Fax Number: (305) 358-2382          Operator: _____

♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦
MESSAGE: *This is the only ____ I am aware of, but these are memos addressing choice of law arguments. Let me know if you would like copies of these   Eliz*
♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦

Original document will _____ will not _____ follow by mail.

If you do not receive all pages, please contact us immediately at:

(305) 358-2800 - Extension 341

♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦
This transmittal is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure by law.  If the reader of this transmittal is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately by telephone, and return the original transmittal to us by mail.  Thank you.
♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦



IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.  97-1775 CA 10

WANDA HAMMOND, individually
and as Personal Representative of the
Minors, Briana Culver and Jada Culver;
MICHAEL CULVER and MARCUS
CULVER, individually and as Co-
Administrators of the Estates of
Rodney Dwayne Culver and Karen Culver,

      Plaintiffs,

vs.

VALUJET AIRLINES, INC., a foreign
corporation with a principal place
of business in Dade County, Florida;
and SABRETECH, INC., a foreign
corporation with a principal place of
business in Dade County, Florida,

      Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTION
## TO ENFORCE SETTLEMENT AGREEMENT

THIS CAUSE having come on before this Court upon Defendants, SABRETECH,

INC.'s and VALUJET INC.'s Motion to Enforce Settlement Agreement on April 9 and 22,

1998, and the Court having reviewed the Motion and the Memoranda filed in support

thereof, heard the testimony presented to the Court, reviewed the depositions and

CASE NO. 97-1775 CA 10

evidence submitted to the Court, heard argument of counsel, and being otherwise duly advised in the Premises, it is hereby

ORDERED AND ADJUDGED that the Motion to Enforce Settlement Agreement is hereby Denied for the reasons stated by this Court in the attached transcript.

DONE AND ORDERED in Chambers at Miami, Dade County, Florida on this 11th day of May, 1998.

CIRCUIT JUDGE

JUDGE MARGARITA ESQUIROZ

cc:   All counsel of Record

2

45

1              MR. PHILLIPS:  Your Honor, just briefly,

2        Mr. Jacques testified --

3              THE COURT:  There's no surrebuttal,

4        Mr. Phillips.

5              MR. PHILLIPS:  That's a misrepresentation

6        of the facts on the record.  Didn't happen.

7              THE COURT:  Thank you.  I'm going to go

8        ahead and announce my ruling at this time.

9              The first thing that the Court reasons is

10       that it's pretty much uncontradicted that the

11       written settlement agreement was contemplated

12       to be the agreement between the parties.  I

13       don't think there's been any contradiction

14       about that.

15             The fact that a settlement may have

16       occurred or may not have occurred in May is

17       something else, but the fact of the matter is

18       that that settlement, if it happened or not,

19       was going to be reduced to writing and the

20       terms of that written settlement were as stated

21       in the draft.

22             Now, it seems to me it's a little

23       inconsistent to say at this point in time we

24       want to have that agreement enforced and then

25       to say the very agreement that we want enforced

FRIEDMAN, LOMBARDI & OLSON

46

1      is not going to be governed by Florida law,

2      when the agreement apparently contains the

3      provision that Florida law will govern, the

4      agreement between the parties.

5           So that's the first thing the Court will

6      reason.   I think there's an element of estoppel

7      here.   If I'm going to enforce that agreement,

8      I have to apply -- I should apply Florida law,

9      because that's what the agreement says.

10          Be that as it may, setting that aside,

11     you've made a very strong argument about choice

12     of law.   There's no question that the forum

13     court applies its own conflict of law rules.

14     However, nowhere in the cases that have been

15     cited to me -- I don't think there's any case

16     in Florida that still says that the significant

17     relationship test applies.   I think that even

18     though the test may have been criticized, even

19     though it may be losing strength and validity,

20     that isn't the law in Florida.

21          Lex loci contractus basically says that

22     the conflict of law rule is that a contract is

23     made at the place where the last act necessary

24     to complete the contract is done.   It's also

25     said that the validity and substantive

FRIEDMAN, LOMBARDI & OLSON

47

1   obligations of contracts are determined by the

2   law of the place where the contract is made.

3        Now, let's take a look at where that

4   happened.  The contract was entered into

5   apparently in New York or in Connecticut, one

6   of those two places; because your position is

7   that the contract was entered into at the time

8   that that letter was exchanged, and that

9   happened when one attorney was in New York and

10   the other one was in Connecticut.

11        The last act necessary to complete the

12   contract probably would have been in Florida,

13   assuming that approval of the settlement

14   agreement is to be considered a part of the

15   contract or a part necessary to complete the

16   contract, and that necessarily would have to

17   have been done by me here, because this is

18   where the case was pending.

19        I don't think the result changes whether

20   you apply Florida law, you apply New York or

21   Connecticut law.  I think the authority of an

22   attorney in any of those three states is simply

23   to negotiate.  And by virtue of the fact that

24   you've hired an attorney, that does not mean

25   the attorney has unlimited authority to bind

48

the clients.  They do not have that authority

in Florida, in Connecticut or in New York.

In Florida we all know, I think, what the

law is in that regard.  You cited New York case

law to me.  You know, that basically says the

same thing.  An agreement between parties or

their attorneys relating to any matter in an

action, other than one made between counsel in

open court, is not binding upon a party unless

it is in writing, subscribed by him or his

attorney, or reduced to that form.  That's New

York.

Connecticut -- that's from the first case

that you cited.  The rule is almost universal

that an attorney who is clothed with no other

authority than that arising from his

employment, in that capacity has no implied

powers by virtue of his general retainer to

compromise and settle his clients' claim or

cause of action, except in certain conditions

of emergency; either precedent, special

authority from the client, or subsequent

ratification by him of a compromise or an

agreement by an attorney that should be binding

on his client.

FRIEDMAN, LOMBARDI & OLSON

49

```
1            That's pretty clear on Connecticut law.
2            Under Georgia law, as I said, a meeting of
3       the minds is still required.  It is well
4       settled that an agreement between two parties
5       will occur only when the minds of the parties
6       meet at the same time upon the same subject
7       matter as in the same sense.
8            Now, I understand that's a different rule
9       than the rule as is stated in the cases from
10      Connecticut and New York and Florida, where the
11      attorney does not have the same authority that
12      the attorney has in Georgia.  I don't think
13      Georgia law applies in this case, because it's
14      not the place mentioned in the agreement, to
15      begin with.  And number two, it is not the
16      place where the contract was entered into, and
17      it is not the place where the last act
18      necessary -- because it wasn't in Georgia that
19      the Court needed to approve the contract.  And
20      other than perhaps payment in Georgia or
21      finalizing the terms or signing in Georgia, you
22      know, those do not seem to be relevant
23      considerations under the case; unless you deem
24      those to be the last act necessary to complete
25      the contract.
```

50

1        But even at that, even if it's signed, the

2    Court would have to approve it, and it's the

3    Florida courts that would have to approve it.

4        I don't know that a settlement can

5    really -- you can execute anything you like.

6    Until the Court puts a stamp of approval on

7    that settlement, there really is no settlement.

8    I mean if the Court finds that the settlement

9    isn't done in the best interest of the

10   children, rejects it, you're back to square

11   one.   There's no contract.

12       So therefore, based upon that reasoning,

13   it seems to me that either Florida law applies

14   because that's the forum which was stated in

15   the choice of law, which was stated in the

16   contract itself, or because the last act

17   necessary to complete the contract was to be

18   performed here; and alternatively, at best New

19   York or Connecticut, but not Georgia.

20       Even under Georgia law there's a big

21   question as to whether there was really true

22   meeting of the minds, based upon the evidence.

23       So I just really don't think it's even

24   that close.   I really have to deny this motion

25   to enforce settlement.



FRIEDMAN, LOMBARDI & OLSON

51

1          MR. WOODS:  Your Honor, there's one

2     related housekeeping matter.  Mr. Freed spoke

3     to you about conflicts, conflicts between the

4     parties apparently on the plaintiff's side, and

5     in view of such, we would ore tenus move that a

6     guardian ad litem in Florida be appointed to

7     the two children of the decedents.

8          THE COURT:  Well, is that necessary, now

9     that we're not talking about distribution yet?

10    When the time comes to talk about -- I don't

11    see the need, when all the cases are being

12    handled by the PSC in terms of -- at this point

13    in time you're still dealing with liability

14    aspects of the case.  I don't know that you

15    really have gotten into the managed aspects.

16         MR. FREED:  Judge Brogdon has entered an

17    order in Fulton County appointing a guardian ad

18    litem who testified.

19         THE COURT:  She's been appointed.

20         MR. FREED:  It's highly likely that case

21    will conclude before this case ever gets going

22    forward.

23         THE COURT:  Let me say this.  I certainly

24    will take, give serious consideration to any

25    request you make involving an issue that



FRIEDMAN, LOMBARDI & OLSON

52

1    concerns the protection of the children's

2    interest.  There's no question about it.  At

3    this point in time I don't have that issue

4    before me.  All I had before me was the motion

5    to enforce the settlement, which I'm denying.

6         If you think it's a valid motion and you

7    want to bring it forth, put it in writing and

8    we'll consider it at some other time, okay.

9         MR. WOODS:  Thank you, your Honor.

10        THE COURT:  I have to get on with my jury

11   case.  I'm a half hour late.

12        (Whereupon at 2:30 p.m. the hearing was

13   concluded).

14

15

16

17

18

19

20

21

22

23

24

25

53

CERTIFICATE

STATE OF FLORIDA )
                 )      ss.
COUNTY OF DADE   )


        I, Alice J. Teslicko, CSR, do hereby certify that the case of Wanda Hammond, et al. vs. ValuJet Airlines, et al., pending in the 11th Judicial Circuit, Case No. 97-1775, was heard before the Honorable Margarita Esquiroz on April 22, 1998; that I was authorized to and did report the proceedings of said hearing; and that the foregoing pages, numbered from 1 to 53 inclusive, constitute a true and accurate transcription of my shorthand report of said proceedings.

        In witness whereof, I hereby set my hand this 23rd day of April, 1998.


_Alice J. Teslicko_

Alice J. Teslicko


FRIEDMAN, LOMBARDI & OLSON

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

WANDA HAMMOND, Individually and )
as Personal Representative of the Minors, )
Briana Culver and Jada Culver; MICHAEL )
CULVER and MARCUS CULVER, )
Individually and as Co-Administrators of )
the Estates of Rodney Dwayne Culver and )
Karen Culver, )                              CASE NO. 97 1775 CA 24
                                           )
        Plaintiffs, )
                                           )
v. )
                                           )
VALUJET AIRLINES, INC., a foreign )
corporation with a principal place of )
business in Dade County, Florida; and )
SABRETECH, INC., a foreign corporation, )
with a principal place of business in Dade )
County, Florida, )
                                           )
        Defendants. )

## NOTICE OF VOLUNTARY DISMISSAL

Plaintiffs, Wanda Hammond, individually and as personal representative of the minors,

Briana Culver and Jada Culver, Michael and Marcus Culver, individually and as Co-Administrators

of the Estates of Rodney Dwayne Culver and Karen Culver, by and through their undersigned

counsel, pursuant to Fla.R.Civ.P. 1.420(a), hereby file this Notice of Voluntary Dismissal of this

action.

RECORDED
MAY 1 8 1998
Clerk of Circuit
& County Courts

OFF REC BK
18103PG4316

RESPECTFULLY SUBMITTED, this ___ day of May, 1998.

FREED & BERMAN, P.C.

By: _____

Gary S. Freed
Georgia Bar No. 275275

COUNSEL FOR PLAINTIFFS

14 North Parkway Square
4200 Northside Parkway
Atlanta, Georgia 30327-3054
(404) 261-7711

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a true and correct copy of the foregoing NOTICE OF VOLUNTARY DISMISSAL upon the following persons this date by facsimile and by depositing the same in the United States mail, postage prepaid, and properly addressed as follows:

Dennis M. O'Hara, Esquire
Wicker, Smith, Tutan, O'Hara, McCoy,
Graham & Ford, P.A.
One East Broward Blvd., Suite 500
P.O. Box 14460
Ft. Lauderdale, Florida 33302     COUNSEL FOR VALUJET AIRLINES, INC.

Edgar A. Neely III, Esq.
Scott P. Hilsen, Esq.
Richard B. North, Jr., Esq.
Nelson Mullins Riley & Scarborough, L.L.P.
First Union Plaza, Suite 1400
999 Peachtree Street     ATTORNEYS FOR VALUJET, INC.,
Atlanta, Georgia 30309     VALUJET AIRLINES, INC., DAVID L.
    GENTRY, ROBERT PRIDDY and
    RICHARD D'ARCY

T. Cullen Gilliland, Esq.
Robert W. Browning, Esq.
Gray & Gilliland, P.C.
Suite 1050
North Terraces
400 Perimeter Center Terrace
Atlanta, Georgia 30346     COUNSEL FOR SABRETECH, INC.

Edward A. Moss, Esquire
Thomas M. Sherouse, Esquire
Anderson, Moss, Sherouse & Petros
25th Floor, New World Tower
100 North Biscayne Boulevard
Miami, Florida 33132     COUNSEL FOR SABRETECH, INC.

Bruce R. Wildermuth, Esq.
Mendes & Mount, LLP
750 Seventh Avenue
New York, New York 10019-6829     COUNSEL FOR SABRETECH, INC.

OFF REC BK
18103PG4318

Thomas C. Woods, Esquire
Kimbrell & Hamann, P.A.
799 Brickle Plaza, Suite 900
Brickle Center
Miami, Florida 33131

COUNSEL FOR SABRETECH, INC.

This the /24th day of May, 1998.

Gary S. Freed
Georgia Bar No. 275275

COUNSEL FOR PLAINTIFFS

6382-3\dismiss.fla

OFF REC BK
18103PG4319